**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------ x
                                                        :
In re:                                                  :    Chapter 11
                                                        :
NOVUM PHARMA, LLC,                                      :    Case No. 19-10209 (___)
                                                        :
                              Debtor.¹                  :
                                                        :
------------------------------------------------------ x
```

**DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS**
**(A) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL,**
**(B) GRANTING ADEQUATE PROTECTION, (C) MODIFYING THE**
**AUTOMATIC STAY, AND (D) GRANTING RELATED RELIEF**

Novum Pharma, LLC, the debtor and debtor-in-possession in the above-captioned

case (the "Debtor"), hereby moves (this "Motion") for the entry of an interim order, substantially

in the form attached hereto as Exhibit A (the "Interim Order"), and a final order (the "Final

Order" and, together with the Interim Order, the "Cash Collateral Orders"), pursuant to sections

105, 361, 362, 363, 503, 506, 507 and 552 of title 11 of the United States Code, 11 U.S.C.

§§ 101-1532 (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1(b), 4001-2 and 9013-1(m) of

the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for

the District of Delaware (the "Local Rules"), *inter alia*: (i) authorizing the Debtor's use of Cash

Collateral (as defined below); (ii) granting adequate protection to the Prepetition Secured Lender

(as defined below) for any diminution in value of its interests in the Prepetition Collateral (as

defined below), including the Cash Collateral; (iii) subject to entry of the Final Order and to the

extent set forth herein, waiving the Debtor's right to surcharge Collateral (as defined below)

---

[1]     The last four digits of the Debtor's federal tax identification number are 7895.  The mailing address for the
        Debtor is 200 South Wacker Drive, 31st Floor, Chicago, IL 60606.

pursuant to section 506(c) of the Bankruptcy Code; (iv) vacating or modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to permit the Debtor and the Prepetition Secured Lender to implement and effectuate the terms and provisions of the Interim Order; and (v) scheduling a final hearing (the "Final Hearing") to consider the relief requested in the Motion and the entry of a Final Order, and approving the form of notice with respect to the Final Hearing.  In support of this Motion, the Debtor relies upon and incorporates by reference the Declaration of Thomas S. O'Donoghue, Jr. in Support of Chapter 11 Petition and First Day Pleadings (the "First Day Declaration"), filed with the Court concurrently herewith.  In further support of the Motion, the Debtor respectfully represents as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated February 29, 2012.  This is a core proceeding under 28 U.S.C. § 157(b) and, pursuant to Local Rule 9013-1(f), the Debtor consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2.      Venue of this case and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and legal predicates for the relief requested herein are sections 105, 361, 362, 363, 503, 506, 507 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 9014 and Local Rules 2002-1(b), 4001-2 and 9013-1(m).

58448/0001-16772741v8

## BACKGROUND

### A.    General Background

4.    On the date hereof (the "Petition Date"), the Debtor commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").  The factual background regarding the Debtor, including its business operations, its capital and debt structure, and the events leading to the filing of the Chapter 11 Case, is set forth in the First Day Declaration.

5.    The Debtor continues to manage and operate its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6.    To date, no creditors' committee has been appointed in the Chapter 11 Case by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"). No trustee or examiner has been appointed in the Chapter 11 Case.

### B.    The Prepetition Secured Loan Facility[2]

7.    The Debtor is a borrower under that certain Loan Agreement, dated as of August 1, 2017 (as amended from time to time, the "Loan Facility"), with RGP Pharmacap, LLC ("RGP Pharmacap"), which provided the Debtor with a term loan in the amount of $15 million. The Loan Facility bears interest at the greater of prime plus 9.75% or 14% for the life thereof, and is payable in thirty-six (36) consecutive monthly principal installments commencing on September 1, 2019, with the last principal payment being made on August 1, 2022.

8.    As collateral for the Loan Facility, the Debtor entered into that certain Security Agreement, dated as of August 1, 2017 (the "Security Agreement"), with RGP Finance LLC ("RGP Finance" and, collectively with RGP Pharmacap, the "Prepetition Secured

---

[2]    Capitalized terms used but not otherwise defined in this section shall have the meanings ascribed to them in the Loan Facility (as defined herein).

Lender"),[3] pursuant to which the Debtor granted RGP Finance a security interest in "all of Debtor's present or hereafter acquired or arising right, title and interest in and to all Accounts, Chattel Paper, Deposit Accounts, Documents, Electronic Chattel Paper, Equipment, Fixtures, General Intangibles (including equity interest in any Subsidiary and any Intellectual Property), Goods, Instruments, Inventory, Investment Property, Letter-of-Credit Rights, Payment Intangibles, Supporting Obligations, promissory notes, software, Commercial Tort Claims hereafter identified by Debtor in any authenticated Record delivered to [Prepetition Secured Lender], and all other assets and personal property, and all products and proceeds of any of the foregoing" (collectively, the "Prepetition Collateral").  See Security Agreement at §§ 1 and 2(a). In connection with the Loan Facility, the Debtor, RGP Pharmacap and The Huntington National Bank entered into a certain Deposit Account Control Agreement, dated as of August 2, 2017.

9.      On April 30, 2018, the Debtor, certain of its affiliated companies (collectively, the "Affiliates")[4] and RGP Pharmacap entered into that certain First Amendment and Joinder to Loan Agreement (the "Joinder"), pursuant to which one of the Debtor's Affiliates (i) became a "New Loan Party" under the Loan Facility; (ii) guaranteed the Loan Facility; and (iii) pledged substantially all of its assets to RGP Pharmacap to secure the obligations under the Loan Facility.  Additionally, pursuant to the Joinder, certain other Affiliates provided unsecured guarantees of collection for the Debtor's obligations under the Loan Facility.

10.     As of the Petition Date, the Debtor was indebted to the Prepetition Secured Lender under the Loan Facility, without defense, counterclaim or offset of any kind, in the aggregate principal amount of $15,000,000, plus accrued and unpaid interest with respect

---

[3]      The Prepetition Secured Lender is owned by a member of the Debtor's board of managers.

[4]      The Debtor and the Affiliates share common ownership.

thereto (which, as of the Petition Date, was $211,049) and any additional fees, costs, expenses

(including any attorneys', financial advisors' and other professionals' fees and expenses),

reimbursement obligations, indemnification obligations, contingent obligations and other charges

of whatever nature, whether or not contingent, whenever arising, due, or owing, and all other

obligations owing under or in connection with the Loan Facility (the "Prepetition Secured

Obligations").

## RELIEF REQUESTED

11.     By this Motion, the Debtor seeks entry of the Cash Collateral Orders:

(i) authorizing the Debtor's use of Prepetition Secured Lender's cash collateral (the "Cash

Collateral") subject to the terms and conditions set forth therein; (ii) granting certain adequate

protection to the Prepetition Secured Lender; (iii) subject to entry of a Final Order and to the

extent set forth herein, waiving the Debtor's right to surcharge Collateral pursuant to section

506(c) of the Bankruptcy Code; (iv) vacating or modifying the automatic stay imposed by

section 362 of the Bankruptcy Code to the extent necessary to permit the Debtor and the

Prepetition Secured Lender to implement and effectuate the terms and provisions of the Interim

Order; (v) scheduling the Final Hearing within approximately thirty (30) days from the Petition

Date to consider the relief requested in the Motion and the entry of a Final Order; and

(vi) approving the form of notice with respect to the Final Hearing.

## THE DEBTOR'S IMMEDIATE NEED TO USE CASH COLLATERAL

12.     The ability of the Debtor to finance its operations and complete a

successful chapter 11 sale process requires immediate continued use of Cash Collateral.  In the

absence of the use of Cash Collateral, the continued operation of the Debtor's business would not

be possible and immediate and irreparable harm to the Debtor, its estate and its creditors would

occur.  The Debtor does not have sufficient available sources of working capital and financing to operate its business in the ordinary course without the use of Cash Collateral.  The relief requested in this Motion therefore is necessary for the continued operation of the Debtor's business and the preservation of its property, and thus is in the best interests of the Debtor, its estate and its creditors.

13.    The Prepetition Secured Lender and the Debtor have negotiated at arm's-length and in good faith regarding the Debtor's use of Cash Collateral to fund the continued operation of the Debtor's business during the period (the "Specified Period") from the Petition Date through the date which is the earliest to occur of (i) the expiration of the Remedies Notice Period (as defined below), (ii) the date that is forty-five (45) days from the Petition Date if the Court has not entered the Final Order on or before such date, and (iii) the date that is six (6) months after the Petition Date.  The Prepetition Secured Lender has agreed not to object to, conditioned on the entry of the Interim Order, the Debtor's proposed use of Cash Collateral, on the terms and conditions set forth in the Interim Order, and the terms of the adequate protection provided for therein.

14.    As further set forth herein, the Interim Order provides adequate protection in the form of, among other things, superpriority claims and adequate protection liens to protect the Prepetition Secured Lender against any diminution in value arising from the Debtor's use of Cash Collateral or the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.  The Debtor further proposes to make disbursements pursuant to a 13-week cash flow forecast, including the anticipated uses of the Cash Collateral, attached to the Interim Order as Exhibit A (the "13-Week Budget"), subject to permitted variances.

15.     Access to existing Cash Collateral on an interim basis will provide the Debtor with the liquidity necessary to continue to operate its business and thus preserve and maintain the going concern value of the its estate, thereby facilitating a successful chapter 11 sale process.  Without access to such liquidity, the Debtor's ability to navigate through chapter 11 would be jeopardized, to the detriment of the Prepetition Secured Lender and all of the Debtor's other stakeholders.  As a result, the Debtor has an immediate need to use Cash Collateral to ensure access to sufficient working capital throughout the Specified Period.

## STATEMENT OF THE MATERIAL TERMS OF THE INTERIM ORDER

16.     Pursuant to Bankruptcy Rule 4001(b), (c) and (d) and Local Rule 4001-2(a)(i) and (ii), the following is a concise statement and summary of the material terms of the Interim Order (collectively, the "Highlighted Provisions"):

| Material Terms | Summary of Material Terms | Para(s). of Interim Order |
|---|---|---|
| **Entities with an Interest in Cash Collateral**<br><br>*Bankruptcy Rule 400l(b)(1)(B)(i)* | RGP Pharmacap, LLC and RGP Finance LLC | ¶ E(i) |
| **Purpose for Use of Cash Collateral**<br><br>*Bankruptcy Rule 400l(b)(1)(B)(ii)*<br><br>*Local Rule 4001-2(a)(ii)* | The Debtor seeks authority to use the Cash Collateral to: (i) finance its working capital needs and for any other general corporate purposes; and (ii) pay related transaction costs, fees, liabilities and expenses (including all professional fees and expenses) and other administration costs incurred in connection with and for the benefit of the Chapter 11 Case, in each case solely to the extent consistent with the 13-Week Budget or the Interim Order. | ¶ 3(b) |

58448/0001-16772741v8

| | | |
|---|---|---|
| **Budget and Variance Reporting**<br><br>*Bankruptcy Rule 400l(b)(1)(B)(ii)*<br><br>*Local Rule 4001-2(a)(ii)* | Every four (4) weeks following entry of the Interim Order, on the Monday following such four-week period, the Debtor will provide the Prepetition Secured Lender with an updated 13-Week Budget for the subsequent 13-week period.  The initial 13-Week Budget and each subsequent 13-Week Budget shall be in form and substance acceptable to the Prepetition Secured Lender.  Each week following entry of the Interim Order, on the fourth business day of such week, the Debtor also shall provide to the Prepetition Secured Lender a budget variance report/reconciliation (the "<u>Budget Variance Report</u>") setting forth in reasonable detail actual cash receipts and disbursements for the prior week, and, beginning after the first four (4) week period, all variances, on an individual line item basis and an aggregate basis, as compared to the previously delivered 13-Week Budget on a cumulative weekly basis over a rolling four (4) week period, together with a statement certifying compliance with the Budget Covenants (as defined below) set forth below.  The Budget Variance Report shall include an explanation, in reasonable detail, of any material variance.  The Debtor shall ensure that at no time any of the following occur (together, the "<u>Budget Covenants</u>"): (i) a negative variance of 15.0% or more from the total cash receipts set forth in the 13-Week Budget, to be tested on a cumulative basis over a rolling four (4) week period, provided that, in the event that any cash receipt budgeted to be received in any rolling four (4) week period is not actually received during such period, such receipt shall be deemed, for purposes of testing, to have been received during such period if it is received within one (1) calendar week after the end of such period; and (ii) a negative variance of 15.0% or more from the "Total Operating Disbursements," tested every week on a cumulative rolling four (4) week basis; <u>provided</u>, <u>however</u>, that in any rolling four (4) week period that "Total Operating Disbursements" are less than the budgeted amount for such period, the amount by which "Total Operating Disbursements" are less may be carried forward and added to the subsequent period; <u>provided further</u>, <u>however</u>, that "Total Operating Disbursements" shall include disbursements made by the Debtor (including, but not limited to, any payments, expenditures or advances) other than professional fees and expenses related to administration of the Chapter 11 Case. | ¶ 4(d) |
| **Duration of Use of Cash Collateral/Events of Default/Rights and Remedies Upon Event of Default**<br><br>*Bankruptcy Rule 400l(b) (1)(B)(iii)*<br><br>*Local Rule 4001-2(a)(ii)* | <u>Termination Date</u>.  The earliest to occur of (i) the expiration of the Remedies Notice Period (as defined below), (ii) the date that is forty-five (45) days from the Petition Date if the Court has not entered the Final Order on or before such date and (iii) the date that is six (6) months after the Petition Date.<br><br><u>Events of Default</u>.  The occurrence and continuance of any of the following events, unless waived in writing by the Prepetition Secured Lender, shall constitute an event of default (collectively, the "<u>Events of Default</u>"):<br><br>(a) the failure by the Debtor to obtain a Final Order in form and substance acceptable to the Prepetition Secured Lender within forty-five (45) days after the Petition Date;<br><br>(b) the Debtor shall have (i) filed a motion seeking to create, or | ¶¶ 3(a), 8 and 9 |

8

(ii) created, incurred or suffered to exist, any postpetition liens or security interests, other than those granted or permitted pursuant to the Interim Order without the consent of the Prepetition Secured Lender;

(c) any of the documents or other information required to be delivered to the Prepetition Secured Lender pursuant to the Interim Order shall contain material misrepresentations;

(d) the entry of a final order by the Court, other than the Interim Order, granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code to allow any creditor to execute upon or enforce a lien on or security interest in any Collateral;

(e) the Court shall enter an order approving any claims for recovery of amounts under section 506(c) of the Bankruptcy Code or otherwise arising from the preservation of any Collateral;

(f) the Debtor shall support, commence or join as an adverse party in any suit or other proceeding against the Prepetition Secured Lender or relating to the Prepetition Secured Obligations or Collateral;

(g) reversal, amendment, supplement, vacatur or modification (without the express prior written consent of the Prepetition Secured Lender) of the Interim Order;

(h) the Interim Order or any other pleading filed in the Chapter 11 Case by the Debtor provides for the nonconsensual priming of the Prepetition Liens (as defined in the Interim Order);

(i) the Debtor shall create, incur or suffer to exist any other claim which is *pari passu* with or senior to the 507(b) Claim (as defined below);

(j) dismissal of the Chapter 11 Case or conversion of the Chapter 11 Case to a chapter 7 case, or appointment of a trustee, receiver, interim receiver or manager, or appointment of a responsible officer or examiner with enlarged powers in the Chapter 11 Case (having powers beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code);

(k) the Debtor's exclusive right to file and solicit acceptances of a plan of reorganization or liquidation is terminated or terminates;

(l) the failure by the Debtor to make material payments as set forth in the Interim Order when due and such failure shall remain unremedied for more than five (5) business days after receipt by the Debtor of written notice thereof from the Prepetition Secured Lender;

(m) the failure by the Debtor to file a motion to approve the sale of all or substantially all of the Debtor's assets within ten (10) business days after the Petition Date;

58448/0001-16772741v8

(n) the failure by the Debtor to obtain entry of an order approving bidding procedures in connection with the sale of all or substantially all of the Debtor's assets within forty-five (45) days after the Petition Date;

(o) the failure by the Debtor to obtain entry of an order approving the sale of all or substantially all of the Debtor's assets in form and substance acceptable to the Prepetition Secured Lender on or before May 3, 2019;

(p) the failure by the Debtor to consummate the sale or disposition of all or substantially all of the Debtor's assets on or before May 17, 2019; and

(q) the failure by the Debtor to perform, in any respect, any of the terms, provisions, conditions or obligations under the Interim Order, including a breach of the Budget Covenants set forth in Paragraph 4(d) of the Interim Order.

Rights and Remedies Upon Event of Default.  Upon occurrence of an Event of Default and following the giving of five (5) business days' written notice to the Debtor (the "Remedies Notice Period"), the Prepetition Secured Lender may exercise the remedies available to it under the Interim Order and applicable non-bankruptcy law, including, but not limited to, revoking the Debtor's right to use Cash Collateral and collecting and applying any proceeds of the Collateral in accordance with the terms of the Interim Order and the provisions of the Loan Documents (as defined in the Interim Order).  During the Remedies Notice Period, the Debtor and/or an official committee of unsecured creditors (if appointed) (the "Committee") shall be entitled to seek an emergency hearing; provided, however, that the sole issue that the Debtor or the Committee (if appointed) may bring before the Court at any such emergency hearing is whether an Event of Default has occurred and/or is continuing, and the Debtor or the Committee (if appointed) shall not be entitled to seek other relief, including under section 105 of the Bankruptcy Code, at the hearing.  During the Remedies Notice Period, the Debtor may continue to use Cash Collateral in the ordinary course of business, consistent with past practices and the most recently delivered 13-Week Budget, but may not enter into any transactions or arrangements (including, without limitation, the incurrence of indebtedness or liens, investments, restricted payments, asset sales or transactions with non-Debtor affiliates) that are not in the ordinary course of business.  Unless the Court orders otherwise during the Remedies Notice Period, at the end of the Remedies Notice Period, the Debtor shall automatically, without further notice or order of the Court, no longer have the right to use or seek to use Cash Collateral, the automatic stay pursuant to section 362 of the Bankruptcy Code shall be automatically terminated at the end of the Remedies Notice Period, without further notice or order of the Court, and the Prepetition Secured Lender shall be permitted to exercise all rights and remedies set forth in the Interim Order, the Loan Documents, and as otherwise available at law without further order or application or motion to the Court, and without restriction or restraint by any stay under section 105

10

| | | |
|---|---|---|
| | or 362 of the Bankruptcy Code.  Notwithstanding anything in the Interim Order to the contrary, the automatic stay pursuant to section 362 of the Bankruptcy Code shall be automatically terminated for the purposes of giving any notice contemplated under the Interim Order.  The delay or failure to exercise rights and remedies under the Interim Order or the Loan Documents shall not constitute a waiver of the Prepetition Secured Lender's rights thereunder or otherwise. | |
| **Proposed Adequate Protection**<br><br>*Bankruptcy Rule 400l(b)(1)(B)(iv)*<br><br>*Local Rule 4001-2(a)(ii)* | The Prepetition Secured Lender shall be granted, to the extent of any diminution in value of its interests in the Prepetition Collateral from and after the Petition Date, the following:<br><br>Adequate Protection Liens.  As adequate protection of the interests of the Prepetition Secured Lender in the Prepetition Collateral against any diminution in value of such interests, pursuant to sections 361 and 363(e) of the Bankruptcy Code, the Debtor shall grant to the Prepetition Secured Lender additional and replacement, continuing, valid, binding, enforceable, nonavoidable, and automatically perfected postpetition security interests in and liens on (the "Adequate Protection Liens") all of the Debtor's presently owned or hereafter acquired property and assets (including, subject to entry of a final order, any proceeds or property recovered in respect of the Debtor's claims or causes of action under sections 544, 545, 547, 548 or 550 of the Bankruptcy Code or any other similar state or federal law), whether such property and assets were acquired by the Debtor before or after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located, including, without limitation, all inventory, accounts receivable, general intangibles, chattel paper, contracts, owned real estate, real and personal property leaseholds, property, plants, fixtures and machinery and equipment, vehicles, vessels, deposit accounts, cash and any investment thereof, letter of credit rights, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, and the proceeds and products of the foregoing (collectively, together with the Prepetition Collateral and the Cash Collateral, the "Collateral").  The Adequate Protection Liens shall be subject and subordinate only to the Carve Out (as defined below) and shall secure the Prepetition Secured Obligations to the extent of any Diminution in Value of the Prepetition Secured Lender's interests in the Prepetition Collateral from and after the Petition Date.  The Adequate Protection Liens shall be enforceable against the Debtor, its estate and any successors thereto, including, without limitation, any trustee or other estate representative appointed in this Chapter 11 Case, or any case under chapter 7 of the Bankruptcy Code upon the conversion of the Chapter 11 Case, or in any other proceedings superseding or related to any of the foregoing (collectively, a "Successor Case").  Except as expressly provided in the Interim Order (including with respect to the Carve Out), the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Chapter 11 Case or any Successor Case, and the Adequate Protection Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Chapter 11 Case or | ¶ 4(a)-(d) |

any Successor Case, or upon the dismissal of the Chapter 11 Case or a Successor Case. The Adequate Protection Liens shall not be subject to sections 510, 549 or 550 of the Bankruptcy Code and, if approved in the Final Order, the Adequate Protection Liens shall not be subject to section 506(c) of the Bankruptcy Code. The Adequate Protection Liens shall be deemed legal, valid, binding, enforceable and perfected liens, not subject to subordination, impairment or avoidance, for all purposes in the Chapter 11 Case and any Successor Case. For the avoidance of doubt, the Adequate Protection Liens shall be deemed to be effective and perfected automatically as of the Petition Date and without the necessity of the execution by the Debtor, or the filing of, as applicable, mortgages, security agreements, pledge agreements, financing statements, state or federal notices, recordings (including, without limitation, any recordings with the United States Patent and Trademark or Copyright Office) or other agreements and without the necessity of taking possession or control of any Collateral. Except as otherwise expressly provided in the Interim Order (including with respect to the Carve Out), under no circumstances shall the Adequate Protection Liens be made subordinate to the lien of any other party, no matter when arising.

Adequate Protection Superpriority Claim. To the extent of any diminution in value of the interests of the Prepetition Secured Lender in the Prepetition Collateral, the Prepetition Secured Lender shall be granted, subject only to the payment of the Carve Out, an allowed superpriority administrative expense claim pursuant to sections 503(b), 507(a) and 507(b) of the Bankruptcy Code (the "507(b) Claim"), which 507(b) Claim shall be an allowed claim against the Debtor with priority over any and all administrative expenses and all other claims against the Debtor now existing or hereafter arising, of any kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and all other administrative expenses or other claims arising under any other provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 327, 328, 330, 331, 503(b), 507(a), 507(b) or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy or attachment. The 507(b) Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtor and the proceeds thereof, subject to the relative priorities set forth above.

Fees and Expenses. The Debtor is authorized and directed to pay, within ten (10) calendar days of delivery of an invoice (which shall include reasonable supporting detail, which may be redacted to protect privileged or confidential information), all reasonable and documented prepetition and postpetition fees and expenses of counsel to the Prepetition Secured Lender. Payment of all such fees and expenses shall not be subject to allowance by the Court and such professionals shall not be required to comply with the U.S. Trustee fee guidelines; provided, however, that the Debtor shall promptly provide copies of invoices received on account of the fees and expenses set forth above to the U.S. Trustee and counsel to any Committee appointed in the Chapter 11 Case, and

| | | |
|---|---|---|
| | the Court shall have exclusive jurisdiction over any objections raised by the Committee (if appointed) or the U.S. Trustee to the invoiced amount of the fees and expenses proposed to be paid, which objections may only be raised within ten (10) calendar days after delivery of an invoice(s) therefor and shall be limited to the issue of the reasonableness of such fees and expenses.  In the event that within ten (10) calendar days from delivery of such invoices the U.S. Trustee or counsel to the Committee (if appointed) raises an objection to a particular invoice, and the parties are unable to resolve such objection, the Court shall hear and determine such dispute; provided, however, that payment of invoices shall not be delayed based on any such objections and the relevant professional shall only be required to disgorge amounts objected to upon being "so ordered" pursuant to a final order of the Court. | |
| **Liens on Chapter 5 Actions**<br><br>*Local Rule 4001-2(a)(i)(D)* | None immediately provided in Interim Order.  Subject to entry of final order, the Adequate Protection Liens will extend to proceeds or property recovered in respect of the Debtor's claims or causes of action under sections 544, 545, 547, 548 or 550 of the Bankruptcy Code or any other similar state or federal law. | |
| **Carve Out**<br><br>*Local Rule 4001-2(a)(i)(F)* | The "Carve Out" means the sum of: (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $25,000 in the aggregate incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed by final order, and subject to the professional fee accrual budget attached as Exhibit B to the Interim Order (the "Accrual Budget"), all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtor pursuant to section 327, 328 or 363 of the Bankruptcy Code (the "Debtor Professionals") and any Committee appointed in the Chapter 11 Case pursuant to section 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before delivery by the Prepetition Secured Lender of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Debtor Professionals in an aggregate amount not to exceed $150,000, and Allowed Professional Fees of Committee Professionals (to the extent a Committee is appointed) in an aggregate amount not to exceed $25,000, in each case incurred after delivery by the Prepetition Secured Lender of the Carve Out Trigger Notice, to the extent allowed by final order (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap").  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the Prepetition Secured Lender to restructuring counsel to the Debtor, the U.S. Trustee and counsel to the Committee (if appointed), which notice may be delivered following the occurrence of an Event of Default, stating that the Post-Carve Out Trigger Notice Cap has been invoked. | ¶ 10 |

| | Notwithstanding anything to the contrary in the Interim Order, payment following the delivery of a Carve Out Trigger Notice of any of the statutory, Allowed Professional Fees or other fees covered by this Carve Out shall be paid (and shall be deemed to have been satisfied) first, from unencumbered assets or cash that is not Cash Collateral (if any) and second, if there are no remaining unencumbered assets or cash that is not Cash Collateral, from Cash Collateral. | |
|---|---|---|
| **Cross Collateralization**<br><br>*Local Rule 4001-2(a)(i)(A)* | None, other than replacement liens as adequate protection. | |
| **Findings Regarding Validity/Perfection/ Amount**<br><br>*Local Rule 4001-2(a)(i)(B)* | As set forth in the Interim Order, the Debtor has acknowledged and agreed as set forth therein, to the validity, perfection, priority, amount and enforceability of the Prepetition Secured Obligations, without prejudice to any other party's rights to assert claims, counterclaims or causes of actions, objections, contests or defenses prior to the expiration of the Challenge Period (as defined below). | ¶ E(iii) |
| **Challenge Period**<br><br>*Local Rule 4001-2(a)(i)(B)* | The stipulations and admissions contained in the Interim Order, including, without limitation, the Debtor's Stipulations (as defined in the Interim Order), shall be binding upon the Debtor and any of its successors (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for the Debtor) in all circumstances and for all purposes, and the Debtor is deemed to have irrevocably waived and relinquished all Challenges (as defined below) as of the Petition Date.  The stipulations and admissions contained in the Interim Order, including, without limitation, the Debtor's Stipulations, shall be binding upon all other parties in interest, including, without limitation, the Committee (if appointed) and any other person acting on behalf of the Debtor's estate, unless and to the extent that a party in interest with proper standing granted by order of the Court (or other court of competent jurisdiction) has filed an adversary proceeding or contested matter (i) within seventy-five (75) calendar days after entry of the Interim Order, subject to further extension by written agreement of the Debtor and the Prepetition Secured Lender, each acting in its sole discretion (the "Challenge Period" and, the date of expiration of the Challenge Period, the "Challenge Period Termination Date"), (ii) seeking to avoid, object to or otherwise challenge the findings or Debtor's Stipulations regarding: (a) the validity, enforceability, extent, priority or perfection of the mortgages, security interests and liens of the Prepetition Secured Lender; or (b) the validity, enforceability, allowability, priority, secured status or amount of the Prepetition Secured Obligations (any such claim, a "Challenge"), and (iii) there is a final order entered in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter. Upon the expiration of the Challenge Period Termination Date without the filing of a Challenge (or if any such Challenge is filed and overruled): (a) any and all such Challenges by any party (including, without limitation, the Committee (if appointed), any chapter 11 trustee, any examiner or other estate representative | ¶ 11 |

| | | |
|---|---|---|
| | appointed or elected in the Chapter 11 Case, and/or any chapter 7 trustee and/or examiner or other estate representative appointed or elected in a Successor Case) shall be deemed to be forever waived, released and barred; (b) the Prepetition Secured Obligations shall constitute allowed claims, not subject to counterclaim, setoff, recoupment, reduction, subordination, recharacterization, defense or avoidance for all purposes in the Debtor's Chapter 11 Case and any Successor Case; (c) Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding and perfected, not subject to recharacterization, subordination or avoidance; and (d) all of the Debtor's Stipulations and admissions contained in the Interim Order, including, without limitation, the Debtor's Stipulations, and all other waivers, releases, affirmations and other stipulations as to the priority, extent and validity as to the Prepetition Secured Lender's claims, liens and interests contained in the Interim Order shall be of full force and effect and forever binding upon the Debtor, the Debtor's bankruptcy estate, and all creditors, interest holders and other parties in interest in the Chapter 11 Case and any Successor Case.  If any such adversary proceeding or contested matter is timely filed, the stipulations and admissions contained in the Interim Order, including the Debtor's Stipulations, shall nonetheless remain binding and preclusive on any Committee (if appointed) and any other person or entity except to the extent that such stipulations and admissions were expressly challenged in such adversary proceeding or contested matter prior to the Challenge Period Termination Date.  Nothing in the Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including any Committee appointed in the Chapter 11 Case, standing or authority to pursue any cause of action belonging to the Debtor or its estate, including, without limitation, any Challenges with respect to the Loan Documents or Prepetition Secured Obligations, and an order of the Court conferring such standing on a Committee (if appointed) or other party in interest shall be a prerequisite for the prosecution of a Challenge by the Committee (if appointed) or such other party in interest. | |
| **506(c) Waiver**<br><br>*Local Rule 4001-2(a)(i)(C)* | Upon entry of the Final Order, no costs or expenses of administration which have been or may be incurred in the Chapter 11 Case at any time, or any future proceeding that may result therefrom, including any Successor Case, shall be charged against or recovered from the Prepetition Secured Lender or its claims or the Collateral (including the Prepetition Collateral) pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior express written consent of the Prepetition Secured Lender, and no such consent shall be implied, directly or indirectly, from any other action, inaction or acquiescence by the Prepetition Secured Lender or any of its representatives or agents.  Upon entry of the Final Order, the Debtor and its estate shall be deemed to have irrevocably waived, and shall be prohibited from asserting, any surcharge claim, under section 506(c) or otherwise, for any costs incurred, including those in connection with the preservation, protection or enhancement of, or realization by the Prepetition Secured Lender upon, the Collateral. | ¶ 14 |

| | | |
|---|---|---|
| **552(b) Wavier**<br><br>*Local Rule 4001-2(a)(i)(H)* | Upon entry of the Final Order, the Prepetition Secured Lender shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Lender with respect to proceeds, products, offspring or profits of any of the Collateral (including the Prepetition Collateral). | ¶ 18 |
| **Releases**<br><br>*Local Rule 4001-2(a)(ii)* | Subject to the entry of the Final Order, the Debtor forever, unconditionally and irrevocably releases, discharges and acquits the Prepetition Secured Lender, and each of its successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys, agents, and professionals, past, present and future, and its respective heirs, predecessors, successors and assigns (collectively, the "<u>Releasees</u>") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, reasonable attorneys' fees), debts, liens, actions and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether or not known or matured, arising out of or relating to, as applicable, the Loan Documents and/or the transactions contemplated thereunder including, without limitation, (i) any so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action with respect to the extent, validity, priority, perfection or avoidability of the Prepetition Liens and the Prepetition Secured Obligations.  The Debtor waives and releases any defense, right of counterclaim, right of set-off or deduction to the payment of the Prepetition Secured Obligations that the Debtor now has or may claim to have against the Releasees, arising out of, connected with, or relating to any and all acts, omissions or events occurring prior to the Court entering the Interim Order. | ¶ E(iv) |
| **Provisions Deeming Prepetition Debt to be Postpetition Debt**<br><br>*Local Rule 4001-2(a)(i)(E)* | None. | |
| **Non-Consensual Priming**<br><br>*Local Rule 4001-2(a)(i)(G)* | None. | |

58448/0001-16772741v8

**BASIS FOR RELIEF**

I.      **The Debtor's Request to Use Cash Collateral and
        Proposed Adequate Protection are Appropriate**

17.     The Debtor's use of property of its estate, including Cash Collateral, is governed by section 363 of the Bankruptcy Code.[5]  Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may use cash collateral as long as "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).

18.     Section 363(e) of the Bankruptcy Code provides for adequate protection of interests in property when a debtor uses cash collateral.  11 U.S.C. § 363(e).  Further, section 362(d)(1) of the Bankruptcy Code provides for adequate protection of interests in property due to the imposition of the automatic stay.  See In re Cont'l Airlines, 91 F.3d 553, 556 (3d Cir. 1996).  While section 361 of the Bankruptcy Code provides examples of forms of adequate protection, such as granting replacement liens and administrative claims, courts decide what constitutes sufficient adequate protection on a case-by-case basis.  Resolution Trust Corp. v. Swedeland Dev. Grp., Inc. (In re Swedeland Dev. Grp., Inc.), 16 F.3d 552, 564 (3d Cir. 1994) ("[A] determination of whether there is adequate protection is made on a case by case basis."); In re Satcon Tech. Corp., No. 12-12869, 2012 WL 6091160, at *6 (Bankr. D. Del. Dec. 7, 2012); see also In re Dynaco Corp., 162 B.R. 389, 394 (Bankr. D.N.H. 1993) (citing 2 COLLIER ON

---

[5]      The Bankruptcy Code defines "cash collateral" as follows:

Cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a).

17

BANKRUPTCY ¶ 361.01 [1] at 361-66 (15th ed. 1993) (explaining that adequate protection can take many forms and "must be determined based upon equitable considerations arising from the particular facts of each proceeding"); In re Mosello, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) ("[T]he determination of adequate protection is a fact-specific inquiry ... left to the vagaries of each case ....") (citation and quotation omitted).

19.     The concept of adequate protection is designed to shield a secured creditor from diminution in the value of its interest in collateral during the period of a debtor's use.  See In re Carbone Cos., 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) ("The test is whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral."); see also In re Cont'l Airlines, Inc., 154 B.R. 176, 180-81 (Bankr. D. Del. 1993) (holding that adequate protection for use of collateral under section 363 of the Bankruptcy Code is limited to use-based decline in value).

###### A.     The Proposed Adequate Protection for the Prepetition Secured Lender is Sufficient

20.     As set forth in the Interim Order and described above in the Highlighted Provisions, the Debtor proposes to provide the Prepetition Secured Lender with various forms of Adequate Protection.  The Debtor respectfully submits that, in light of the circumstances of the Chapter 11 Case, the proposed Adequate Protection is appropriate and sufficient to protect the Prepetition Secured Lender from any diminution in value to the Collateral during the interim period.  In particular, the Cash Collateral will be used to sustain the Debtor's business operations, allowing for the maximization of the value of the Debtor's estate.  If the Cash Collateral is not available for this purpose, the Debtor will be unable to fund payroll obligations, procure goods and services from vendors or otherwise maintain its operations, thereby dissipating value to the detriment of the Prepetition Secured Lender and other stakeholders.  The

use of the Cash Collateral will therefore protect the Prepetition Secured Lender's security interests by preserving the value of its collateral.  See In re 495 Cent. Park Ave. Corp., 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (evaluating "whether the value of the debtor's property will increase as a result of the" use of collateral in determining sufficiency of adequate protection); In re Salem Plaza Assocs., 135 B.R. 753, 758 (Bankr. S.D.N.Y. 1992) (holding that a debtor's use of cash collateral to pay operating expenses, thereby "preserv[ing] the base that generates the income stream," provided adequate protection to the secured creditor); In re Constable Plaza Assocs., L.P., 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991) (observing that debtor's use of rents to maintain and operate property "will serve to preserve or enhance the value of the building which, in turn, will protect the collateral covered by [the secured lender's] mortgage").

21.    In light of the foregoing, the Debtor submits that the proposed Adequate Protection to be provided for the benefit of the Prepetition Secured Lender is appropriate.  Thus, the Debtor's proposed Adequate Protection not only is necessary to protect the Prepetition Secured Lender against any diminution in value, but also is fair and appropriate on an interim basis under the circumstances of this Chapter 11 Case to ensure the Debtor is able to continue using the Cash Collateral in the near term, for the benefit of its estate and all parties in interest.

## II.    Failure to Obtain Immediate Interim Use of Cash Collateral Would Cause Immediate and Irreparable Harm

22.    Bankruptcy Rule 4001(b)(2) provides that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than fourteen (14) days after the service of such motion.  Fed. R. Bankr. P. 4001(b)(2).  However, the Court is authorized to conduct a preliminary expedited hearing on the Motion and authorize the Debtor's proposed use of Cash Collateral to the extent necessary to avoid immediate and irreparable harm to the Debtor's estate.  Id.

23.     The Debtor has an immediate postpetition need to use Cash Collateral. The Debtor cannot maintain the value of its estate during the pendency of the Chapter 11 Case without access to cash.  The Debtor will use cash to, among other things, continue operating its business and satisfy other working capital needs during the Chapter 11 Case.  The Debtor believes that all or substantially all of its available cash constitutes the Prepetition Secured Lender's Cash Collateral, as that term is used by section 363(c) of the Bankruptcy Code.  The Debtor therefore will be unable to proceed with operating its business without the ability to use Cash Collateral, and will suffer immediate and irreparable harm to the detriment of all creditors and other parties in interest.  In short, the Debtor's ability to finance its operations and the availability of sufficient working capital and liquidity to the Debtor through the use of Cash Collateral is vital to the preservation and maintenance of the value of the Debtor's estate.

24.     The Debtor, therefore, seeks immediate authority to use the Cash Collateral on an interim basis and as set forth in this Motion and in the Interim Order to prevent immediate and irreparable harm to its estate pending the Final Hearing pursuant to Bankruptcy Rule 400l(b)(2).  Accordingly, to the extent that the Debtor requires the use of Cash Collateral, the Debtor respectfully submits that it has satisfied the requirements of Bankruptcy Rule 4001(b)(2) to support an expedited preliminary hearing and immediate Cash Collateral availability on an interim basis.

### III.     Modification of the Automatic Stay is Appropriate

25.     The Cash Collateral Orders contemplate a modification of the automatic stay (to the extent applicable) as necessary to, *inter alia*, permit the Debtor to: (a) grant the security interests, liens and superpriority claims described above, and to perform such acts as may be requested to assure the perfection and priority of such security interests and liens; and

(b) authorize the Debtor to make certain payments in accordance with the terms of the Cash Collateral Orders. In addition, the Cash Collateral Orders provide for modification of the automatic stay to allow the Prepetition Secured Lender to exercise remedies upon the occurrence and during the continuance of an Event of Default, and after the giving of five (5) business days' prior written notice to the Debtor.

26.    Stay modification provisions of this kind are ordinary and standard terms of postpetition use by debtors-in-possession of prepetition collateral, and, in the Debtor's business judgment, are reasonable under the present circumstances. See, e.g., In re Open Road Films, LLC, Case No. 18-12012 (LSS) [Docket No. 51] (Bankr. D. Del. September 7, 2018) (terminating automatic stay after occurrence of termination event and applicable notice); In re RM Holdco LLC, Case No. 18-11795 (MFW) [Docket No. 53] (Bankr. D. Del. August 7, 2018) (same); In re Heritage Home Grp. LLC, Case No. 18-11736 (KG) [Docket No. 46] (Bankr. D. Del. July 31, 2018) (same); In re EBH Topco, LLC, Case No. 18-11212 (BLS) [Docket No. 55] (Bankr. D. Del. May 24, 2018) (same); In re Gibson Brands, Inc., Case No. 18-11025 (CSS) [Docket No. 71] (Bankr. D. Del. May 2, 2018) (same); In re Appvion, Inc., Case No. 17-12082 (KJC) [Docket No. 75] (Bankr. D. Del. October 5, 2017). Accordingly, the Debtor respectfully requests that the Court authorize the modification of the automatic stay in accordance with the terms set forth in the Cash Collateral Orders.

## **REQUEST FOR FINAL HEARING**

27.    Pursuant to Bankruptcy Rule 400l(b)(2), the Debtor requests that the Court set a date for the Final Hearing within thirty (30) days of the Petition Date and fix the date and time prior to the Final Hearing for parties to file objections to the relief requested by this Motion.

## NOTICE

28.     Notice of this Motion will be provided to: (i) the U.S. Trustee; (ii) counsel to the Prepetition Secured Lender; (iii) the parties on the list of creditors holding the 20 largest unsecured claims against the Debtor; (iv) the United States Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the Office of the United States Attorney for the District of Delaware; (vii) the Delaware State Treasury; (viii) the Delaware Secretary of State, Division of Corporations, Franchise Tax; (ix) all parties that have requested notice pursuant to Bankruptcy Rule 2002; and (x) all parties who are known, after reasonable inquiry, to have asserted a lien, encumbrance or claim in the Prepetition Collateral.  As this Motion is seeking "first day" relief, the Debtor will serve this Motion and any order entered with respect to this Motion as required by Local Rule 9013-1(m).  The Debtor submits that, in light of the nature of the relief requested, no other or further notice is required under the circumstances.

## WAIVER OF BANKRUPTCY RULES 6004(a) AND 6004(h)

29.     To implement the foregoing successfully, the Debtor requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtor has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h), to the extent applicable.

## NO PRIOR REQUEST

30.     No previous request for the relief sought herein has been made to this Court or any other court.

*[Remainder of Page Intentionally Left Blank]*

## CONCLUSION

WHEREFORE, for the reasons set forth herein and in the First Day Declaration, and based on the record of the Chapter 11 Case, the Debtor respectfully requests that this Court (a) enter the Cash Collateral Orders (i) authorizing the Debtor to use Cash Collateral on an interim and final basis subject to the terms and conditions set forth therein; (ii) granting adequate protection to the Prepetition Secured Lender to the extent set forth in the Cash Collateral Orders; (iii) scheduling the Final Hearing, pursuant to the Interim Order, within approximately thirty (30) days of the commencement of the Chapter 11 Case, to consider approval of this Motion on a final basis; and (iv) granting related relief; and (b) grant the Debtor such other and further relief as may be just and proper.

Dated: Wilmington, Delaware
       February 3, 2019

                                        COLE SCHOTZ P.C.


                                        /s/ David R. Hurst
                                        David R. Hurst (I.D. No. 3743)
                                        Patrick J. Reilley (I.D. No. 4451)
                                        500 Delaware Avenue, Suite 1410
                                        Wilmington, Delaware 19801
                                        Telephone: (302) 652-3131
                                        Facsimile: (302) 652-3117

                                        – and –

                                        Jacob S. Frumkin
                                        25 Main Street
                                        Hackensack, New Jersey 07601
                                        Telephone: (201) 489-3000
                                        Facsimile: (201) 489-3479

                                        *Proposed Counsel for Debtor and*
                                        *Debtor-in-Possession*

23