## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------- x
                                                        :
In re:                                                  :   Chapter 11
                                                        :
NOVUM PHARMA, LLC,                                      :   Case No. 19-10209 (KJC)
                                                        :
                            Debtor.[1]                  :   Hrg. Date: 3/6/19 at 11:00 a.m. (ET)
                                                        :   Obj. Deadline: 2/27/19 at 4:00 p.m. (ET)
                                                        :
------------------------------------------------------- x
```

### DEBTOR'S MOTION FOR ORDERS (I)(A) APPROVING BIDDING PROCEDURES FOR SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (B) APPROVING BID PROTECTIONS, (C) SCHEDULING AUCTION FOR, AND HEARING TO APPROVE, SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (D) APPROVING FORM AND MANNER OF NOTICES OF SALE, AUCTION AND SALE HEARING, (E) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES AND (F) GRANTING RELATED RELIEF; AND (II)(A) APPROVING SALE OF DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, (B) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF UNEXPIRED LEASES AND EXECUTORY CONTRACTS AND (C) GRANTING RELATED RELIEF

Novum Pharma, LLC, the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Debtor"), hereby moves (the "Motion") for the entry of orders, pursuant to sections 105(a), 363, 365, 503 and 507(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 6004-1 and 9006-1(e) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"): (i)(a) approving bidding procedures for the sale of substantially all of the Debtor's assets, (b) approving bid protections, (c) scheduling an auction for, and a hearing to approve, the sale of substantially all of the Debtor's assets, (d) approving

---

[1]       The last four digits of the Debtor's federal tax identification number are 7895.  The mailing address for the Debtor is 200 South Wacker Drive, 31st Floor, Chicago, IL 60606.

the form and manner of notices of the sale, auction and sale hearing, (e) approving assumption and assignment procedures and (f) granting related relief; and (ii)(a) approving the sale of the Debtor's assets free and clear of liens, claims, interests and encumbrances, (b) authorizing the assumption and assignment of unexpired leases and executory contracts and (c) granting related relief.  In support of the Motion, the Debtor respectfully represents as follows:

<strong><u>JURISDICTION AND VENUE</u></strong>

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This is a core proceeding under 28 U.S.C. § 157(b) and, pursuant to Local Rule 9013-1(f), the Debtor consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2.      Venue of this case and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and legal predicates for the relief requested herein are sections 105(a), 363, 365, 503 and 507(a) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 6006 and Local Rules 6004-1 and 9006-1(e).

<strong><u>BACKGROUND</u></strong>

4.      On February 3, 2019 (the "<u>Petition Date</u>"), the Debtor commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (the "<u>Chapter 11 Case</u>"). The factual background regarding the Debtor, including its business operations, its capital and debt structure, and the events leading to the filing of the Chapter 11 Case, is set forth in the

2

Declaration of Thomas S. O'Donoghue, Jr. in Support of Chapter 11 Petition and First Day

Pleadings [Docket No. 3] (the "First Day Declaration").

5.      The Debtor continues to manage and operate its business as a debtor-in-

possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6.      On February 12, 2019, the United States Trustee for the District of

Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the

"Committee") pursuant to section 1102(a) of the Bankruptcy Code [Docket No. 39].  No trustee

or examiner has been appointed in the Chapter 11 Case.

7.      On January 23, 2019, the Debtor retained Teneo Capital LLC ("Teneo"), a

leading investment banking firm specializing in mergers and acquisitions, debt and equity

placements and financial restructuring.  Teneo is working closely with the Debtor and its

professionals to identify interested buyers and to facilitate a robust marketing and sale process.

## RELIEF REQUESTED

8.      By this Motion, the Debtor requests, pursuant to sections 105(a), 363, 365,

503 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 6006 and Local Rules

6004-1 and 9006-1(e), entry of the following:

      (a)      An order, substantially in the form attached hereto as Exhibit A (the "Bidding Procedures Order"),[2]

            (i)      Authorizing and approving proposed bidding procedures (the "Bidding Procedures"), substantially in the form attached to the Bidding Procedures Order as Exhibit 1, in connection with the sale (the "Sale") of substantially all of the Debtor's assets (the "Assets");

           (ii)      Authorizing the Debtor to select a stalking horse bidder ("Stalking Horse Bidder") and to provide, if needed, Bid Protections to a Stalking Horse Bidder, as set forth in the Bidding Procedures,

---

[2]      Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding Procedures Order or the Bidding Procedures, as applicable.

including (i) a break-up fee of up to 3% of the purchase price set forth in the Stalking Horse Bid, and/or (ii) reimbursement of the reasonable fees and expenses of the Stalking Horse Bidder (subject to a cap of $75,000);

(iii)   Scheduling an auction of the Assets (the "Auction");

(iv)   Scheduling a hearing (the "Sale Hearing") to consider approval of the proposed Sale;

(v)   Authorizing and approving the (A) notice of the Sale of the Assets, the Auction and the Sale Hearing, substantially in the form attached to the Bidding Procedures Order as Exhibit 2 (the "Sale Notice") and (B) approving the form and manner of the notice of undisputed cure amounts that must be paid to cure all prepetition defaults with respect to the assumption and assignment of certain contracts and leases, substantially in the form attached as Exhibit 3 to the Bidding Procedures Order (the "Cure Notice");

(vi)   Authorizing and approving procedures for the assumption and assignment of the Debtor's executory contracts and unexpired leases (each a "Proposed Assumed Contract") and the determination of Cure Costs with respect thereto (collectively, the "Assumption and Assignment Procedures"); and

(vii)   Granting related relief.

(b)   An order (the "Sale Order")[3] authorizing and approving the following:

(i)   The Sale of the Assets free and clear of all liens, claims, interests and encumbrances;

(ii)   The assumption and assignment of the Proposed Assumed Contracts designated by the proposed purchaser of the Assets in connection with the proposed Sale; and

(iii)   Granting related relief.

---

[3]   The Debtor will file a form of Sale Order on or before March 6, 2019.

58448/0001-16649347v6

## BIDDING PROCEDURES

### I.    Overview

9.      The Bidding Procedures are designed to promote a robust and competitive Sale process to be conducted within the first thirteen weeks of the Debtor's Chapter 11 Case. Although the Debtor has not yet identified a Stalking Horse Bidder, the Bidder Procedures provide that the Debtor, in consultation with the Committee, may designate a Stalking Horse Bidder on or before April 8, 2019, which is two weeks prior to the proposed Bid Deadline.

10.     While all interested bidders should read the Bidding Procedures in their entirety, the following summary describes the salient points of the Bidding Procedures and discloses certain information required pursuant to Local Rule 6004-1.[4]

| | |
|---|---|
| **Requirement to Demonstrate Financial Wherewithal to Consummate a Sale**<br><br>*Local Rule 6004-1(c)(i)(A)(2)* | Potential Bidders' bids must contain written evidence of a firm, irrevocable commitment for financing, or other evidence of ability to consummate the proposed transaction, that will allow the Debtor to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the transaction contemplated by the Purchase Agreement (as defined below). |
| **Confidentiality Agreements**<br><br>*Local Rule 6004-1(c)(i)(A)(3)* | Potential Bidders must execute a confidentiality agreement (to be delivered prior to the distribution of any confidential information by the Debtor to a Potential Bidder) in form and substance satisfactory to the Debtor, which shall inure to the benefit of any purchaser of the Assets. |
| **Requirement of Binding Offer**<br><br>*Local Rule 6004-1(c)(i)(A)(4)* | Potential Bidders must make a binding offer that provides for payment by the Potential Bidder in cash or other consideration for the purchase of some or all of the Assets pursuant to section 363 of the Bankruptcy Code. |
| **Bid Deadline**<br><br>*Local Rule 6004-1(c)(i)(B)(1)* | Potential Bidders must deliver their bids as set forth in the Bidding Procedures no later than April 22, 2019, at 5:00 p.m. (ET). |
| **Provisions Governing the Form of Bid** | Potential Bidders must deliver a duly authorized and executed copy of an asset purchase agreement (a "Purchase Agreement"), which includes the purchase price for the Assets and all exhibits and schedules thereto, together with copies marked to show any amendments and modifications to (i) the form Purchase Agreement |

---

[4]      This summary disclosure contains a description of only certain terms of the Bidding Procedures.  A copy of the Bidding Procedures is attached to the Bidding Procedures Order as Exhibit 1.  The Bidding Procedures themselves should be consulted for a full description of the terms thereof.  To the extent that there are any inconsistencies between the terms set forth herein and in the Bidding Procedures, the Bidding Procedures shall control.

58448/0001-16649347v6

| | |
|---|---|
| *Local Rule*<br>*6004-1(c)(i)(B)(2)* | to be filed by the Debtor with the Bankruptcy Court, and (ii) the proposed Sale Order.<br><br>Bids must state that the Potential Bidder's offer is irrevocable until the selection of the Successful Bidder and, if applicable, the Alternate Bidder.  If a Qualified Bidder is selected as a Successful Bidder, then its offer shall be deemed to remain irrevocable until after the closing of the contemplated Sale transaction.  Any Alternate Bidder shall be required to keep its Alternate Bid open and irrevocable until the closing of the transaction contemplated by the relevant Successful Bid. |
| **Deposit**<br><br>*Local Rule*<br>*6004-1(c)(i)(B)(3)* | Bids must be accompanied by a good faith deposit in the form of a wire transfer (to a bank account specified by the Debtor), certified check or such other form acceptable to the Debtor, payable to the order of the Debtor (or such other party as the Debtor may specify) in an amount equal to ten percent (10%) of the Purchase Price.<br><br>If a Successful Bidder or Alternate Bidder fails to consummate a proposed transaction because of a breach or failure to perform on the part of such Successful Bidder or Alternate Bidder, in addition to any and all rights, remedies and/or causes of action that may be available to the Debtor, the defaulting Successful Bidder's or Alternate Bidder's Deposit shall be forfeited to the Debtor, and such Deposit shall irrevocably become property of the Debtor.  In addition, the Debtor reserves the right to seek all available damages from the defaulting Successful Bidder or Alternate Bidder. |
| **Additional Bid Requirements**<br><br>*Local Rule*<br>*6004-1(c)(i)(B)(4)* | In addition to the foregoing, Potential Bidders must include the following in their respective Bids:<br><br>(i) confirmation that there are no conditions precedent to such bidder's ability to enter into a definitive agreement and that all necessary internal and shareholder approvals have been obtained prior to submission of the bid;<br><br>(ii) a description of each governmental, regulatory and other third-party approval required for the bidder to consummate the transaction, including in connection with the assignment of any executory contracts and unexpired leases, and the time period within which the bidder expects to receive such approvals;<br><br>(iii) a description of which particular executory contracts and unexpired leases the bidder wishes to assume, if any, and that the bidder will agree to pay any and all related cure costs, if any;<br><br>(iv) sufficient information concerning the bidder's ability to provide adequate assurance of future performance with respect to executory contracts and unexpired leases being assumed, if any, and an acknowledgement that such information may be shared by the Debtor with contract and lease counterparties;<br><br>(v) an acknowledgement and representation that the bidder: (a) has had an opportunity to conduct any and all required due diligence regarding the Assets prior to making its offer; (b) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid; (c) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Assets or the completeness of any information provided in connection therewith or with the Auction, except as expressly stated in the Purchase Agreement; and (d) is not entitled to any expense reimbursement, break-up fee or similar type of fee or payment in connection with its bid; |

58448/0001-16649347v6

| | |
|---|---|
| | (vi) evidence, in form and substance reasonably satisfactory to the Debtor, of authorization and approval from the Potential Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Purchase Agreement; and<br><br>(vii) such other information reasonably requested by the Debtor. |
| **Stalking Horse Break-Up Fee and Expense Reimbursement**<br><br>*Local Rule 6004-1(c)(i)(C)(2)* | The Debtor, in consultation with the Committee, may designate a Stalking Horse Bidder and provide certain Bid Protections.  Such Bid Protections may consist of (i) a Break-Up Fee not to exceed 3% of the purchase price set forth in a Stalking Horse Bid and/or (ii) an Expense Reimbursement for the reasonable fees and expenses incurred by a Stalking Horse Bidder (in an amount not to exceed $75,000).<br><br>The payment of the Bid Protections on the terms agreed to by the Debtor and any Stalking Horse Bidder shall be deemed approved pursuant to the Bidding Procedures Order, and shall not require any further approval by the Bankruptcy Court.  Until paid, any Break-Up Fee and Expense Reimbursement provided pursuant to the Bidding Procedures Order shall constitute allowed superpriority administrative expense claims arising in the Debtor's bankruptcy case under sections 503(b), 507(a)(2) and 507(b) of the Bankruptcy Code. |
| **Bidding Increments**<br><br>*Local Rule 6004-1(c)(i)(C)(3)* | The initial Overbid must exceed the Baseline Bid, in the first round of bidding, and the Leading Bid, in each subsequent round of bidding, by $50,000 (the "<u>Minimum Overbid Increment</u>"). |
| **Treatment of Break-Up Fee and Expense Reimbursement at Auction**<br><br>*Local Rule 6004-1(c)(i)(C)(4)* | If the Debtor designated a Stalking Horse Bidder with respect to any Auction, any bid at such Auction must exceed the Stalking Horse Bid by at least (i) the Break-Up Fee (if any) and (ii) the anticipated approximate Expense Reimbursement (which amount shall not exceed $75,000), in addition to meeting any Minimum Overbid Increment. |
| **Provisions Governing Modifications to Bidding Procedures**<br><br>*Local Rule*<br><br>*6004-1(c)(i)(D)* | The Debtor reserves the right and has the authority, in consultation with the Committee, to take all steps to maximize the value of the Assets, including to modify the Bidding Procedures at any time in any fashion, with reasonable notice to Qualified Bidders, including, without limitation, to (a) adjourn or modify any of the dates set forth herein one or more times for any reason, (b) request an earlier Sale Hearing, (c) terminate the Bidding Procedures at any time to pursue an alternative restructuring strategy that maximizes value for the Debtor's estate, (d) determine that any Qualified Bids are Successful Bids or Alternate Bids, (e) reject at any time, any bid that is: (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or the Bidding Procedures or (iii) contrary to the best interests of the Debtor and its estate and creditors or (f) accept as a Qualified Bidder or Qualified Bid a bidder or bid that does not otherwise meet the requirements set forth in the Bidding Procedures. |
| **Provisions Governing Alternate Bidders**<br><br>*Local Rule 6004-1(c)(i)(E)* | If the Successful Bidder fails to consummate any Sale for any reason, then the respective Alternate Bid will be deemed to be a Successful Bid and the Debtor shall be authorized, but not required, to effectuate the transactions contemplated by the respective Alternate Bid without further order of the Court.  The Debtor and any other person may pursue any and all remedies available under law against a Successful Bidder or Alternate Bidder in connection with its failure to consummate a Sale. |

58448/0001-16649347v6

## II.    Key Dates and Deadlines

11.    Consistent with the Debtor's need to consummate a Sale of the Assets as quickly and efficiently as practicable, the Debtor proposes the following key dates and deadlines for the Sale process, certain of which dates and deadlines may be subject to extension in accordance with the Bidding Procedures:

| | |
|---|---|
| **March 6, 2019 (11:00 a.m. ET)** | Hearing to consider approval of the Bidding Procedures |
| **April 12, 2019 (4:00 p.m. ET)** | Deadline to Object to Sale |
| **April 22, 2019 (5:00 p.m. ET)** | Deadline to Submit Qualifying Bid |
| **April 24, 2019 (10:00 a.m. ET)** | Auction (if Qualified Bid(s) received) |
| **April 26, 2019 (10:00 a.m. ET)** | Proposed date of Sale Hearing and entry of Sale Order |

## III.    Noticing Procedures

12.    Under Bankruptcy Rule 2002(a) and (c), the Debtor is required to notify its creditors of the proposed Sale of the Assets, including disclosure of the time and place of the Auction, the terms and conditions of the Sale and the deadline for filing any objections thereto. The Sale Notice (a copy of which is attached as Exhibit 2 to the Bidding Procedures Order) contains information required under Bankruptcy Rule 2002(a) and (c), and also includes details about the Bidding Procedures and the procedures for submission of competing Bids.  The information will enable interested parties to participate in the Auction and the Sale Hearing if they so choose.  The Debtor accordingly requests that the Court approve the form and content of the Sale Notice.

13.    Within three (3) business days after entry of the Bidding Procedures Order (the "Initial Mailing Date"), the Debtor proposes to serve the Bidding Procedures Order, the Bidding Procedures and the Sale Notice by first-class mail, postage prepaid, upon (a) all entities known to have expressed an interest in a transaction, if any, with respect to some or all of the

8

Assets during the past three (3) months; (b) the U.S. Trustee; (c) counsel to the Committee;

(d) counsel to the Debtor's prepetition secured lender; (e) all entities known to have asserted any

lien, claim, interest or encumbrance in or upon any of the Assets; (f) all federal, state and local

regulatory authorities that regulate any aspect of the Debtor's business; (g) the Securities and

Exchange Commission; (h) the Internal Revenue Service; (i) all state and local taxing authorities

in the states in which the Debtor has or may have any tax liability; (j) the non-Debtor parties to

the Proposed Assumed Contacts; (k) the Office of the United States Attorney for the District of

Delaware; (l) the Delaware State Treasury; (m) the Delaware Secretary of State, Division of

Corporations, Franchise Tax; (n) all parties to pending litigation with the Debtor; and (o) all

parties that have requested notice pursuant to Del. Bankr. L.R. 2002-1(b) (the "Initial Mailing

Service List").  In addition, on or before the Initial Mailing Date, the Debtor's claims and

noticing agent will post a copy of the Bidding Procedures Order, the Bidding Procedures and the

Sale Notice to the website that it maintains for the Debtor in the Chapter 11 Case.

   14. Within seven (7) business days after entry of the Bidding Procedures

Order (the "Final Mailing Date"), the Debtor proposes to serve the Sale Notice by first-class

mail, postage prepaid, upon all entities listed in the Debtor's creditor matrix [Docket No. 10],

other than those entities already given notice pursuant to the prior paragraph.

   15. Finally, within fourteen (14) business days after entry of the Bidding

Procedures Order, the Debtor proposes to publish the Sale Notice (modified for publication, as

necessary) in the national edition of either *The Wall Street Journal*, *The New York Times* or *USA

Today*.

   16. The Debtor submits that (a) the notice to be provided through the Sale

Notice and (b) the method of service and publication proposed herein constitutes good and

adequate notice of the Sale of the Assets and the proceedings to be had with respect thereto. Therefore, the Debtor respectfully requests that the Court approve the foregoing notice procedures.

## ASSUMPTION AND ASSIGNMENT PROCEDURES

17.    In addition to the procedures set forth above, the Debtor also seeks approval of the Assumption and Assignment Procedures set forth below to facilitate the fair and orderly assumption and assignment of the Proposed Assumed Contracts in conjunction with any Sale contemplated by a Successful Bid.

18.    The proposed Assumption and Assignment Procedures are as follows:

(a)    **Cure Notice.**  Within fourteen (14) days after entry of the Bidding Procedures Order, the Debtor proposes to file with the Court a schedule setting forth the Proposed Cure Amounts (as defined herein) and serve the Cure Notice on each contract counterparty (each a "Contract Counterparty") under an executory contract or unexpired lease that may be assumed by the Debtor and assigned to the Successful Bidder by first class mail.  The Cure Notice shall set forth:  (i) the contract(s) and/or lease(s) that may be assumed by the Debtor and assigned in connection with a Sale; (ii) the name and address of the Contract Counterparty thereto; (iii) the amount, if any, determined by the Debtor to be necessary to be paid to cure any existing default in accordance with sections 365(b) and 365(f)(2) of the Bankruptcy Code (the "Cure Amount"); and (iv) the deadline by which any such Contract Counterparty must file an objection to the proposed Cure Amount; provided, however, that the presence of any contract or lease on a Cure Notice does not constitute an admission that such contract or lease is an executory contract or unexpired lease.

(b)    **Objections to Cure Amounts or Assumption and Assignment.**  The Debtor proposes that objections to any Cure Amount or to the assumption and assignment (on any grounds other than an assignee has not provided adequate assurance of future performance), must: (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Code, Bankruptcy Rules and the Local Rules; (iii) state with particularity the legal and factual basis for the objection; and (iv) be filed with the Court and served, so as to be actually received by the Sale Objection Deadline (April 12, 2019 at 4:00 p.m. (ET)), on: (a) proposed counsel to the Debtor, Cole Schotz P.C., 500 Delaware Avenue, Suite 1410, Wilmington, DE 19801 (Attn: David R. Hurst, Esq. and Patrick J. Reilley, Esq.) and 25

Main Street, Hackensack, NJ 07601 (Attn: Jacob S. Frumkin, Esq.); (b) proposed counsel to the Committee, Sills Cummis & Gross P.C., One Riverfront Plaza, Newark, NJ 07102 (Attn: Boris I. Mankovetskiy, Esq. and Andrew Sherman, Esq.) <u>and</u> Klehr Harrison Harvey Branzburg LLP, 919 North Market St., Suite 1000, Wilmington, DE 19801 (Attn: Morton R. Branzburg, Esq. and Richard M. Beck, Esq.); (c) counsel to the Debtor's prepetition secured lender, Hodgson Russ LLP, The Guaranty Building, 140 Pearl Street, Buffalo, NY 14202 (Attn: James C. Thoman, Esq.) <u>and</u> David A. Robinson, Esq., 45 Rockefeller Plaza, Suite 2000, New York, NY 10111; and (d) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: David Buchbinder, Esq.).

(c)     **Assumption and Assignment Notice**.  As soon as reasonably practical after the selection of a Successful Bid, the Debtor proposes to serve, by facsimile, electronic transmission, hand delivery or overnight mail, an assumption and assignment notice (the "<u>Assumption and Assignment Notice</u>") on each counterparty to a contract or lease designated by the Successful Bidder as a contract or lease that will be assumed by the Debtor and assigned to such Successful Bidder.  The Assumption and Assignment Notice shall set forth: (i) the identity of the Successful Bidder; (ii) the contract(s) and/or lease(s) designated for assumption by the Debtor and assignment to the Successful Bidder; (iii) the name and address of the Contract Counterparty thereto; and (iv) the proposed effective date of the assignment (subject to the right of the Debtor and Successful Bidder to withdraw such request for assumption and assignment prior to the consummation of the sale); <u>provided</u>, <u>however</u>, that the presence of any contract or lease on an Assumption and Assignment Notice does not constitute an admission that such contract or lease is an executory contract or unexpired lease

(d)     **Effect of Filing an Objection to a Cure Amount or Assumption and Assignment.**  A properly filed and served objection to a Cure Notice or Assumption and Assignment Notice will reserve such objecting party's rights against the Debtor with respect to the relevant assumption and assignment and/or objection to the Cure Amount of a contract or lease, but will not constitute an objection to the remaining relief requested in this Motion.

(e)     **Adequate Assurance of Future Performance**.  The Debtor proposes that within one (1) business day of receipt of a Qualified Bid from a bidder (the "<u>Adequate Assurance Deadline</u>"), it will provide the necessary financial information to demonstrate that a Qualified Bidder can provide adequate assurance of future performance under section 365 of the Bankruptcy Code (the "<u>Adequate Assurance Information</u>") to those counterparties to the Proposed Assumed Contracts (or their counsel) who

have (x) submitted a written request (by e-mail to Debtor's counsel is acceptable) for Adequate Assurance Information and (y) confirmed in writing to the Debtor's counsel (by e-mail is acceptable) their agreement to keep such Adequate Assurance Information strictly confidential and use it solely for the purpose of evaluating whether a Qualified Bidder has provided adequate assurance of future performance under the applicable Assumed Contract; provided, however, that the Qualified Bidder may require the counterparties to the applicable Proposed Assumed Contract to execute confidentiality agreements prior to the remittance of any confidential, non-public information to such counterparty.  The Debtor proposes that any objection (an "Assumption Objection") to the provision of adequate assurance of future performance of an executory contract or unexpired lease must be filed with the Court on or before April 25, 2019 at 4:00 p.m. (ET) (the "Adequate Assurance Objection Deadline").  Any such objection must state the state with particularity the legal and factual basis for the objection.

(f)   **Dispute Resolution.**  If any objection to the proposed assumption and assignment of a contract or lease, adequate assurance or Cure Amount is timely filed, a hearing with respect to such objection will be held before the Honorable Kevin J. Carey, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 N. Market Street, 5th Floor, Courtroom No. 5, Wilmington, DE 19801.  A hearing regarding the Cure Amount, if any, may be continued until after the closing of the Sale.

## BASIS FOR RELIEF REQUESTED

### I.    The Court Should Approve The Bidding Procedures

#### A.    The Bidding Procedures Are Fair and Are Designed to Maximize the Value Received for the Assets

19.    The Bidding Procedures are specifically designed to promote what courts have deemed to be the paramount goal of any proposed sale of property of a debtor's estate: maximizing the value of sale proceeds received by the estate.  See Burtch v. Ganz (In re Mushroom Transp. Co.), 382 F.3d 325, 339 (3d Cir. 2004) (finding that a debtor had a fiduciary duty to maximize and protect the value of the estate's assets); Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.), 107 F.3d 558, 564-65 (8th Cir. 1997) (recognizing that the main goal of any proposed sale of property of a debtor's estate is to maximize value).  Courts

12

uniformly recognize that the procedures established for the purposes of enhancing competitive bidding are consistent with the fundamental goal of maximizing value of a debtor's estate.  <u>See Calpine Corp v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)</u>, 181 F.3d 527, 537 (3d Cir. 1999) (noting that bidding procedures that promote competitive bidding provide a benefit to a debtor's estate); <u>Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)</u>, 147 B.R. 650, 659 (S.D.N.Y. 1992) (observing that sale procedures "encourage bidding and . . . maximize the value of the debtor's assets").

20.    The Bidding Procedures provide for an orderly, uniform and competitive process through which interested parties may submit offers to purchase the Assets.  The Debtor, with the assistance of its advisors, has structured the Bidding Procedures to promote active bidding by interested parties and to confirm the highest or otherwise best offer reasonably available for the Assets.  Additionally, the Bidding Procedures will allow the Debtor to conduct the Auction in a fair and transparent manner that will encourage participation by financially capable bidders with demonstrated ability to consummate a timely Sale.  Accordingly, the Debtor submits that approval of the Bidding Procedures is in the best interests of the Debtor, its creditors and all parties in interest.

### B.    <u>Credit Bidding Should be Authorized</u>

21.    Section 363(k) of the Bankruptcy Code provides that, unless the court orders otherwise for cause, the holder of a claim secured by property that is the subject of a section 363 sale "may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property."  11 U.S.C. § 363(k).  Even if a secured creditor is undersecured, as determined in accordance with section 506(a) of the Bankruptcy Code, it may bid the total face value of its claim—rather than the

claim's economic value—on its collateralized assets under section 363(k).  See Cohen v. KB

Mezzanine Fund II, LP (In re Submicron Sys. Corp.), 432 F.3d 448, 459 (3d Cir. 2006) ("It is

well settled among district and bankruptcy courts that creditors can bid the full face value of their

secured claims under § 363(k).").

22.    Under the Bidding Procedures, any secured creditor holding allowed

secured claims against the Debtor, including, for avoidance of doubt, RGP Pharmacap, LLC (the

"Prepetition Secured Lender"), will have the right, subject to the provisions of the Bankruptcy

Code, applicable law and any agreements between secured creditors, to credit bid such claims to

the extent of such secured party's interest or lien on the Assets sold.  The Debtor submits that

such credit bidding should be approved.

**C.    The Form and Manner of Notice is Appropriate**

23.    The Debtor believes that it will obtain the maximum recovery for creditors

of the estate if the Assets are sold through a well-publicized Sale and Auction.

24.    Under Bankruptcy Rules 2002(a) and (c), the Debtor is required to notify

creditors of the proposed Sale of the Debtor's Assets, including a disclosure of the time and

place of an auction, the terms and conditions of a Sale and the deadline for filing any objections.

The Debtor submits that the notice procedures herein comply fully with Bankruptcy Rule 2002

and are reasonably calculated to provide timely and adequate notice of the Sale by auction to the

Debtor's creditors and other interested parties, as well as to those parties who have expressed an

interest, or may express an interest, in bidding on the Assets.  The proposed time frame between

the filing of this Motion, the commencement of the bidding process and the Auction should

provide interested purchasers ample time to participate in the Auction.

**D.**      **The Proposed Break-Up Fee and Expense Reimbursement Are Appropriate Under the Circumstances**

25.      As set forth in the Bidding Procedures, in the event the Debtor, in consultation with the Committee, selects a Stalking Horse Bidder, the Debtor requests the right to provide the following bidding protections to a Stalking Horse Bidder (a) a Break-Up Fee in an amount not to exceed 3% of the purchase price set forth in any Stalking Horse Bid, to be paid to a Stalking Horse Bidder upon entry of an order approving, or the consummation of, an alternative transaction; and/or (b) an Expense Reimbursement of a Stalking Horse Bidder's reasonable fees and expenses (in an amount not to exceed $75,000).

26.      Bid protections are standard and oftentimes necessary components of sales outside the ordinary course of business under section 363 of the Bankruptcy Code, and encourage potential purchasers to invest the requisite time, money and effort to conduct due diligence and sale negotiations with a debtor despite the inherent risks and uncertainties of the chapter 11 process. Integrated Res., 147 B.R. at 660 ("Break-up fees and other strategies may be legitimately necessary to convince a 'white knight' to enter the bidding by providing some form of compensation for the risks it is undertaking.") (internal quotations omitted); see also In re ALC Holdings LLC, Case No. 11-13853 (MFW) (Bankr. D. Del. Jan. 10, 2012) (approving expense reimbursement in favor of stalking horse purchaser that also served as administrative agent and postpetition lender).

27.      Proposed bid protections should be approved in cases where implementing them would serve the best interests of the estate. See, e.g., In re S.N.A. Nut Co., 186 B.R. 98, 105 (Bankr. N.D. Ill. 1995) ("Under either the breakup fee or administrative expense analysis, this Court must determine whether reimbursing [a bidder's] costs and expenses is in the best interests of the estate."); In re Am. W. Airlines, Inc., 166 B.R. 908, 912 (Bankr. D. Ariz. 1994)

15

("The standard is not whether a break-up fee is within the business judgment of the debtor, but whether the transaction will further the diverse interests of the debtor, creditors and equity holders, alike.  The proposed break-up fee must be carefully scrutinized to insure that the Debtor's estate is not unduly burdened and that the relative rights of the parties in interest are protected.") (internal citation and quotations omitted).  Typically, this means that some benefit must be provided to the debtor's estate.  O'Brien, 181 F.3d at 533 ("Such fees [to the stalking horse bidder] could be awarded under [section 503] only if [its] participation in the bidding process was necessary to accord the estate an actual benefit."); Integrated Res., 147 B.R. at 559 ("Break-up fees are important tools to encourage bidding and to maximize the value of the debtor's assets.").

28.    In O'Brien the Third Circuit found that whether breakup fees and expenses could be paid to Calpine Corp. as a "stalking horse" depended on whether such fees were necessary to preserve the value of the estate.  O'Brien, 181 F.3d at 536.  More specifically, the court determined that whether these protections were "necessary" depended on whether they provided a benefit to the debtor's estate by promoting competitive bidding or researching the value of the assets at issue to increase the likelihood that the selling price reflected the true value of the company.  Id. at 537.  Here, the Debtor believes that approval of the Bid Protections will help create such a competitive bidding process by encouraging a Stalking Horse Bid, which would set a floor for the value of the Assets and attract other potential buyers to bid.  A proposed break-up fee should be approved so long as it is reasonable in light of a stalking horse bidder's projected efforts and, in terms of its percentage and amount, is of the same order of magnitude as break-up fees approved in other cases.  The Break-Up Fee is reasonable and consistent with the range of bid protections typically approved in bankruptcy courts in this District and elsewhere.

29.      The Debtor believes that the proposed Bid Protections, if implemented, are fair and reasonably compensate the Stalking Horse Bidder for taking actions that will benefit the Debtor's estate.  The Bid Protections will compensate the Stalking Horse Bidder for the time, diligence and professional fees incurred in negotiating the terms of the definitive asset purchase agreement.

**II.      The Court Should Approve the Proposed Sale**

      **A.      The Proposed Sale Satisfies the Requirements of Section 363 of the Bankruptcy Code**

30.      Ample authority exists for approval of the Sale contemplated by this Motion.  Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of a debtor's estate, courts have approved the authorization of a sale of a debtor's assets if such sale is based upon the sound business judgment of the debtor.  See, e.g., Meyers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996) ("[U]nder normal circumstances the court would defer to the trustee's judgment so long as there is a legitimate business justification."); Official Comm. Of Unsecured Creditors of LTV Aerospace and Defense Co. v. LTV Corp. (In re Chateaugay Corp.), 973 F.2d 141, 143 (2d Cir. 1992).

31.      Courts typically consider the following factors in determining whether a proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale; (b) whether adequate and reasonable notice of the sale was provided to interested parties; (c) whether the sale will produce a fair and reasonable price for the property; and (d) whether the parties have acted in good faith.  See In re Decora Indus., Inc., No. 00-4459, 2002 WL

32332749, at *2 (D. Del. May 20, 2002).  Where a debtor demonstrates a valid business

justification for a decision, it is "a presumption that in making a business decision the directors

of a corporation acted on an informed basis, in good faith and in the honest belief that the action

taken was in the best interests of the company."  Integrated Res., 147 B.R. at 656 (quoting Smith

v. Van Gorkum, 488 A.2d 858, 872 (Del. 1985)).

> **B.**     **The Debtor has Demonstrated a Sound Business Justification for the Sale**

32.     A sound business purpose for the sale of a debtor's assets outside the

ordinary course of business exists where such sale is necessary to preserve the value of the estate

for the benefit of creditors and interest holders.  See, e.g., In re Abbotts Dairies of Pa., Inc., 788

F.2d 143, 149 (3d Cir. 1986); Food Barn, 107 F.3d at 564-65 (recognizing the paramount goal of

any proposed sale of property of estate is to maximize value).

33.     As set forth above, a strong business justification exists for the Sale of the

Assets as described herein.  An orderly but expeditious Sale of the Assets is critical to

maximizing recoveries for the Debtor's estate and creditors.

> **C.**     **The Successful Bidder Should be Entitled to the Protections of Section 363(m) of the Bankruptcy Code**

34.     Section 363(m) of the Bankruptcy Code protects a good faith purchaser's

interest in property purchased from a debtor notwithstanding that the sale conducted under

section 363(b) is later reversed or modified on appeal.  Specifically, section 363(m) of the

Bankruptcy Code provides that:

> The reversal or modification on appeal of an authorization under
> [section 363(b) of the Bankruptcy Code] . . . does not affect the
> validity of a sale . . . to an entity that purchased . . . such property
> in good faith, whether or not such entity knew of the pendency of
> the appeal, unless such authorization and such sale . . . were stayed
> pending appeal.

11 U.S.C. § 363(m).

35.     Section 363(m) of the Bankruptcy Code fosters the "policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely." Abbotts Dairies, 788 F.2d at 147 (3d Cir. 1986) (internal quotations omitted); see also Allstate Ins. Co. v. Hughes, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) . . . provides that good faith transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal.").

36.     While the Bankruptcy Code does not define "good faith," the Third Circuit has held that "the phrase encompasses one who purchases in 'good faith' and for 'value.'" Abbotts Diaries, 788 F.2d at 147 (explaining that to constitute lack of good faith, a party's conduct in connection with the sale must usually amount to fraud, collusion between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders).  In other words, a party would have to show fraud or collusion between the buyer and the debtor in possession, the trustee or other bidders to demonstrate a lack of good faith. See Kabro Assocs. of W. Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.), 111 F.3d 269, 276 (2d Cir. 1997) ("Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.") (quoting In re Rock Indus. Mach. Corp., 572 F.2d 1195, 1998 (7th Cir. 1978)).  Due to the absence of a bright-line test for good faith, the determination is based on the facts of each case, with a focus on the "integrity of [a bidder's] conduct in the course of the sale proceedings." In re Pisces Leasing Corp., 66 B.R. 671, 673 (E.D.N.Y. 1986) (quoting Rock Indus. Mach. Corp., 572 F.2d at 1998).

19

The Debtor submits that the Successful Bidder is or would be a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code.

37.     Further, as set forth above, the Bidding Procedures are designed to produce a fair and transparent competitive bidding process.  Each Qualified Bidder participating in the Auction must confirm that it has not engaged in any collusion with respect to the bidding or the Sale of the Assets.  Any asset purchase agreement with a Successful Bidder executed by the Debtor will be negotiated at arm's length and in good faith.  Accordingly, the Debtor seeks a finding that any Successful Bidder (including the Stalking Horse Bidder) is a good faith purchaser and is entitled to the full protections afforded by section 363(m) of the Bankruptcy Code.

38.     Based on the foregoing, the Debtor submits that it has demonstrated that the proposed Sale is a sound exercise of the Debtor's business judgment and should be approved as a good faith transaction.

**D.     The Assets Should Be Sold Free and Clear of Liens, Claims, Interests and Encumbrances Under Section 363(f) of the Bankruptcy Code**

39.     In the interest of attracting the highest and best offers for the Debtor's Assets, the Assets should be sold free and clear of any and all liens, claims, interests and other encumbrances, in accordance with section 363(f) of the Bankruptcy Code, with any such liens, claims, interests and encumbrances attaching to the net proceeds of the Sale.  Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of liens, claims, interests and encumbrances if any one of the following conditions is satisfied:

(a)     applicable non-bankruptcy law permits sale of such property free and clear of such interest;

(b)     such entity consents;

20

(c)     such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;

(d)     such interest is in bona fide dispute; or

(e)     such entity could be compelled, in legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f); see also In re Kellstrom Indus., Inc., 282 B.R. 787, 793 (Bankr. D. Del.

2002) ("Section 363(f) is written in the disjunctive, not the conjunctive, and if any of the five

conditions are met, the debtor has the authority to conduct the sale free and clear of all liens.").

40.     Section 363(f) of the Bankruptcy Code is supplemented by section 105(a)

of the Bankruptcy Code, which provides that "[t]he Court may issue any order, process or

judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."

11 U.S.C. § 105(a); see also Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re

White Motor Credit Corp.), 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct

such sales [free and clear of claims] is within the court's equitable powers when necessary to

carry out the provisions of [the Bankruptcy Code].").

41.     The Debtor submits that the Sale of the Assets free and clear of liens,

claims, interests and encumbrances will satisfy one or more of the requirements under section

363(f) of the Bankruptcy Code.  To the extent that a party objects to the Sale on the basis that it

holds a prepetition lien or encumbrance on the Assets, the Debtor believes that any such party

could be compelled to accept a monetary satisfaction of such claims, under section 363(f)(4) of

the Bankruptcy Code.  See 11 U.S.C. § 363(f)(4).

42.     Moreover, the Debtor will serve the Sale Notice on any purported

prepetition lienholders.  If such lienholders do not object to the proposed Sale, then their consent

should reasonably be presumed.  Accordingly, the Debtor requests that, unless a party asserting a

prepetition lien, claim or encumbrance on any of the Assets timely objects to this Motion, such

party shall be deemed to have consented to any Sale Transaction approved at the Sale Hearing.

See Hargave v. Twp. of Pemberton (In re Tabone, Inc.), 175 B.R. 855, 858 (Bankr. D.N.J. 1994)

(finding that by not objecting to a sale motion a creditor was deemed to have consented to the

relief requested therein).

43.    The purpose of a sale order purporting to authorize the transfer of assets

free and clear of all claims, liens and encumbrances would be defeated if claimants could

thereafter use the transfer as a basis to assert claims against a purchaser arising from a seller's

pre-sale conduct.  Moreover, without such assurances, potential bidders may choose not to

participate in the Auction, or may submit reduced bid amounts, to the detriment of the Debtor's

economic stakeholders.  Accordingly, the Debtor requests that the Court authorize the Sale of the

Assets free and clear of any liens, claims, interests and encumbrances, in accordance with section

363(f) of the Bankruptcy Code, subject to such liens, claims, interests and encumbrances

attaching to the proceeds thereof in the same order of relative priority, with the same validity,

force and effect as prior to such Sale.

### III.    The Assumption and Assignment of Contracts and Leases Should Be Authorized

44.    Section 365(a) of the Bankruptcy Code provides that a debtor in

possession "subject to the court's approval, may assume or reject any executory contract or

unexpired lease of the debtor." 11 U.S.C. § 365(a).  Courts employ the business judgment

standard in determining whether to approve a debtor's decision to assume or reject an executory

contract or unexpired lease.  See, e.g., In re Mkt. Square Inn, Inc., 978 F.2d 116, 121 (3d Cir.

1992) (finding that assumption or rejection of lease "will be a matter of business judgment by the

bankruptcy court"); In re HQ Global Holdings, Inc., 290 B.R. 507, 511 (Bankr. D. Del. 2003)

("A debtor's determination to reject an executory contract can only be overturned if the decision was the product of bad faith, whim or caprice."). The "business judgment" test in this context only requires that a debtor demonstrate that assumption or rejection of an executory contract or unexpired lease benefits the estate. See Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp., 872 F.2d 36, 40 (3d Cir. 1989).

45.     Any assumption and assignment of the Proposed Assumed Contracts is an exercise of the Debtor's sound business judgment because the transfer of such contracts is necessary to the Debtor's ability to obtain the best value for the Assets. Given that consummation of the Sale is critical to the Debtor's efforts to maximize value for its estate and stakeholders, the Debtor's assumption and assignment of the Proposed Assumed Contracts is an exercise of sound business judgment and, therefore, should be approved.

46.     The consummation of the Sale, which involves the assignment of the Proposed Assumed Contracts, will be contingent upon the Debtor's compliance with the applicable requirements of section 365 of the Bankruptcy Code, which requires any outstanding defaults under the Proposed Assumed Contracts to be assumed be cured or that the Debtor provide adequate assurance that such defaults will be promptly cured. See 11 U.S.C. § 365. The Debtor's assumption and assignment of the Proposed Assumed Contracts will be contingent upon payment of the Cure Amount and effective only upon the closing of the Sale. As set forth above, the Debtor proposes to file with the Court and serve on each Contract Counterparty a Cure Notice, which will set forth the Debtor's good faith calculation of Cure Amount with respect to each contract and lease listed on such Cure Notice. Contract Counterparties will have a meaningful opportunity to raise any objections to the proposed assumption of their respective contracts and leases in advance of the Sale Hearing.

47.     Pursuant to section 365(f)(2) of the Bankruptcy Code, a debtor may assign an executory contract if "adequate assurance of future performance by the assignee of such contract or lease is provided."  11 U.S.C. § 365(f)(2).  The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction."  Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.), 103 B.R. 524, 538 (Bankr. D.N.J. 1988); see also In re Natco Indus., Inc., 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean an absolute assurance that debtor will thrive and make a profit); In re Bon Ton Rest. & Pastry Shop, Inc., 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985) ("Although no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance.").  Among other things, adequate assurance may be provided by evidencing the assignee's financial health and experience in managing the type of enterprise or property assigned.  See In re Bygaph, Inc., 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when the prospective assignee of a lease has financial resources and has "expressed willingness to devote sufficient funding" to the business to give it a "strong likelihood of succeeding").

48.     As set forth above and in the Bidding Procedures, for a bid to qualify as a Qualified Bid, a Potential Bidder must include with its bid information regarding its ability (and the ability of its designated assignee, if applicable) to perform under applicable Proposed Assumed Contracts.  Each affected Contract Counterparty will have an opportunity to object to the ability of the Successful Bidder to provide adequate assurance as provided in the Bidding Procedures Order.  To the extent necessary, the Debtor will present facts at the Sale Hearing to

show the financial wherewithal, willingness and ability of the Successful Bidder to perform

under the Proposed Assumed Contracts to be assigned in connection with the Sale.

## WAIVER OF BANKRUPTCY RULES 6004(a), 6004(h) AND 6006(d)

49.     The Debtor requests that the Court (a) find that the notice of the Motion is

adequate under Bankruptcy Rule 6004(a) under the circumstances and (b) waive the fourteen-day

stay requirements under Bankruptcy Rules 6004(h) and 6006(d).  As described above, the Debtor

requires the flexibility to close the Sale promptly after all closing conditions have been satisfied

or waived.  To require the Debtor to continue to perform under the Proposed Assumed Contracts

for an extra fourteen (14) days and to delay the closing will burden the estate and require

unnecessary expenditure of the Debtor's resources.  Accordingly, given the lack of prejudice to

any party, the Debtor respectfully requests that the Bidding Procedures Order, the Sale Order and

any order authorizing the assumption and assignment of a Proposed Assumed Contract in

connection with the Sale be effective immediately upon entry and that the fourteen-day stay

imposed by Bankruptcy Rules 6004(h) and 6006(d) be waived.

## NOTICE

50.     Notice of this Motion will be provided to: (i) the U.S. Trustee; (ii) counsel

to the Committee; (iii) counsel to the Debtor's prepetition secured lender; (iv) all entities known

to have asserted any lien, claim, interest or encumbrance in or upon any of the Assets; (v) all

federal, state and local regulatory authorities that regulate any aspect of the Debtor's business;

(vi) the Securities and Exchange Commission; (vii) the Internal Revenue Service; (viii) all state

and local taxing authorities in the states in which the Debtor has or may have any tax liability;

(ix) the non-Debtor parties to the Proposed Assumed Contacts; (x) the Office of the United

States Attorney for the District of Delaware; (xi) the Delaware State Treasury; (xii) the Delaware

Secretary of State, Division of Corporations, Franchise Tax; (xiii) all parties to pending litigation with the Debtor; and (xiv) all parties that have requested notice pursuant to Del. Bankr. L.R. 2002-1(b).

51.     A copy of this Motion and any order approving it also will be made available on the Debtor's case information website, http://www.kccllc.net/novum.  The Debtor submits that, under the circumstances, no other or further notice is required.

## NO PRIOR REQUEST

52.     No prior motion for the relief requested herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

## **CONCLUSION**

53.     WHEREFORE, the Debtor respectfully requests that this Court (i) enter the Bidding Procedures Order, substantially in the form attached hereto as <u>Exhibit A</u>, (ii) enter the Sale Order after conducting the Sale Hearing, and (iii) grant such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
       February 13, 2019

                                      COLE SCHOTZ P.C.


                                      /s/ David R. Hurst
                                      David R. Hurst (I.D. No. 3743)
                                      Patrick J. Reilley (I.D. No. 4451)
                                      500 Delaware Avenue, Suite 1410
                                      Wilmington, Delaware 19801
                                      Telephone: (302) 652-3131
                                      Facsimile: (302) 652-3117

                                      – and –

                                      Jacob S. Frumkin
                                      25 Main Street
                                      Hackensack, New Jersey 07601
                                      Telephone: (201) 489-3000
                                      Facsimile: (201) 489-3479

                                      *Proposed Counsel for Debtor*
                                      *and Debtor-in-Possession*