## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
---------------------------------------------------- x
                                                     :
In re:                                               :    Chapter 11
                                                     :
NOVUM PHARMA, LLC,                                   :    Case No. 19-10209 (KJC)
                                                     :
                              Debtor.¹               :    Hrg. Date: 6/25/19 at 10:00 a.m. (ET)
                                                     :    Obj. Deadline: 6/18/19 at 4:00 p.m. (ET)
                                                     :
---------------------------------------------------- x
```

## DEBTOR'S MOTION FOR ORDER UNDER
## SECTION 1121(d) OF THE BANKRUPTCY CODE
## EXTENDING EXCLUSIVE PERIODS DURING WHICH DEBTOR
## MAY FILE AND SOLICIT ACCEPTANCES OF A CHAPTER 11 PLAN

Novum Pharma, LLC, the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Debtor"), hereby moves (the "Motion") for entry of an order pursuant to section 1121(d) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), extending the exclusive periods during which the Debtor may file and solicit acceptances of a chapter 11 plan.  In support of the Motion, the Debtor respectfully represents as follows:

### JURISDICTION AND VENUE

1.    This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated February 29, 2012.  This is a core proceeding under 28 U.S.C. § 157(b) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtor consents to the entry of a final order by the Court in connection with the

---

[1]    The last four digits of the Debtor's federal tax identification number are 7895.  The mailing address for the Debtor is 200 South Wacker Drive, 31st Floor, Chicago, IL 60606.

Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2.      Venue of this case and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicate for the relief requested herein is section 1121(d) of the Bankruptcy Code.

## BACKGROUND

### A.      The Chapter 11 Case

4.      On February 3, 2019 (the "Petition Date"), the Debtor commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case"). The factual background regarding the Debtor, including its business operations, its capital and debt structure, and the events leading to the filing of the Chapter 11 Case, is set forth in the Declaration of Thomas S. O'Donoghue, Jr. in Support of Chapter 11 Petition and First Day Pleadings [Docket No. 3].

5.      The Debtor continues to manage and operate its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6.      On February 12, 2019, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") pursuant to section 1102(a) of the Bankruptcy Code [Docket No. 39]. No trustee or examiner has been appointed in the Chapter 11 Case.

B.      **The Sale Process**

7.      On February 13, 2019, the Debtor filed a motion [Docket No. 42] seeking entry of (i) an order (the "Bidding Procedures Order") (a) approving bidding procedures for the sale of substantially all of the Debtor's assets (the "Assets"), (b) approving bid protections, (c) scheduling an auction for, and a hearing to approve, the sale of substantially all of the Debtor's assets, (d) approving the form and manner of notices of the sale, auction and sale hearing, (e) approving assumption and assignment procedures and (f) granting related relief; and (ii) an order (a) approving the sale of the Debtor's assets free and clear of liens, claims, interests and encumbrances, (b) authorizing the assumption and assignment of unexpired leases and executory contracts and (c) granting related relief.

8.      On March 6, 2019, the Court entered the Bidding Procedures Order [Docket No. 111] establishing, among other things, an April 22, 2019 bid deadline, an April 24, 2019 auction and an April 26, 2019 sale hearing.

9.      On April 18, 2019, after receiving funding for the month of May 2019 from Cardinal Health 105, Inc. ("CH 105"), as required under the term sheet between the parties (as described below), the Debtor determined that it would extend the bid deadline and adjourn the auction and sale hearing for approximately one month to enable the Debtor, CH 105 and other case constituents to continue to negotiate a plan term sheet, plan support agreement and, ultimately, plan of reorganization.  In particular, on April 23, 2019, the Debtor filed a notice [Docket No. 236] extending the bid deadline until May 24, 2019, and adjourning the auction and sale hearing until May 28, 2019 and May 30, 2019, respectively.[2]  At the time of the

---

[2]      The auction subsequently was adjourned until May 29, 2019.  See Docket No. 268.

adjournment, the Debtor had not received any Qualified Bids (as defined in the Bidding

Procedures Order).

10.    The Debtor received a single Qualified Bid on May 24, 2019, and

proceeded to conduct an auction on May 29, 2019.[3]  At the conclusion of the Auction, the

Debtor, in consultation with the Committee, determined that the highest bid submitted at the

auction did not provide sufficient value to deem it the Successful Bid (as defined in the Bidding

Procedures Order).  Accordingly, the Debtor did not seek approval of such bid at the May 30,

2019 hearing in the Chapter 11 Case and continued the sale hearing until the June 25, 2019

hearing in this case.

**C.    The Plan Process**

11.    Several weeks after the Petition Date, the Debtor and CH 105 began

discussing the framework of a potential chapter 11 plan of reorganization (the "Plan") to address,

among other things, the Debtor's need for cash to operate its business on a go-forward basis and

CH 105's need to exchange certain of its soon-to-expire dermatology products inventory.  After

several months of good faith, arm's-length negotiations between the Debtor and CH 105, the

parties agreed upon the material terms of the Plan, and embodied those terms in a chapter 11 plan

term sheet (the "Term Sheet") and related plan support agreement (the "PSA").  As set forth in

the Term Sheet, the Plan contemplates a reorganization pursuant to which, among other things,

the Debtor's dermatology business would continue to be operated by its existing management

after the effective date of the Plan and CH 105 would provide funding to the Debtor through a

combination of loans and inventory purchases.  The Term Sheet also contemplates, among other

things, the creation and funding of a litigation trust for the benefit of the Debtor's general

---

[3]         As set forth in the Bidding Procedures Order, the Debtor's prepetition secured lender was deemed a
            Qualified Bidder (as defined in the Bidding Procedures Order) without the need to submit a bid.

unsecured creditors, which litigation trust will be funded by, among other things, recoveries from litigation actions and cash and non-cash consideration contributed by the Debtor's members.

12.    After the Debtor and CH 105 finalized the terms of the agreement between the parties, as memorialized in the Term Sheet, the Debtor began to negotiate the Term Sheet with other key case constituents, including the Committee, the Debtor's prepetition secured lender, the Debtor's members, AmerisourceBergen Drug Corporation and McKesson Corporation.  The Debtor expects to be in a position to file a fully-negotiated Term Sheet and related PSA during the week of June 3, 2019.

## RELIEF REQUESTED

13.    Section 1121(b) of the Bankruptcy Code provides for an initial 120-day period after the petition date within which a debtor has the exclusive right to file a chapter 11 plan (the "Plan Period").  Section 1121(c) of the Bankruptcy Code further provides for an initial 180-day period after the petition date within which a debtor has the exclusive right to solicit and obtain acceptances of a plan filed by the debtor during the Plan Period (the "Solicitation Period" and, together with the Plan Period, the "Exclusive Periods").  In the Chapter 11 Case, the Plan Period is set to expire on June 3, 2019,[4] and the Solicitation Period is set to expire on August 2, 2019.

14.    By the Motion, the Debtor requests entry of an order (i) extending the Plan Period until October 1, 2019, and the Solicitation Period until November 30, 2019; and (ii) prohibiting any party, other than the Debtor, from filing a competing plan and/or soliciting acceptances of any such competing plan during the extended Exclusive Periods.  If granted, the 120-day extensions of the Exclusive Periods will be without prejudice to the right of (i) the

---

[4]    Pursuant to Local Rule 9006-2, the filing of the Motion prior to the expiration of the current Exclusive Periods automatically will extend the Exclusive Periods until the Court acts on the Motion, without the necessity for entry of a bridge order.

58448/0001-17292056v2

Debtor to seek further extensions of the Exclusive Periods or (ii) any party in interest to seek to reduce the Exclusive Periods for cause.

## **BASIS FOR RELIEF**

15.     Under section 1121(d) of the Bankruptcy Code, the Court may extend the Exclusive Periods for cause.  11 U.S.C. § 1121(d)(1).  Specifically, section 1121(d)(1) provides: "on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause . . . increase the 120-day period or the 180-day period referred to in this section."  Id.  Although the Bankruptcy Code does not define "cause" for purposes of an extension under section 1121(d), courts have identified several key factors relevant to a determination of whether cause exists under section 1121(d) of the Bankruptcy Code, including the following:  (a) the size and complexity of the case; (b) the necessity of sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information; (c) the existence of good faith progress toward reorganization; (d) the fact that the debtor is paying its bills as they become due; (e) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (f) whether the debtor has made progress in negotiations with its creditors; (g) the amount of time which has elapsed in the case; (h) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and (i) whether an unresolved contingency exists. See In re Adelphia Commc'ns Corp., 336 B.R. 610, 674 (Bankr. S.D.N.Y. 2006); In re Dow Corning Corp., 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997).

16.     Section 1121(d) of the Bankruptcy Code authorizes a bankruptcy court to extend the plan exclusive periods by as much as eighteen months (to file a plan) and twenty months (to solicit votes) for cause, based upon the relevant facts and circumstances.  Debtors are

frequently granted such extensions in light of the particular circumstances of a case, in order to provide adequate opportunity to develop a plan.  See, e.g., In re NephroGenex, Inc., Case No. 16-11074 (KG) (Bankr. D. Del. Sept. 12, 2016) (granting an initial 120-day extension of the exclusive periods); In re Egenix, Inc., Case No. 14-12818 (BLS) (Bankr. D. Del. May 29, 2015) (granting an initial 60-day extension of the exclusive periods); In re MacKeyser Holdings, LLC, Case No. 14-11550 (CSS) (Bankr. D. Del. Oct. 30, 2014) (granting an initial 90-day extension of the exclusive periods); In re Savient Pharms., Inc., Case No. 13-12680 (MFW) (Bankr. D. Del. Feb. 21, 2014) (same).

17.     In evaluating whether an extension under section 1121(d) of the Bankruptcy Code is warranted, courts are given maximum flexibility to review the particular facts and circumstances of each case.  See, e.g., In re Borders Grp., Inc., 460 B.R. 818, 821-22 (Bankr. S.D.N.Y. 2011) ("The determination of cause under section 1121(d) is a fact-specific inquiry and the court has broad discretion in extending or terminating exclusivity."); In re Pub. Serv. Co. of N.H., 88 B.R. 521, 534 (Bankr. D.N.H. 1988) ("[T]he legislative intent has been construed to leave the question to the reorganization court in the exercise of its discretion and to promote maximum flexibility to suit various types of reorganization proceedings.").

18.     The Debtor has been under the protection of chapter 11 for less than four months, and during this short period of time has made significant and material progress in administering this case.  The extensions requested in the Motion will provide the Debtor the opportunity to finish negotiating, file and solicit the Plan, which is expected to provide significant returns to unsecured creditors.  Thus, as discussed in more detail below, the facts and circumstances of the Chapter 11 Case warrant the requested extension of the Exclusive Periods.

A.      **The Debtor Has Made Substantial Progress in the Chapter 11 Case**

19.      <u>First Day Motions and Related Relief</u>.  The Debtor has made substantial

progress in the early stages of the Chapter 11 Case.  Initially, the Debtor's management focused

on responding to the many time-consuming demands that inevitably accompany a chapter 11

filing.  In addition to the day-to-day management of the Company, the Debtor's management,

employees and advisors devoted substantial time and effort over the first four months of the case

to a number of tasks, including the filing of numerous "first day" and "second day" motions, all

of which have been approved on a final basis and were necessary to facilitate a smooth transition

into chapter 11, including authorization to (i) continue use of the Debtor's existing cash

management system and bank accounts; (ii) pay prepetition wages and employee benefits;

(iii) pay prepetition taxes and related obligations; and (iv) use the cash collateral of, and grant

adequate protection to, the Debtor's prepetition secured lender.  <u>See</u> Docket Nos. 23, 24, 25 and

112.  The Debtor also has obtained approval of orders facilitating the efficient administration of

the Chapter 11 Case, including orders (i) approving procedures for the retention of ordinary

course professionals and (ii) establishing bar dates for creditors to file certain claims.  <u>See</u>

Docket Nos. 143, 145.  The Debtor also has filed its schedules of assets and liabilities and

statement of financial affairs.  <u>See</u> Docket Nos. 123, 124.

20.      <u>Sale of Assets</u>.  As described above, since the Petition Date, the Debtor

and its professionals have dedicated substantial time and effort to marketing the Debtor's assets

and conducting a robust sale process.

21.      <u>Co-Pay Vendor Stipulations</u>.  On February 22, 2019, the Debtor filed a

motion [Docket No. 65] (the "<u>McKesson Motion</u>") seeking entry of an order approving a

stipulation by and among the Debtor, McKesson and its affiliates, pursuant to which, among

8

other things, McKesson agreed to continue providing critical co-pay services to the Debtor in exchange for the Debtor agreeing to provide adequate protection to McKesson in the form of pre-payments.  On March 18, 2019, the Court entered an order [Docket No. 144] granting the McKesson Motion.

22.     On February 26, 2019, the Debtor filed a motion [Docket No. 72] (the "ConnectiveRx Motion") seeking entry of an order approving a stipulation by and among the Debtor, PSKW, LLC d/b/a ConnectiveRx ("ConnectiveRx") and Robert Previdi, in his individual capacity, pursuant to which, among other things, Mr. Previdi agreed to purchase ConnectiveRx's claim against the Debtor and ConnectiveRx agreed to continue providing critical co-pay services to the Debtor in exchange for the Debtor agreeing to provide adequate protection to ConnectiveRx in the form of pre-payments.  The hearing to consider approval of the ConnectiveRx Motion was adjourned several times to enable the parties to negotiate a consensual resolution of certain contentious issues.  Ultimately, after the parties failed to reach a global resolution, the Debtor determined that the continued prosecution of the ConnectiveRx Motion was no longer in the best interests of its estate and creditors and, consistent with its fiduciary duties, withdrew the ConnectiveRx Motion.

23.     Lease Assignment Motion.  On March 12, 2019, the Debtor filed a motion [Docket No. 125] (the "Assignment Motion") seeking entry of an order authorizing it to assume and assign to its affiliate, Novos Growth, LLC, that certain Office Lease, effective as of February 14, 2017, between the Debtor and 150 North Riverside Titleholder LLC.  On April 1, 2019, the Court entered an order [Docket No. 186] granting the Assignment Motion, pursuant to which, among other things, cash in the amount of approximately $500,000, which was being held as

9

collateral under a letter of credit that secured the Debtor's performance under the lease, was released to the Debtor to be used for general business purposes.

24.      The Plan Process.  As described above, since shortly after the Petition Date the Debtor and various parties in interest have dedicated significant time and effort toward negotiating the Term Sheet, the PSA, the Plan and various other plan-related documents. Pursuant to the Plan, holders of allowed claims are projected to receive substantially higher distributions than they would if the Chapter 11 Case were converted to one under chapter 7.

25.      In light of the foregoing, the Debtor submits that its demonstrated progress to date provides ample cause to extend the Exclusive Periods.

**B.      The Need for Sufficient Time to Negotiate and Prepare Adequate Information**

26.      The relief requested herein will facilitate the Debtor's restructuring efforts by providing it with a full and fair opportunity to propose and solicit the Plan without the distraction of ill-formed competing plans.  See In re Energy Conversion Devices, Inc., 474 B.R. 503, 507 (Bankr. E.D. Mich. 2012) ("In enacting 11 U.S.C. § 1121, Congress intended to allow the debtor a reasonable time to obtain confirmation of a plan without the threat of a competing plan.  It was intended that at the outset of a Chapter 11 case a debtor should be given the unqualified opportunity to negotiate a settlement and propose a plan of reorganization without interference from creditors and other interests.") (internal citations and quotations omitted).

27.      As noted above, the Debtor expects to file the Term Sheet and PSA during the week of June 3, 2019, and will seek to negotiate and file the Plan and related disclosure statement shortly thereafter.  The Debtor believes that the requested extensions of the Exclusive Periods will be sufficient to enable the Debtor to finish negotiating, file and solicit the Plan in

58448/0001-17292056v2

advance of the extended deadlines.  Accordingly, the Debtor submits that this factor weighs in favor of the requested extension of the Exclusive Periods.

## C.  The Extension Sought Will Advance the Chapter 11 Case and Will Not Harm Any Party

28.    The Motion is the Debtor's first request for an extension of the Exclusive Periods, and the request will not unfairly prejudice or pressure the Debtor's creditor constituencies or grant the Debtor any unfair bargaining leverage.  Indeed, the Debtor is working cooperatively with numerous parties in interest, including the Committee and the Debtor's prepetition secured lender, to finish negotiating and document the proposed Plan.  Accordingly, the Debtor believes that the requested extensions are warranted and appropriate under the circumstances.

## D.  Reasonable Prospects for Filing a Viable Plan

29.    As described above, since shortly after the Petition Date the Debtor, its professionals and various other parties in interest have dedicated substantial time and effort to negotiate the Term Sheet and the related plan support agreement.  These efforts have paved the way for the anticipated filing of the Plan and related disclosure statement in the next several weeks.  The Plan is being negotiated, and is supported, by key constituents in the Chapter 11 Case, and the Debtor is confident that the Plan ultimately will be confirmed, leading to the Debtor's successful reorganization.

## E.  The Debtor is Meeting its Postpetition Obligations

30.    Courts considering whether to extend a debtor's exclusive periods also may assess whether the debtor is paying its debts when they come due.  See In re McLean Indus., 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987).  Here, the Debtor is paying its undisputed postpetition obligations as they come due.

58448/0001-17292056v2

31.     In sum, the Debtor has made significant progress thus far in the Chapter 11 Case and is taking steps toward proposing a viable chapter 11 plan, thus warranting the relief requested in the Motion.

## NOTICE

32.     Notice of the Motion will be given to: (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Debtor's prepetition secured lender; and (iv) all parties entitled to notice under Del. Bankr. L.R. 2002-1(b).  The Debtor submits that, under the circumstances, no other or further notice is required.

## NO PRIOR REQUEST

33.     No prior request for the relief sought in the Motion has been made to this or any other Court.

*[Remainder of Page Intentionally Left Blank]*

58448/0001-17292056v2

## **CONCLUSION**

WHEREFORE, for the reasons stated herein, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto, granting the relief requested in the Motion and such other and further relief as the Court deems just and proper.

Dated:  Wilmington, Delaware
       May 31, 2019

COLE SCHOTZ P.C.

/s/ David R. Hurst
David R. Hurst (I.D. No. 3743)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

– and –

Jacob S. Frumkin
25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-3479

*Counsel for Debtor and*
*Debtor-in-Possession*