# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------- x
                                          :
In re:                                    :   Chapter 11
                                          :
NOVUM PHARMA, LLC,                        :   Case No. 19-10209 (BLS)
                                          :
                        Debtor.¹          :   Related to Docket No. ___
                                          :
-------------------------------------------------------- x
```

## FINAL ORDER (I) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION SECURED FINANCING; (II) GRANTING LIENS AND SUPERPRIORITY CLAIMS; (III) MODIFYING THE AUTOMATIC STAY; AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of Novum Pharma, LLC, the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Debtor"), pursuant to sections 105(a), 362 and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking, among other things, entry of an order (this "DIP Order"):

(a)     authorizing the Debtor to obtain postpetition financing (the "DIP Financing"), consisting of a first-lien superpriority term loan multi-draw financing facility in an aggregate principal amount not to exceed $3.0 million (the "DIP Facility") from Cardinal Health 105, Inc. or a designated affiliate (the "DIP Lender");

---

[1]     The last four digits of the Debtor's federal tax identification number are 7895. The mailing address for the Debtor is 200 South Wacker Drive, 31st Floor, Chicago, IL 60606.

[2]     All capitalized terms used but not otherwise defined herein shall have the meanings set forth in that certain Debtor-In-Possession Financing Term Sheet, dated as of July 3, 2019 (as amended, supplemented or otherwise modified in accordance with the terms thereof, the "Term Sheet"), a copy of which is attached hereto as Exhibit 1.

(b)    authorizing the Debtor to execute and deliver, and incur all liabilities and

obligations under:

(i)    the Term Sheet, and perform all such other and further acts as may be required in connection with the respective DIP Documents;[3] and

(ii)    all other agreements, documents, notes or instruments as may be required, necessary or desirable (including all collateral documents) and which are executed or delivered in connection with the Term Sheet;

(c)    authorizing the Debtor to use proceeds of the DIP Facility solely as expressly

permitted in the Term Sheet, including the payment of (i) professional fees and

expenses incurred by the Debtor, RGP Pharmacap, LLC (the "Prepetition Secured

Lender") and the Official Committee of Unsecured Creditors appointed in the

Chapter 11 Case (the "Committee") as such fees and expenses become due and

payable pursuant to the terms of the Order Establishing Procedures for Interim

Compensation and Reimbursement of Expenses for Professionals [Docket No.

142] or the Plan (the "Accrued Professional Fees"), (ii) amounts required to be

paid pursuant to section 365(b)(1) of the Bankruptcy Code upon the assumption

of contracts in connection with confirmation of the Plan (the "Cure Amounts"),

(iii) administrative expenses required to be paid pursuant to section 1129(a)(9)(A)

of the Bankruptcy Code ("Administrative Claims") on the effective date (the

"Effective Date") of the Plan and (iv) other expenses of the Debtor's dermatology

products business as agreed by the DIP Lender;

(d)    granting automatically perfected security interests in and liens on all of the DIP

Collateral (as defined below) to the DIP Lender, and granting superpriority

---

[3]    "DIP Documents" shall mean, collectively, the Term Sheet, any collateral documents, and all such instruments and documents as may be executed and delivered in connection with or relating to the DIP Facility.

administrative expense status to the DIP Obligations (as defined below), in each

case on the terms and subject to the relative priorities set forth in the DIP

Documents;

(e)     authorizing the Debtor to pay the principal, interest, fees, expenses, disbursements

and other amounts payable under the DIP Documents as such amounts become

due and payable;

(f)     vacating and modifying the automatic stay imposed by section 362 of the

Bankruptcy Code to the extent necessary to implement and effectuate the terms

and provisions of the DIP Order and the DIP Documents; and

(g)     granting the Debtor such other and further relief as is just and proper;

and this court (the "Court") having considered the Motion; and a hearing to consider entry of the

DIP Order having been held before the Court on July 24, 2019 (the "Hearing"); and upon all of

the pleadings filed with the Court, all evidence presented in support of the DIP Order, the

arguments of counsel stated on the record of the Hearing and all of the proceedings held before

the Court; and due and sufficient notice of the Motion and the relief requested therein having

been given under the particular circumstances, and it appearing that no other or further notice

need be provided; and after due deliberation and consideration, and good and sufficient cause

appearing therefor, it is hereby

### FOUND, DETERMINED, ORDERED AND ADJUDGED, THAT:[4]

1.     <u>Motion Granted</u>.  The Motion is GRANTED on the terms and conditions

set forth herein and all objections to the Motion to the extent not withdrawn or resolved are

hereby overruled.

---

[4]     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

58448/0001-17269365v4

2.      Commencement of the Case.  On February 3, 2019 (the "Petition Date"), the Debtor commenced a case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").  The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Case.

3.      Jurisdiction and Venue.  The Court has jurisdiction over this matter, this proceeding and the persons and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtor confirms its consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue for the Chapter 11 Case is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      Committee.  On February 12, 2019, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Committee pursuant to section 1102(a) of the Bankruptcy Code [Docket No. 39].

5.      Notice.  Notice of the relief sought by the Motion and the Hearing was served by first-class U.S. mail (or by electronic mail, to those parties providing written consent) on the following parties: (i) the U.S. Trustee; (ii) counsel to the DIP Lender; (iii) counsel to the Committee; (iv) counsel to the Prepetition Secured Lender; (v) the PSA Parties (as defined in the Plan); and (vi) all parties entitled to notice pursuant to Local Rule 2002-1(b).  Notice of the Motion, the relief sought by the Motion, the Hearing and the DIP Order has been provided in

accordance with the Bankruptcy Rules and Local Rules and is deemed good and sufficient notice thereof.  No other notice need be provided for entry of the DIP Order.

      6.    <u>Findings Regarding the DIP Financing</u>.

      (a)    A critical need exists for the Debtor to obtain postpetition financing to fund the Accrued Professional Fees, Cure Amounts and Administrative Claims because the Debtor's cash on hand is insufficient to meet such obligations and such obligations are required to be satisfied in order to confirm the Plan.  Moreover, there currently are Accrued Professional Fees due and payable, and the Debtor's only source of funds for payment of such professional fees is the DIP Facility.

      (b)    The Debtor is unable to obtain the required funds (i) in the forms of (1) unsecured credit or debt allowable under section 503(b)(l) of the Bankruptcy Code; or (2) an administrative expense pursuant to section 364(a) or (b) of the Bankruptcy Code; or (ii) on terms more favorable than those embodied in the Term Sheet and the other DIP Documents.  The DIP Lender is prepared to enter into the DIP Financing solely on the terms set forth in the Term Sheet, the DIP Order and the other DIP Documents.

      (c)    The terms of the DIP Financing are fair, just and reasonable under the circumstances, reflect the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties and are supported by reasonably equivalent value and fair consideration.  The terms of the DIP Financing have been negotiated in good faith and at arm's-length by and between the Debtor and the DIP Lender.  Any credit extended or other indebtedness or liabilities arising under, in respect of, or in connection with the DIP Financing, the DIP Order, the Term Sheet or any other DIP Document, shall be deemed to have been extended in "good faith" by the DIP Lender as that term is used in section 364(e) of the Bankruptcy Code, and in express

5

reliance upon the protections afforded by section 364(e) of the Bankruptcy Code, and the DIP

Lender's claims, the DIP Superpriority Claims (as defined below), the DIP Liens (as defined

below) and other protections granted pursuant to the DIP Order and the DIP Documents, shall be

entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that the DIP

Order or any portion hereof is vacated, reversed, amended or modified, on appeal or otherwise.

(d)    The relief requested in the Motion is necessary, essential and an

appropriate step toward achieving confirmation of the Plan.  Without access to the DIP Facility,

the Debtor would be unable to pay the Accrued Professional Fees, Cure Amounts or

Administrative Claims, payment of which amounts is necessary to confirm the Plan.  The relief

requested in the Motion is therefore necessary for the success of the Chapter 11 Case.  Entry of

this DIP Order is in the best interests of the Debtor, its estate, its creditors and its interest

holders.

7.    <u>Authorization of the DIP Financing</u>.

(a)    The DIP Documents, including the Term Sheet attached hereto as

<u>Exhibit 1</u>, are approved, and the Debtor is hereby authorized to execute and enter into, deliver

and perform all obligations under the DIP Documents.  The DIP Order and the DIP Documents

shall govern the respective financial and credit accommodations to be provided to the Debtor by

the DIP Lender in connection with the DIP Financing.

(b)    The Debtor is hereby immediately authorized to borrow money pursuant

to the DIP Documents up to the full amount of the DIP Facility, which shall be used solely as

expressly provided in the DIP Order and the DIP Documents.  The Debtor is authorized to pay

and perform all "DIP Obligations" as that term is defined below.

(c)    In furtherance of the foregoing and without further approval of the Court, the Debtor is hereby authorized to perform all acts, to make, execute and deliver all instruments and documents, and to pay all related fees, that may be required or necessary for the Debtor's performance of its obligations under the DIP Facility, including, without limitation:

(i)    the execution, delivery and performance of the respective DIP Documents and any security and pledge agreements, financing statements and mortgages contemplated by the DIP Documents;

(ii)   the execution, delivery and performance of one or more non-material amendments, waivers, consents or other modifications to and under the respective DIP Documents, in each case in such form as the Debtor and the DIP Lender may agree; provided, however, that any material amendments, waivers, consents or other modifications to and under the respective DIP Documents shall be subject to further order of the Court;

(iii)  the non-refundable payment of principal and interest under, and any fees referred to in, the respective DIP Documents, and such costs and expenses as may be due in accordance with the respective DIP Documents; and

(iv)   the performance of all other acts required under, or in connection with, the DIP Documents.

(e)    All of the DIP Liens shall be effective and perfected as of the date of entry of the DIP Order without the necessity of the execution, recording or filing of mortgages, security agreements, pledge agreements, financing statements or other agreements or instruments.

(f)    The DIP Obligations constitute valid, binding and non-avoidable obligations of the Debtor enforceable against it, and each of its successors and assigns, and each person or entity party to the DIP Documents in accordance with the respective terms of the DIP Order and the DIP Documents, and shall survive the dismissal of the Chapter 11 Case or the conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code (a "Successor Case").

58448/0001-17269365v4

(g)      No obligation, payment, transfer or grant of security under the DIP Order or the DIP Documents shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law, or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment or any other challenges under the Bankruptcy Code or any other applicable foreign or domestic law or regulation by any person or entity, except as provided in the DIP Order or the DIP Documents.

(h)      For purposes of the DIP Order, the term "DIP Obligations" shall mean the due and punctual payment by the Debtor of (i) the unpaid principal and interest on all loans made to the Debtor pursuant to the DIP Term Sheet (the "DIP Loans"), as and when due, whether at maturity, by acceleration or otherwise, and (ii) all other monetary obligations, including advances, debts, liabilities, obligations, fees, costs, expenses and indemnities, whether primary, secondary, direct, indirect, absolute or contingent, due or to become due, now existing or hereafter arising, fixed or otherwise, of the Debtor to the DIP Lender under the DIP Order or the DIP Documents.

(i)      The DIP Loans shall (i) be evidenced by the books and records of the DIP Lender and, upon the request of the DIP Lender, a note executed and delivered to the DIP Lender by the Debtor in accordance with the terms of the DIP Documents, which note shall evidence the DIP Loans in addition to such accounts and records; (ii) bear interest and incur fees at the rates set forth in the Term Sheet; (iii) be secured in the manner specified below and under the applicable DIP Documents; (iv) be payable in accordance with the applicable DIP Documents; and (v) otherwise be governed by the terms set forth in the DIP Order and the DIP Documents.

(j)      The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified and vacated without further notice, application or order of the Court to the extent necessary to permit the DIP Lender, subject in all respects to the DIP Documents, to perform any act authorized or permitted under or by virtue of the DIP Order or any of the DIP Documents, including, without limitation, (i) to implement the DIP Facility authorized by the DIP Order and pursuant to the terms of the DIP Documents; (ii) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the DIP Collateral; and (iii) to assess, charge, collect, advance, deduct and receive payments with respect to the respective DIP Obligations, including, without limitation, all principal, interest, fees, costs and expenses permitted under the DIP Documents, and apply such payments to the respective DIP Obligations pursuant to the DIP Order and the DIP Documents.

8.      Conditions Precedent.  The DIP Lender shall have no obligation to make any DIP Loans or any other financial accommodation under the respective DIP Documents unless the conditions precedent to making such extensions of credit under the respective DIP Documents have been satisfied in full or waived in accordance with such DIP Documents.

9.      Use of DIP Facility Proceeds.  The Debtor shall use the proceeds of the DIP Facility solely as expressly permitted in the DIP Documents, including payment of Accrued Professional Fees, Cure Amounts and Administrative Claims.

10.      DIP Superpriority Claims.  Pursuant to section 364(c)(1) of the Bankruptcy Code, the DIP Obligations constitute (without the need to file a proof of claim) superpriority claims (the "DIP Superiority Claims") against the Debtor, with priority over any and all administrative expenses of the Debtor, whether now existing or hereafter arising or

9

incurred, of any kind whatsoever, including any and all administrative expenses or other claims of the kind specified in or arising under sections 105, 326, 328, 330, 331, 364, 365, 503(b), 506(c), 507, 546(c), 552(b), 726, 1113, 1114 or any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, whether now in existence or hereafter incurred by the Debtor, and shall at all times be senior to the rights of the Debtor, the Debtor's estate and any successor trustee, estate representative or any creditor, in the Chapter 11 Case or any Successor Case.  The DIP Superpriority Claims shall have recourse to and be payable from all prepetition and postpetition assets of the Debtor, including, but not limited to, the DIP Collateral.

11.     <u>DIP Liens</u>.

(a)     As security for the full and timely payment of the DIP Obligations, effective upon the entry of the DIP Order, the DIP Lender is hereby granted, pursuant to section 364(d) of the Bankruptcy Code, valid, enforceable, non-avoidable and fully perfected security interests in and liens and mortgages (collectively, the "<u>DIP Liens</u>") upon all DIP Collateral, which shall constitute first-priority security interests in and liens upon all DIP Collateral.

(b)     As used herein, "<u>DIP Collateral</u>" shall mean all assets and property of the Debtor and its estate, real or personal, tangible or intangible, now owned or hereafter acquired, whether arising before or after the Petition Date, including, without limitation, all contracts, general intangibles, instruments, equipment, accounts and documents, all goods, inventory and fixtures, all documents, cash, cash equivalents, chattel paper, letters of credit and letter of credit rights, investment property, commercial tort claims, money, insurance, receivables, receivables records, deposit accounts, collateral support, supporting obligations and instruments, all interests in leaseholds and real properties, all patents, copyrights, trademarks, tradenames and other

10

intellectual property, all equity interests, all books and records relating to the foregoing, all other

personal and real property of the Debtor, and all proceeds, products, accessions, rents and profits

of or in respect of any of the foregoing (in each case as the foregoing are defined in the Uniform

Commercial Code as in effect from time to time in the State of Delaware (and, if defined in more

than one Article of such Uniform Commercial Code, shall have the meaning given in Article 9

thereof)); provided, however, that "DIP Collateral" shall not include (i) actions arising under

chapter 5 of the Bankruptcy Code or any related state law claims of the Debtor's estate or its

members (collectively, the "Causes of Action"); (ii) the proceeds of such Causes of Action; or

(iii) assets and property of the Debtor subject to valid, enforceable and non-avoidable Permitted

Liens (as used in that certain Loan Agreement, by and between the Debtor and the Prepetition

Secured Lender, dated as of August 1, 2017 as amended from time to time) on the DIP Collateral

that were perfected prior to the Petition Date (or perfected thereafter to the extent permitted by

section 546(c) of the Bankruptcy Code).

12.    Priority of Liens.

(a)    The DIP Liens shall constitute valid, enforceable, non-avoidable and duly

perfected first-priority security interests in and liens upon the DIP Collateral senior in priority

and superior to any security, mortgage, collateral interest, lien or claim on or to any of the DIP

Collateral.

(b)    The DIP Liens shall not be subordinated to or made pari passu with any

other lien under section 364(d) of the Bankruptcy Code or otherwise, including by any order

heretofore or hereafter entered in the Chapter 11 Case or any Successor Case.  Except as

expressly permitted in the respective DIP Documents and absent full payment and satisfaction of

all obligations of the Debtor under the DIP Facility, the Debtor shall not (i) grant or impose any

11

liens on the DIP Collateral or (ii) except as permitted in the respective DIP Documents, prime or seek to prime the DIP Liens and shall not offer any other parties any lien on the DIP Collateral. In addition, the Debtor shall not incur, create, assume, become or be liable in any manner with respect to, or permit to exist, any secured indebtedness, except as expressly permitted under the DIP Documents.

13.    Validity of Liens.

(a)    In no event shall any person or entity who pays (or through the extension of credit to the Debtor, causes to be paid) any of the respective DIP Obligations, be subrogated, in whole or in part, to any rights, remedies, claims, privileges, liens or security interests granted in favor of, or conferred upon the DIP Lender by the terms of the DIP Order, or any of the respective DIP Documents, until all of the DIP Obligations are paid in full in cash in accordance with the DIP Order or any of the respective DIP Documents.

(b)    The DIP Liens and the DIP Superpriority Claims shall continue in any Successor Case for the Debtor under any chapter of the Bankruptcy Code, and all liens, security interests and claims shall maintain their priority as provided in the DIP Order.  If an order dismissing the Chapter 11 Case, pursuant to section 1112 of the Bankruptcy Code or otherwise, is at any time entered, such order shall provide that the DIP Liens and the DIP Superpriority Claims shall continue in full force and effect, shall remain binding on all parties in interest in the Chapter 11 Case, and shall maintain their priorities as provided in the DIP Order, until all DIP Obligations under the DIP Documents have been paid and satisfied in full and in cash. Notwithstanding the dismissal of the Chapter 11 Case, the Court shall retain jurisdiction with respect to enforcing the DIP Liens and the DIP Superpriority Claims.

58448/0001-17269365v4

14.    <u>Limitation on Use of DIP Loans</u>.  No portion of the DIP Loans may be used to challenge the debt or collateral position of the DIP Lender, whether by challenging the validity of the indebtedness or the validity, perfection or priority of any security interest or lien, or by seeking to invalidate, avoid, subordinate or otherwise impair any claim, security interest or lien or priorities created in connection with the DIP Financing, or by asserting any claim for damages allegedly arising out of the actions or inactions of the DIP Lender, or by seeking to recover on any transfers made to the DIP Lender.

15.    <u>Termination of DIP Financing</u>.  The Debtor's authorization to use the DIP Financing shall immediately terminate upon the occurrence of a "<u>Termination Event</u>," which shall mean the earliest to occur of (i) the expiration of five (5) business days (the "<u>Default Notice Period</u>") following the provision of written notice to the Debtor (with a copy of such notice provided to counsel for the Debtor, the Committee, the Prepetition Secured Lender and the U.S. Trustee) upon the occurrence of an Event of Default; (ii) the occurrence of the Maturity Date as that term is defined in the Term Sheet; and (iii) the date on which the DIP Order is no longer in full force and effect.

16.    <u>Perfection of Liens</u>.  The DIP Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the DIP Liens without the necessity of executing, filing or recording any mortgage, security agreement, pledge agreement, financing statement or other instrument or document, or the taking of any other act that otherwise may be required under state or federal law, rule or regulation of any jurisdiction to validate or perfect the DIP Liens or to entitle the DIP Lender to the priorities granted herein.  The Debtor may execute, and the DIP Lender is hereby authorized to execute, file and/or record mortgages, security agreements, pledge agreements, financing statements and/or other instruments or documents to

58448/0001-17269365v4

evidence the DIP Liens, and the Debtor is hereby authorized, promptly upon a demand by the DIP Lender made in accordance with the terms of the DIP Documents, to execute, file and/or record any such mortgages, security agreements, pledge agreements, financing statements or other instruments or documents as the DIP Lender may request; provided, however, that no such execution, filing or recordation shall be necessary or required in order to create or perfect the DIP Liens.  A copy of the DIP Order may, in the discretion of the DIP Lender, be filed with or recorded in any filing or recording office in addition to or in lieu of such mortgages, security agreements, pledge agreements, financing statements or other instruments or documents, and each and every federal, state and local governmental agency, department or office is hereby directed to accept a copy of the DIP Order and any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the DIP Order and the DIP Documents, for filing and recording, and to deem the DIP Order to be in proper form for filing and recording.  Notwithstanding the foregoing, pursuant to any applicable law, the DIP Lender is hereby authorized (but not required) to file or record financing statements and other filing or recording documents or instruments with respect to the DIP Collateral and DIP Liens, as applicable, without the signature of the Debtor in such form and in such offices as the DIP Lender determines is appropriate to perfect the security interests of the DIP Lender under the DIP Documents and the DIP Order and the DIP Lender is authorized to use collateral descriptions such as "all personal property" or "all assets," in each case "whether now owned or hereafter acquired," words of similar import or any other description the DIP Lender in its sole discretion so chooses in any such financing statements.

    17. <u>Indemnity</u>.  The DIP Lender, solely in its capacity as such, shall have no liability for, and shall be indemnified and held harmless against, any losses, claims, damages,

14

liabilities or expenses incurred in respect of the DIP Financing or the use or proposed use of proceeds thereof, except to the extent found by a final, non-appealable judgment of a court to arise from the gross negligence, willful misconduct or fraud of the DIP Lender.

18.    <u>Release from Lending Obligations</u>.  Upon the repayment of all DIP Obligations owed to the DIP Lender by the Debtor and termination of the rights and obligations arising under the DIP Documents, the DIP Lender, solely in its capacity as such, shall be released from any and all obligations, liabilities, actions, duties and responsibilities arising or occurring in connection with or related to the DIP Documents or this DIP Order. Notwithstanding anything to the contrary herein, the Debtor's releases do not extend to (i) the DIP Lender's obligations to make the DIP Loans or (ii) the DIP Lender's obligations to comply with the terms of the DIP Documents and the DIP Order.

19.    <u>Debtor's Waivers</u>.  At all times during the Chapter 11 Case, and whether or not an Event of Default has occurred, the Debtor irrevocably waives any right that it may have to (i) challenge the application of any payments authorized by the DIP Order pursuant to section 506(b) of the Bankruptcy Code; (ii) seek authority to grant liens on the DIP Collateral, or any portion thereof to any other entities, pursuant to section 364(d) of the Bankruptcy Code or otherwise; or (iii) seek authority to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or 364(d) of the Bankruptcy Code, other than from the DIP Lender, or as may be otherwise expressly permitted under the DIP Documents, unless the Debtor uses the proceeds of such postpetition loans or other financial accommodations to pay in full in cash all DIP Obligations or the DIP Lender has provided its prior written consent to such action.  In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is

continuing, and the Debtor hereby waives its right to seek relief, including without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Lender, as set forth in the DIP Order and the DIP Documents, other than to contest whether an Event of Default has occurred or is continuing.

20.    Disposition of Collateral.  The Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral in any way inconsistent with the terms and conditions of the DIP Documents without the prior written consent of the DIP Lender and an order of the Court.  In the absence of express prior written consent, no consent to a sale, transfer, lease, encumbrance or other disposition of any portion of the DIP Collateral shall be implied from any action, inaction or acquiescence by the DIP Lender.  Until all DIP Obligations are paid and satisfied in full and in cash in accordance with the terms of the DIP Documents, the proceeds of any sale of the DIP Collateral (other than sales in the ordinary course of business) shall be applied in the following order: (i) to pay any interest which is then due and payable; (ii) to pay any interest with respect to the principal amount being repaid which has accrued but is not yet due and payable; and (iii) to pay the principal amount of DIP Loans.

21.    Modification of Stay; Rights and Remedies Upon Termination.

(a)    Upon the occurrence of a Termination Event, the automatic stay provisions of section 362 of the Bankruptcy Code shall be automatically vacated and modified to the extent necessary to permit the DIP Lender to exercise all rights and remedies provided in the DIP Order and the DIP Documents, as applicable, and to take any or all of the following actions without further order of or application to the Court: (i) immediately terminate the availability of the DIP Facility to the Debtor; (ii) immediately declare all DIP Obligations to be immediately due and payable; (iii) immediately set off any and all amounts held on account of or owed to the

Debtor against the DIP Obligations, or otherwise enforce rights against the DIP Collateral in the

possession of, or subject to a lien in favor of the DIP Lender for application toward the DIP

Obligations; and (iv) take any other actions or exercise any other rights or remedies permitted

under the DIP Order and the DIP Documents or applicable law to effect the repayment of the

DIP Obligations; provided that notwithstanding anything herein to the contrary, the DIP Lender

shall not enforce any DIP Liens against the DIP Collateral or exercise any other remedies prior to

the expiration of the Default Notice Period.

(b)    The automatic stay provisions of section 362(a) of the Bankruptcy Code

shall be automatically vacated and modified as provided in paragraph 21(a) above, effective

following the expiration of the Default Notice Period, unless the Court has determined that an

Event of Default has not occurred and/or is not continuing.  Unless otherwise ordered by the

Court, any party in interest's sole recourse with respect to opposing such modification of the

automatic stay under section 362(a) of the Bankruptcy Code shall be to contest the occurrence

and/or continuance of an Event of Default.  During the Default Notice Period, the Debtor shall

(i) have no right to request extensions of credit under the DIP Facility, other than with the

consent of the DIP Lender; and (ii) be entitled to an emergency hearing before the Court, with

proper notice to the DIP Lender, solely for the purpose of contesting whether an Event of Default

has occurred and/or is continuing.  The rights and remedies of the DIP Lender specified herein

are cumulative and not exclusive of any rights or remedies that the DIP Lender may have under

the DIP Documents, or otherwise.  The Debtor shall cooperate fully with the DIP Lender in any

permitted exercise of rights and remedies, whether against the DIP Collateral or otherwise.

22.    Survival of DIP Order.  The provisions of the DIP Order and any actions

taken pursuant thereto (i) shall survive the entry of any order: (x) converting the Chapter 11 Case

17

to a Successor Case; or (y) dismissing the Chapter 11 Case; and (ii) shall continue in full force and effect notwithstanding the entry of any such order, and the claims, liens and security interests granted pursuant to the DIP Order shall maintain their priority as provided by the DIP Order until all of the DIP Obligations are indefeasibly paid in full and discharged in accordance with the DIP Documents.

23.    No Waiver.  The DIP Order shall not be construed in any way as a waiver or relinquishment of any rights that the DIP Lender may have to bring or be heard on any matter brought before the Court.

24.    Reservation of Rights.  The terms, conditions and provisions of the DIP Order are in addition to and without prejudice to the rights of the DIP Lender to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Documents or any other applicable agreement or law, including, without limitation, rights to (i) seek relief from the automatic stay; (ii) seek an injunction; (iii) oppose any future request for the granting of any interest in the DIP Collateral or of priority in favor of any other party; (iv) object to any sale of assets; or (v) object to applications for allowance or payment of compensation of professionals or other parties seeking compensation or reimbursement from the Debtor's estate.

25.    No Consent.  No action, inaction or acquiescence by the DIP Lender, including funding the Debtor's operations under the DIP Order, shall be deemed to be or shall be considered evidence of any alleged consent by the DIP Lender to a charge against the DIP Collateral pursuant to sections 506(c), 552(b) or 105(a) of the Bankruptcy Code.  The DIP Lender shall not be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral.  The DIP Liens shall not be subject to sections 510, 549, 550 or 551 of the Bankruptcy Code.

18

26.     <u>Binding Effect; Successors and Assigns</u>.  Except as otherwise provided in the DIP Documents, the provisions of the DIP Order shall be binding upon and inure to the benefit of the DIP Lender and the Debtor, and their respective successors and assigns (including any trustee or fiduciary hereafter appointed or elected as a legal representative of the Debtor, its estate or with respect to the property of its estate) whether in the Chapter 11 Case, in any Successor Case or upon dismissal of the Chapter 11 Case or a Successor Case; <u>provided</u>, <u>however</u>, that the DIP Lender shall have no obligation to extend any financing to, or permit the use of DIP Collateral by, any chapter 7 or chapter 11 trustee or similar representative person appointed for the Debtor's estate.

27.     <u>DIP Order Effective Immediately</u>.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, the DIP Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of the DIP Order.

28.     <u>DIP Order Governs</u>.  In the event of any inconsistency or conflict between any of the terms and provisions of the DIP Order and the DIP Documents, the terms and provisions of the DIP Order shall govern.

29.     <u>Credit Bidding</u>.  The DIP Lender shall have the unqualified right to credit bid up to the full amount of the applicable outstanding DIP Obligations, including any accrued interest, in any sale of the DIP Collateral (or any part thereof), without the need for further Court order authorizing the same, and whether such sale is effectuated through section 363 or 1129 of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

58448/0001-17269365v4

30.    <u>No Third Party Rights</u>.  Except as explicitly provided for herein, the DIP Order does not create any rights for the benefit of any party, creditor, equity holder or other entity other than the DIP Lender and the Debtor, and their respective successors and assigns.

31.    <u>Headings</u>.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting the DIP Order.

32.    <u>Retention of Jurisdiction</u>.  The Court retains jurisdiction to interpret, implement and enforce the provisions of the DIP Order and the DIP Documents.

33.    <u>Subsequent Reversal or Modification</u>.  The DIP Order is entered pursuant to, <u>inter alia</u>, section 364 of the Bankruptcy Code and Bankruptcy Rule 4001(c), granting the DIP Lender all protections afforded by section 364(e) of the Bankruptcy Code.  If any or all of the provisions of the DIP Order are hereafter reversed, modified, vacated or stayed, that action will not affect (i) the validity of any obligation, indebtedness or liability incurred hereunder by the Debtor to the DIP Lender prior to the date of receipt by the DIP Lender of written notice of the effective date of such action; (ii) the payment of any fees required under the DIP Order or the DIP Documents; or (iii) the validity and enforceability of any lien, claim, obligation or priority authorized or created under the DIP Order or pursuant to the DIP Documents as of such date. Notwithstanding any such reversal, stay, modification or vacatur, any postpetition indebtedness, obligation or liability incurred by the Debtor to the DIP Lender, prior to written notice being delivered to the DIP Lender of the effective date of such action, shall be governed in all respects

58448/0001-17269365v4

by the original provisions of the DIP Order, and the DIP Lender shall be entitled to all the rights,

remedies, privileges and benefits granted herein and in the DIP Documents with respect to all

such indebtedness, obligations or liability.

Dated: July ___, 2019
        Wilmington, Delaware

_____
The Honorable Brendan L. Shannon
United States Bankruptcy Judge

21

<u>EXHIBIT 1 TO DIP ORDER</u>

<u>Debtor-in-Possession Financing Term Sheet</u>

**Novum Pharma, LLC**

<u>Debtor-in-Possession Financing Term Sheet</u>

July 3, 2019

<u>Borrower</u>:

Novum Pharma, LLC, a Delaware limited liability company (the "<u>Borrower</u>" or the "<u>Debtor</u>"), as a debtor-in-possession in Case No. 19-10209 (BLS) (the "<u>Chapter 11 Case</u>") filed under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") on February 3, 2019 (the "<u>Petition Date</u>").

<u>Lender</u>:

Cardinal Health 105, Inc. or a designated affiliate (the "<u>DIP Lender</u>").

<u>Commitment/Availability;</u>
<u>Funding by DIP Lender</u>:

The DIP Lender will make loans (the "<u>DIP Loans</u>") to the Debtor under a debtor-in-possession term loan multi-draw financing facility (the "<u>DIP Facility</u>") in an aggregate principal amount not to exceed $3.0 million pursuant to the terms herein (such amount, the "<u>Principal Amount</u>").  Upon the entry of the DIP Order (as defined below), the Debtor shall be permitted to borrow an amount not to exceed the full amount of the DIP Facility, subject to the terms and conditions set forth in this term sheet (the "<u>Term Sheet</u>") and the DIP Order.

<u>Obligations</u>:

As used herein, the term "<u>DIP Obligations</u>" means the due and punctual payment by the Debtor of (i) the unpaid Principal Amount of and interest on the DIP Loans, as and when due, whether at maturity, by acceleration or otherwise, and (ii) all other monetary obligations, including advances, debts, liabilities, obligations, fees, costs, expenses and indemnities, whether primary, secondary, direct, indirect, absolute or contingent, due or to become due, now existing or hereafter arising, fixed or otherwise, of the Debtor to the DIP Lender hereunder, the other DIP Documents[1] and the DIP Order.

<u>Use of Proceeds</u>:

The proceeds of the DIP Loans shall be used by the Debtor to fund the payment of: (i) professional fees and expenses incurred by the Debtor, RGP Pharmacap, LLC (the "<u>Prepetition Secured Lender</u>") and the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case (the "<u>Committee</u>") as such fees and expenses

---

[1]    "<u>DIP Documents</u>" shall mean, collectively, this Term Sheet, any collateral documents, and all such instruments and documents as may be executed and delivered in connection with or relating to the DIP Facility.

become due and payable pursuant to the terms of the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals [Docket No. 142] or the Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtor [Docket No. 324] (as may be amended, supplemented or otherwise modified, the "Plan"), (ii) amounts required to be paid pursuant to section 365(b)(1) of the Bankruptcy Code upon the assumption of contracts in connection with confirmation of the Plan ("Cure Amounts"), (iii) administrative expenses required to be paid pursuant to section 1129(a)(9)(A) of the Bankruptcy Code ("Administrative Claims") on the effective date (the "Effective Date") of the Plan and (iv) other expenses of the Debtor's dermatology products business as agreed by the DIP Lender.  For the avoidance of doubt, the Debtor shall not be reimbursed from the DIP Facility for professional fees that were paid prior to date of this Term Sheet from the Prepetition Secured Lender's cash collateral.

| | |
|---|---|
| Interest Rate: | Interest on the DIP Loans shall be equal to the Base Rate (as defined below) and shall be payable in kind and added to the Principal Amount on the Maturity Date. |
| Base Rate: | [9.0]% per annum (the "Base Rate"). |
| Default Interest: | Upon the occurrence and during the continuation of any Event of Default (as defined below), including without limitation any default in payment of any obligations under the DIP Facility when such obligations are due, interest on the DIP Facility shall be payable at the Base Rate, plus 3.0 % (the "Default Interest Rate"). |
| Maturity: | The DIP Facility maturity date (the "Maturity Date") shall be the earlier of (a) the Effective Date or (b) the date of an occurrence of a Termination Event (as defined below); provided, however, that the Maturity Date may be extended by the DIP Lender in its sole discretion pursuant to a writing with the Debtor.  The DIP Facility shall be paid in full in cash on the Maturity Date; provided, however, that if the Maturity Date occurs on the Effective Date, all indebtedness under the DIP Facility will become indebtedness under the exit financing facility to be provided by the DIP Lender and shall become subject to the terms thereof. |
| Voluntary Prepayments: | The Debtor may prepay the DIP Facility in whole or in part at any time without premium or penalty. |
| Conditions Precedent to Funding: | Availability of the DIP Facility shall be subject to the following conditions precedent, all of which shall be for the benefit of the |

2

DIP Lender and must be satisfied on occasion of each drawdown under the DIP Facility, unless waived in writing in advance by the DIP Lender:

1.  The Court shall have entered a final order in form and substance acceptable to the DIP Lender (the "<u>DIP Order</u>")[2] which order, <u>inter alia</u>, shall approve the DIP Facility on a final basis, including, without limitation, the grant of, pursuant to section 364(d)(1) of the Bankruptcy Code, valid, enforceable, non-avoidable and fully perfected DIP Liens (as defined below) upon all DIP Collateral (as defined below) with the priority as set forth in the section entitled "<u>Priority and Liens</u>" below and superpriority administrative claims pursuant to section 364(c)(1) of the Bankruptcy Code referred to herein, to secure the DIP Obligations of the Debtor under the DIP Facility in accordance with the terms hereof, effective as of the granting of the DIP Order, without the need for any further action on the part of the DIP Lender, the Debtor or any other person (including, without limitation, the execution or delivery of any further documents or agreements or the recording, filing, indexing, entering or registering of any financing statements or other similar instruments or documents).

2.  The DIP Lender shall have been granted, and hold, a perfected first priority lien on, and security interest in, substantially all of the property of the Debtor and the proceeds thereof.

3.  All representations and warranties of the Debtor set forth herein and in the other DIP Documents shall be accurate in all material respects (except that such materiality qualifier shall not be applicable to any representations and warranties that already are qualified or modified by materiality in the text thereof) on and as of such date as if made on and as of such date, and after giving effect to the DIP Loans to be made on such date (except to the extent that such representations and warranties specifically relate solely to an earlier date thereto, in which case such representation and warranty shall be true and correct as of such earlier date).

4.  The DIP Order shall be in full force and effect and shall not have been reversed, stayed, modified or amended without

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the DIP Order.

58448/0001-17331126v6

the express written consent of the DIP Lender, and no application or motion shall have been made to the Court for any stay, modification or amendment of the DIP Order and no stay, appeal or leave to appeal with respect to same shall be pending.

5.    No event has occurred and is continuing that constitutes an Event of Default or would constitute an Event of Default, but for the requirement that notice be given or time elapse or both.

Security:    The Debtor hereby grants to the DIP Lender a security interest in and continuing lien on all of its right, title and interest in, to and under substantially all assets of the Debtor (the "<u>DIP Liens</u>"), including, but not limited to the following, in each case, whether now owned or existing or hereafter acquired, created or arising and wherever located (all of which being hereafter collectively referred to as the "<u>DIP Collateral</u>"): all assets and property of the Debtor and its estate, real or personal, tangible or intangible, now owned or hereafter acquired, whether arising before or after the Petition Date, including, without limitation, all contracts, general intangibles, instruments, equipment, accounts and documents, all goods, inventory and fixtures, all documents, cash, cash equivalents, chattel paper, letters of credit and letter of credit rights, investment property, commercial tort claims, money, insurance, receivables, receivables records, deposit accounts, collateral support, supporting obligations and instruments, all interests in leaseholds and real properties, all patents, copyrights, trademarks, tradenames and other intellectual property, all equity interests, all books and records relating to the foregoing, all other personal and real property of the Debtor, and all proceeds, products, accessions, rents and profits of or in respect of any of the foregoing (in each case as the foregoing are defined in the Uniform Commercial Code as in effect from time to time in the State of Delaware (and, if defined in more than one Article of such Uniform Commercial Code, shall have the meaning given in Article 9 thereof)); <u>provided</u>, <u>however</u>, that "DIP Collateral" shall not include (i) actions arising under chapter 5 of the Bankruptcy Code or any related state law claims of the Debtor's estate or its members (collectively, the "<u>Causes of Action</u>"); (ii) the proceeds of such Causes of Action; or (iii) assets and property of the Debtor subject to valid, enforceable and non-avoidable Permitted Liens (as used in that certain Loan Agreement, by and between the Debtor and the Prepetition Secured Lender, dated as of August 1, 2017 as amended from time to time) on the DIP Collateral that were perfected prior to the Petition Date (or perfected thereafter to the extent permitted by section 546(c) of the Bankruptcy Code).

| | |
|---|---|
| <u>Priority and Liens</u>: | The DIP Obligations, pursuant to sections 364(c)(1) and (2) and 364(d)(1) of the Bankruptcy Code, shall constitute (i) allowed superpriority administrative expense claims, and (ii) first-priority security interests in and liens upon all DIP Collateral. |
| <u>Commitment and Other Fees</u>: | None. |
| <u>Right to Credit Bid</u>: | The DIP Lender shall have an unqualified right to credit bid up to the full amount of the outstanding DIP Obligations in any sale of the DIP Collateral (or any part thereof) without the need for further Court order authorizing the same, and whether such sale is effectuated through section 363 or 1129 of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise. |

<u>Representations and Warranties</u>:

The Debtor hereby represents and warrants that:

1.    It is duly organized, validly exists, is in good standing and is qualified to do business in the state of its organization.

2.    It has full power and authority to operate its business, conduct its business and to execute, deliver and perform its obligations under this Term Sheet, the other DIP Documents and the DIP Order.

<u>Affirmative Covenants</u>:

1.    The Debtor covenants and agrees with the DIP Lender that, unless the DIP Lender otherwise consents in writing, so long as any amount payable hereunder or in respect of the DIP Facility is outstanding, it shall only use the proceeds of the DIP Loans for the purposes set out herein.

2.    As more fully set forth in the DIP Order, the Debtor further covenants and agrees that no DIP Obligation shall be subject to setoff or recoupment under section 553 of the Bankruptcy Code or otherwise with respect to any claim the Debtor may have against the DIP Lender arising on or before the Petition Date.

3.    The Debtor further covenants and agrees that it shall:

(a)    deliver to the DIP Lender and the Committee (i) as soon as possible and in any event within five (5) business days after an officer or manager of the Debtor obtains actual knowledge, or after due inquiry, would have obtained such knowledge by

58448/0001-17331126v6

acting in good faith and in a prudent manner in the performance of his or her duties, of the occurrence of any condition, occurrence or event which, after notice or lapse of time or both, would constitute an Event of Default (a "Default"), a statement setting forth details of such Default and the action which the Debtor has taken and proposes to take with respect thereto; and (ii) as soon as possible and in any event within five (5) business days after an officer or manager of the Debtor obtains actual knowledge, or after due inquiry, would have obtained such knowledge by acting in good faith and in a prudent manner in the performance of his or her duties, of the occurrence of any material adverse development with respect to any loss, damage, investigation, claim, litigation, action, proceeding or controversy involving the Debtor, notice thereof and, as soon as practicable thereafter, to the extent the DIP Lender or the Committee requests, copies of all documentation relating thereto;

(b)     pay all taxes, assessments, contributions and other governmental charges imposed upon the Debtor or any of its properties or assets as they become due and payable, to the extent payment and/or enforcement thereof is not stayed as a result of the Chapter 11 Case; provided, however, that the Debtor shall not make tax distributions on account of taxable income except with respect to tax obligations arising from business operations in calendar year 2019;

(c)     maintain in good working order all material properties used in the business of the Debtor, as and to the extent in good working order as of the Petition Date;

(d)     maintain insurance with respect to the business and properties of the Debtor against loss of the kind and in the amounts maintained by the Debtor as of the Petition Date, to the extent that such insurance may be obtained by the Debtor by exercising commercially reasonable efforts, and request that the DIP Lender be listed as a loss payee and additional insured on such insurance policies;

(e)     comply in all material respects with the

6

requirements of all applicable laws;

(f) promptly upon request execute and deliver such documents and do such other acts as the DIP Lender may reasonably request in connection with the DIP Facility, and in accordance with the DIP Documents (including but not limited to execution of any additional security documents that may be required by the DIP Lender to secure the DIP Loans);

(g) maintain compliance with all provisions of this Term Sheet;

(h) perform all obligations of the Debtor under the DIP Facility, the DIP Documents and the DIP Order;

(i) comply in all material respects with the Plan Support Agreement and Plan Term Sheet (as filed at Docket No. 311); and

(j) deliver to the DIP Lender and the Committee weekly Budget Variance Reports (as defined in Final Order (A) Authorizing the Debtor to Use Cash Collateral, (B) Granting Adequate Protection and (C) Modifying the Automatic Stay [Docket No. 112]) concurrently with the delivery of such reports to the Prepetition Secured Lender.

<u>Negative Covenants:</u>    The Debtor covenants and agrees that it shall not:

1. except to the extent existing as of the entry of the DIP Order, incur any indebtedness (other than the DIP Loans, any other indebtedness permitted to be incurred by the DIP Lender and the Court and any unsecured obligations incurred in the ordinary course of business by the Debtor);

2. except to the extent existing as of the entry of the DIP Order, consent to the granting of adequate protection payments or liens, superpriority administrative expense claims or liens having priority senior or <u>pari</u> <u>passu</u> with the liens granted to the DIP Lender or otherwise incur any liens other than liens permitted in writing by the DIP Lender;

3. except to the extent existing as of the entry of the DIP Order, make any investments in any person or make any loan to any person (other than as permitted in writing by the DIP Lender);

4.    engage in any business other than the business engaged in by the Debtor as of the entry of the DIP Order except with the written consent of the DIP Lender;

5.    terminate or agree to any modification to any organizational documents of the Debtor except with the written consent of the DIP Lender or as otherwise required under the Bankruptcy Code; or

6.    make any payment of prepetition claims except as authorized by an order of the Court.

<u>Events of Default</u>:    The occurrence of any one or more of the following events (each such event and the expiry of the cure period, if any, provided in connection therewith, being herein referred to as an "<u>Event of Default</u>") shall constitute a default hereunder:

1.    The failure by the Debtor to perform or comply with any term, condition, covenant or obligation (including a payment obligation) contained herein or in the DIP Order, on its part to be performed or complied with where any such failure to perform or comply shall not be remedied within five (5) business days from written notice of default.

2.    The cessation of this Term Sheet to be in full force and effect or the DIP Facility being declared by the Court to be null and void or the validity or enforceability of the DIP Facility being contested by the Debtor or the Debtor denying in writing that it has any further liability or obligation under the DIP Facility or the DIP Lender ceasing to have the benefit of the DIP Liens granted by the DIP Order.

3.    Except as permitted in the DIP Order, the entry of any order of the Court granting to any third party a superpriority claim or lien <u>pari</u> <u>passu</u> with or senior to that granted to the DIP Lender hereunder.

4.    The entry of an order converting the Debtor's Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or the Debtor filing a motion or not opposing a motion seeking such relief.

5.    The entry of an order dismissing the Debtor's Chapter 11 Case, or the Debtor filing a motion or not opposing a motion seeking such relief, unless consented to by the DIP Lender.

58448/0001-17331126v6

6.      The entry of any order in the Debtor's Chapter 11 Case or any successor case, which order constitutes the stay, modification, appeal or reversal of the DIP Order or which otherwise affects the effectiveness of the DIP Order.

7.      The entry of an order in the Debtor's Chapter 11 Case appointing any examiner having expanded powers or a trustee to operate all or any part of the Debtor's business.

8.      Any judgment or order with respect to a postpetition event shall be rendered against the Debtor which does or would reasonably be expected to (i) cause a material adverse change in the financial condition, business, prospects, operations or assets of the Debtor or (ii) have a material adverse effect on the rights and remedies of the DIP Lender hereunder, and there shall be a period of ten (10) consecutive business days during which a stay of enforcement of such judgment or order, by reason of a pending appeal or otherwise, shall not be in effect.

9.      The DIP Order being amended or modified without the consent of the DIP Lender.

10.      The commencement of any claim or cause of action by or on behalf of the Debtor, its estate or the Committee against the DIP Lender.

11.      The failure by the Debtor to comply in all material respects with the Plan Support Agreement and Plan Term Sheet (as filed at Docket No. 311).

**Remedies:**      If any Event of Default occurs and is continuing, the DIP Lender may take any or all of the following actions:

1.      if such Event of Default occurs prior to the making of the DIP Loans, declare the commitment of the DIP Lender to make the DIP Loans to be terminated, whereupon such commitment shall be terminated;

2.      declare interest on the DIP Obligations to accrue at the Default Interest Rate, whereupon the interest on the DIP Obligations shall automatically accrue at such default rate;

3.      subject to expiration of the Default Notice Period (as defined below), declare the outstanding unpaid Principal Amount of the DIP Facility, all interest accrued and unpaid thereon, and all other amounts owing or payable thereunder, under this Term Sheet or under the DIP Order to be

9

immediately due and payable, without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Debtor;

4.    subject to expiration of the Default Notice Period, (i) enter upon any premises on or in which any of the DIP Collateral may be located and take possession of the DIP Collateral or complete processing, manufacturing and repair of all or any portion of the DIP Collateral, (ii) collect, foreclose, receive, appropriate, setoff and realize upon any and all DIP Collateral, (iii) remove any DIP Collateral from any premises on or in which the same may be located for the purpose of effecting the sale, foreclosure or other disposition thereof or for any other purpose, (iv) exercise its unqualified right to credit bid up to the full amount of the outstanding DIP Obligations in any sale of the DIP Collateral (or any part thereof) without the need for further Court order authorizing sale the same, and whether such sale is effectuated through section 363 or 1129 of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise, and (v) take whatever other action the DIP Lender may deem necessary or desirable for the protection of the DIP Lender's interests; and/or

5.    exercise all rights and remedies available to the DIP Lender (whether as a secured creditor or otherwise) under the DIP Facility, this Term Sheet, the other DIP Documents, the DIP Order or applicable law (including in respect of the DIP Collateral).

All rights, remedies and powers granted to the DIP Lender under the DIP Documents and the DIP Order are cumulative, not exclusive, and are enforceable, in the DIP Lender's discretion, alternatively, successively or concurrently.

<u>Default Notice Period</u>:    The DIP Order shall include, without limitation, provisions that upon the occurrence of a Termination Event,[3] the automatic stay provisions of section 362 of the Bankruptcy Code shall be automatically vacated and modified to the extent necessary to permit the DIP Lender to exercise all rights and remedies provided in the DIP Order and the DIP Documents, as applicable, and to take

---

[3]    "<u>Termination Event</u>," shall mean the expiration of five (5) business days (the "<u>Default Notice Period</u>") following the provision of written notice to the Debtor (with a copy of such notice provided to counsel for the Debtor, the Committee, the Prepetition Secured Lender and the U.S. Trustee) upon the occurrence of an Event of Default.

10

any or all of the following actions without further order of or application to the Court, including without limitation: (i) immediately terminate the availability of the DIP Facility to the Debtor; (ii) immediately declare all DIP Obligations to be immediately due and payable; (iii) immediately set off any and all amounts held on account of or owed to the Debtor against the DIP Obligations, or otherwise enforce rights against the DIP Collateral in the possession of, or subject to a lien in favor of the DIP Lender for application toward the DIP Obligations; and (iv) take any other actions or exercise any other rights or remedies permitted under the DIP Order and the DIP Documents or applicable law to effect the repayment of the DIP Obligations; provided that notwithstanding anything herein to the contrary, the DIP Lender shall not enforce any DIP Liens against the DIP Collateral or exercise any other remedies prior to the expiration of the Default Notice Period.  The DIP Order shall further provide that (a) any party in interest's sole recourse with respect to opposing such modification of the automatic stay under section 362(a) of the Bankruptcy Code shall be to contest the occurrence and/or continuance of an Event of Default, (b) during the Default Notice Period, the Debtor shall (x) have no right to request extensions of credit under the DIP Facility, other than with the consent of the DIP Lender and (y) be entitled to an emergency hearing before the Court, with proper notice to the DIP Lender, solely for the purpose of contesting whether an Event of Default has occurred and/or is continuing, (c) the rights and remedies of the DIP Lender specified in the DIP Order are cumulative and not exclusive of any rights or remedies that the DIP Lender may have hereunder or otherwise, and (d) the Debtor shall cooperate fully with the DIP Lender in any permitted exercise of rights and remedies, whether against the DIP Collateral or otherwise.

| | |
|---|---|
| Release from Lending Obligations: | Upon the repayment of all DIP Obligations owed to the DIP Lender by the Debtor and termination of the rights and obligations arising under the DIP Documents, the DIP Lender, solely in its capacity as such, shall be released from any and all obligations, liabilities, actions, duties and responsibilities arising or occurring in connection with or related to this Term Sheet, the other DIP Documents or the DIP Order.  Notwithstanding anything to the contrary herein, the Debtor's releases do not extend to the DIP Lender's obligations to make the DIP Loans and otherwise comply with the terms of this Term Sheet, the other DIP Documents and the DIP Order. |
| Expenses and Indemnification: | The DIP Lender, solely in its capacity as such, will have no liability for, and will be indemnified and held harmless against, any |

58448/0001-17331126v6

losses, claims, damages, liabilities or expenses incurred in respect of the financing contemplated hereby or the use or the proposed use of proceeds thereof, except to the extent found by a final, non-appealable judgment of a court to arise from the gross negligence, willful misconduct or fraud of the DIP Lender.

Governing Law:            Delaware

IN WITNESS WHEREOF, the parties hereto have caused this Term Sheet to be executed individually or by their respective officers thereunto duly authorized, as applicable, as of the date first set forth above.

**BORROWER:**

**NOVUM PHARMA, LLC**

By: _____
     Name: Thomas S. O'Donoghue, Jr.
     Title: Chief Restructuring Officer

**DIP LENDER:**

**CARDINAL HEALTH 105, INC.**

By: _____
     Name:
     Title: