**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------ x
:
In re: : Chapter 11
:
NOVUM PHARMA, LLC, : Case No. 19-10209 (BLS)
:
              Debtor.[1] : **Proposed Hrg. Date: 8/6/19 at 10:00 a.m. (ET)**
: **Proposed Obj. Deadline: 8/1/19 at 4:00 p.m. (ET)**
------------------------------------------------------------ x

**DEBTOR'S MOTION PURSUANT TO BANKRUPTCY
CODE SECTION 105(a) AND BANKRUPTCY RULE 9019(a) FOR ORDER
APPROVING SETTLEMENT WITH PSKW, LLC D/B/A CONNECTIVERX**

        Novum Pharma, LLC, the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Debtor"), hereby moves (the "Motion") pursuant to section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order, substantially in the form attached hereto (the "Proposed Order"), approving a settlement by and between the Debtor and PSKW, LLC *d/b/a* ConnectiveRx ("ConnectiveRx" and, together with the Debtor, the "Parties") of certain disputes between the Parties, as memorialized in the stipulation between the Parties attached to the Proposed Order as Exhibit 1 (the "Stipulation"). In support of the Motion, the Debtor respectfully represents as follows:

**JURISDICTION AND VENUE**

        1.     This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated February 29, 2012. This is a core proceeding under 28 U.S.C.

---

[1]    The last four digits of the Debtor's federal tax identification number are 7895. The mailing address for the Debtor is 200 South Wacker Drive, 31st Floor, Chicago, IL 60606.

58448/0001-17590574v4

§ 157(b) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Debtor consents to the entry of a final order by the Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2. The Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

3. The statutory basis for the relief requested herein is section 105(a) of the Bankruptcy Code. Such relief also is warranted under Bankruptcy Rule 9019(a).

## BACKGROUND

**A.    The Chapter 11 Case**

4. On February 3, 2019 (the "Petition Date"), the Debtor commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case"). The factual background regarding the Debtor, including its business operations, its capital and debt structure, and the events leading to the filing of the Chapter 11 Case, is set forth in the Declaration of Thomas S. O'Donoghue, Jr. in Support of Chapter 11 Petition and First Day Pleadings [Docket No. 3] (the "First Day Declaration").

5. The Debtor continues to manage and operate its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6. On February 12, 2019, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the

"Committee") pursuant to section 1102(a) of the Bankruptcy Code [Docket No. 39]. No trustee or examiner has been appointed in the Chapter 11 Case.

7. On March 12, 2019, the Debtor filed its Schedules of Assets and Liabilities [Docket No. 123] (as amended, the "Schedules") and Statement of Financial Affairs [Docket No. 124], each of which were amended on March 28, 2019 [Docket No. 175]. As reflected in the Schedules, ConnectiveRx received approximately $9.9 million in payments and/or transfers from the Debtor in the ninety-day period prior to the Petition Date (the "Non-Insider Potential Preference Claims"). ConnectiveRx received approximately $19.8 million in payments and/or transfers from the Debtor in the one-year period prior to the Petition Date (the "Insider Potential Preference Payments" and, collectively with the Non-Insider Potential Preference Claims, the "Preference Claims").

8. On June 14, 2019, the Debtor filed its Motion for Order Authorizing Debtor to Enter into Plan Support Agreement [Docket No. 311] (the "PSA Motion"), seeking authority for the Debtor to enter into a plan support agreement (the "PSA") with numerous key case constituents including, among others, Cardinal Health 105, Inc., the Committee and the Debtor's prepetition secured lender.

9. On June 21, 2019, the Debtor filed its Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtor [Docket No. 324] (as may be amended, supplemented or otherwise modified, the "Plan") and related disclosure statement (as may be amended, supplemented or otherwise modified, the "Disclosure Statement").

10. On July 11, 2019, the Court entered an order [Docket No. 368] approving the PSA Motion.

**B.    ConnectiveRx's Proofs of Claim**

11.    On or about February 25, 2019, ConnectiveRx filed a proof of claim against the Debtor asserting a general unsecured claim in the amount of $3,026,262.50 in connection with accrued amounts owing under certain agreements by and between the Debtor and ConnectiveRx, and designated as Claim No. 2 (the "Pre-Petition Claim").

12.    On or about April 18, 2019, ConnectiveRx timely filed a proof of claim against the Debtor asserting an administrative priority claim in the amount of at least $175,000.00 in connection with the Debtor's alleged obligation to indemnify ConnectiveRx under certain agreements by and between the Debtor and ConnectiveRx, and designated as Claim No. 26 (the "Administrative Claim" and, collectively with the Pre-Petition Claim, the "ConnectiveRx Claims").  ConnectiveRx asserts that the Administrative Claim is now at least $300,000.

**C.    The Stipulation**

13.    The Parties have reached a compromise (the "Settlement") that would, among other things, resolve all issues associated with the Preference Claims and ConnectiveRx Claims under the terms set forth in the Stipulation, a copy of which is attached to the Proposed Order as Exhibit 1.  The Settlement is memorialized in the Stipulation, the material terms of which are set forth below:[2]

    (a)    Following execution of the Stipulation by the Parties, ConnectiveRx will not (i) oppose approval of the Disclosure Statement or the Debtor's motion seeking approval of solicitation procedures [Docket No. 326], and will not file objections, serve discovery or seek depositions with respect to the foregoing, or (ii) serve discovery or notice depositions directed to the Debtor that would require the Debtor to respond or provide documents,

---

[2]    The summary set forth herein is qualified in its entirety by the terms of the Stipulation.  To the extent that there is any inconsistency between the summary provided herein and the actual terms of the Stipulation, the actual terms of the Stipulation shall control.

|     |     |
| --- | --- |
| | information or deponents prior to August 8, 2019; <u>provided</u>, <u>however</u>, that nothing in the Stipulation will prevent ConnectiveRx from serving discovery on non-Debtor entities or deposing non-Debtor entities, subject to paragraph 6 of the Stipulation. |
| (b) | ConnectiveRx may file and prosecute its objection to the DIP Financing Motion; <u>provided</u>, <u>however</u>, that if the Committee agrees on behalf of itself and its members that executed a plan support agreement in writing on or before 2:00 p.m. on July 23, 2019 to irrevocably waive any objection to the Stipulation (the "<u>Committee Waiver</u>"), then ConnectiveRx will withdraw any objection it may have filed with respect to the DIP Financing Motion. |
| (c) | If the Committee Waiver is not provided on or before 2:00 p.m. on July 23, 2019, ConnectiveRx may prosecute its objection, file appeals to any orders entered, and file objections to claims and motions for standing and other relief and seek discovery in the Chapter 11 Case; <u>provided</u>, <u>however</u>, that no objection to the Plan will be filed by ConnectiveRx before August 8, 2019. |
| (d) | Upon entry of an order approving the Stipulation, ConnectiveRx will dismiss any pending motions, objections or appeals filed by ConnectiveRx in the Debtor's Chapter 11 Case, and will withdraw any requests for discovery served on the Debtor, the Committee or any party to the Debtor's Plan Support Agreement.  If an order approving the Stipulation is not entered on or before August 8, 2019, the Debtor will not object to the setting of an expedited discovery schedule in connection with ConnectiveRx's Plan objection. |
| (e) | Upon entry of a final order approving the Stipulation, ConnectiveRx will support confirmation of the Plan, including by (a) voting to accept the Plan prior to the Voting Deadline and (b) not opting out of the third-party release provisions of the Plan. |
| (f) | On or as reasonably practicable after the effective date of the Plan (the "<u>Plan Effective Date</u>"), ConnectiveRx will transmit payment in the amount of $300,000 to the Litigation Trust established pursuant to the Debtor's Plan (the date of such payment, the "<u>Settlement Payment Date</u>"). |
| (g) | Effective as of the Settlement Payment Date, the Debtor and ConnectiveRx will exchange full mutual releases. |

5

**RELIEF REQUESTED**

14.     By the Motion, the Debtor respectfully requests that the Court enter the Proposed Order thereby approving the Settlement between the parties memorialized in the Stipulation.

**BASIS FOR RELIEF**

15.     The Debtor requests the entry of an order pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 approving the Stipulation.  Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order … that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Bankruptcy Rule 9019(a) provides that:

> On motion by the trustee [or debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

16.     The decision to approve a compromise under Bankruptcy Rule 9019 is committed to the Court's sound discretion.  See In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997).  However, the Court may approve a settlement if and only if it is "fair and equitable" to creditors as a body.  See Will v. Nw. Univ. (In re Nutraquest, Inc.), 434 F.3d 639, 644 (3d Cir. 2006).  To assess whether a settlement is fair and equitable, the Court must weigh the value of the claim that is being settled against the settlement's value.  See Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996).  In making this determination, the Court considers four factors:

    a.     "the probability of success in litigation,"

    b.     "the likely difficulties in collection,"

   c. "the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it," and

   d. "the paramount interest of the creditors."

Id.; accord Nutraquest, 434 F.3d at 644. Because the Court cannot estimate a claim's value precisely, the Court may approve a settlement—even if it is not "the best possible compromise"—if it "is within the reasonable range of litigation possibilities." In re World Health Alts., Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (quoting In re Coram Healthcare Corp., 315 B.R. 321, 330 (Bankr. D. Del. 2004) and In re Penn Cent. Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979)). As the Court has noted, settlements are favored in bankruptcy because they reduce litigation, including its attendant expenses, and expedite the estate's administration. See In re Key3Media Grp., Inc., 336 B.R. 87, 93 (Bankr. D. Del. 2005).

   17. Here, the Debtor submits that the Martin factors are easily satisfied. First, the potential litigation between the Parties relating to the Preference Claims involves complicated legal issues, including whether ConnectiveRx is an "insider" of the Debtor under section 101(31) of the Bankruptcy Code and whether ConnectiveRx has legitimate defenses to the Pre-Petition Claims under section 547(c) of the Bankruptcy Code. In addition to the standard "ordinary course" and "new value" defenses typically asserted by preference defendants, ConnectiveRx asserts that it has other defenses because it was an intermediary and transferred nearly all of the funds it received from the Debtor to third parties (either before or after such funds were received from the Debtor). Moreover, the Committee has advised the Debtor that it believes ConnectiveRx may be characterized as an insider of the Debtor, a position which is strongly opposed by ConnectiveRx. In short, this is not a routine preference case and would be

costly to resolve, especially because expert testimony and substantial discovery likely would be required.[3]

18.      The Debtor has analyzed ConnectiveRx's ordinary course and new value defenses for the transfers it received in the ninety-day period prior to the Petition Date, and has determined that the likely litigation recoveries would range from $0-$4.7 million, depending on the ordinary course of business methodology applied. Even if the most favorable ordinary course approach were accepted by the Court, ConnectiveRx still would have recourse to its "conduit" defense and perhaps other novel defenses based on the nature of its business operations. Moreover, although the Committee asserts that ConnectiveRx may be an insider of the Debtor, thereby exposing additional transfers to potential avoidance, these transfers would be subject to the same defenses already discussed—and the Debtor believes it would be challenging to establish ConnectiveRx's purported insider status. In short, even attributing some value to the transfers outside the ninety-day range, the likely range of litigation recoveries can be estimated at $0-$6 million.

19.      Due to the size of ConnectiveRx's Pre-Petition Claim (slightly more than $3 million), and the relatively small size of the anticipated claims pool (approximately $8.7 million), a large percentage of any litigation recovery from ConnectiveRx would be returned to ConnectiveRx. For instance, if the Debtor (or the Litigation Trust) achieved a $2 million litigation recovery against ConnectiveRx, ConnectiveRx would be entitled to a distribution of approximately $2.03 million—even before considering the costs of prosecuting the litigation. As the size of the litigation recovery increases, the benefit to the estate (or the Litigation Trust)

---

[3]    It should be noted that ConnectiveRx's Administrative Claim also likely would be costly to resolve, as the Debtor would challenge both the amount and basis for the claim. The Debtor acknowledges, however, that while it would expect to prevail in such a litigation, there is litigation risk associated with the resolution of the Administrative Claim.

increases, but even a $4 million litigation recovery would yield a net benefit of less than $500,000 (before legal and expert costs).  In short, as demonstrated by the settlement analysis attached hereto as Exhibit A, assuming any reasonable level of litigation recovery, the net recovery to the estate (or the Litigation Trust) would be minimal.  As such, the Debtor submits that the $300,000 cash payment under the proposed Settlement falls well within the "reasonable range of litigation possibilities."

20. Finally, the "paramount interest of the creditors" also strongly supports approval of the proposed Settlement.  As discussed at length at the recent hearing regarding approval of the PSA, the Debtor believes that the Plan will provide a significantly greater recovery for unsecured creditors than a sale pursuant to section 363 of the Bankruptcy Code or a conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code.  Although the Debtor, working with the other parties to the PSA, has a clear path forward to confirmation, there is very little room in the Debtor's budget for unanticipated expenses—and there is no room in the budget to deviate from the current confirmation timeline (*i.e.*, confirmation of the Plan on August 29, 2019).  Given the Debtor's limited resources and the importance of maintaining the current confirmation timeline, the Debtor submits that litigation with ConnectiveRx would put confirmation of the Debtor's Plan at risk, to the detriment of the parties to the PSA and all beneficiaries of the Litigation Trust.  On the other hand, a settlement with ConnectiveRx will align its interests with the Debtor and its other creditors, thereby materially increasing the likelihood that the Debtor's Plan will be confirmed and consummated.

21. In sum, the Debtor submits that the Martin factors are easily satisfied under the circumstances here.  Moreover, the Settlement was vigorously negotiated at arm's-length between the Debtor and ConnectiveRx, and provides substantial benefits to the Debtor's

9

estate and creditors. Accordingly, for the reasons set forth above, the Debtor submits that the Settlement is "fair and equitable" and that the Settlement between the parties, as memorialized in the Stipulation, should be approved.

## NOTICE

22.    Notice of the Motion will be provided to: (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Debtor's prepetition secured lender; (iv) counsel to ConnectiveRx; (v) the PSA Parties (as defined in the Plan); and (vi) all parties entitled to notice under Del. Bankr. L.R. 2002-1(b). The Debtor submits that, under the circumstances, no other or further notice is required.

## NO PRIOR REQUEST

23.    No prior request for the relief sought in this Motion has been made to this or any other Court.

*[Remainder of Page Intentionally Left Blank]*

**CONCLUSION**

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto, approving the Stipulation and granting such other and further relief as may be just and proper.

Dated: Wilmington, Delaware
       July 22, 2019

                              COLE SCHOTZ P.C.

                              /s/ David R. Hurst
                              David R. Hurst (I.D. No. 3743)
                              500 Delaware Avenue, Suite 1410
                              Wilmington, Delaware 19801
                              Telephone: (302) 652-3131
                              Facsimile: (302) 652-3117

                              – and –

                              Jacob S. Frumkin
                              25 Main Street
                              Hackensack, New Jersey 07601
                              Telephone: (201) 489-3000
                              Facsimile: (201) 489-3479

                              *Counsel for Debtor and*
                              *Debtor-in-Possession*