**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------ x
                                         :

| | |
|---|---|
| In re: | Chapter 11 |
| NOVUM PHARMA, LLC, | Case No. 19-10209 (BLS) |
| Debtor.[1] | **Related to Docket Nos. 355, 384, 387, 401** |

------------------------------------------------------------ x

**FINAL ORDER (I) AUTHORIZING DEBTOR TO OBTAIN
POSTPETITION SECURED FINANCING; (II) GRANTING
LIENS AND SUPERPRIORITY CLAIMS; (III) MODIFYING THE
AUTOMATIC STAY; AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of Novum Pharma, LLC, the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Debtor"), pursuant to sections 105(a), 362 and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking, among other things, entry of an order (this "DIP Order"):

    (a)    authorizing the Debtor to obtain postpetition financing (the "DIP Financing"), consisting of a first-lien superpriority term loan multi-draw financing facility in an aggregate principal amount not to exceed $3.0 million (the "DIP Facility") from Cardinal Health 105, Inc. or a designated affiliate (the "DIP Lender");

---

[1] The last four digits of the Debtor's federal tax identification number are 7895. The mailing address for the Debtor is 200 South Wacker Drive, 31st Floor, Chicago, IL 60606.

[2] All capitalized terms used but not otherwise defined herein shall have the meanings set forth in that certain Debtor-In-Possession Financing Term Sheet, dated as of July 3, 2019 (as amended, supplemented or otherwise modified in accordance with the terms thereof, the "Term Sheet"), a copy of which is attached hereto as Exhibit 1.

(b) authorizing the Debtor to execute and deliver, and incur all liabilities and obligations under:

 (i) the Term Sheet, and perform all such other and further acts as may be required in connection with the respective DIP Documents;[3] and

 (ii) all other agreements, documents, notes or instruments as may be required, necessary or desirable (including all collateral documents) and which are executed or delivered in connection with the Term Sheet;

(c) authorizing the Debtor to use proceeds of the DIP Facility solely as expressly permitted in the Term Sheet, including the payment of (i) professional fees and expenses incurred by the Debtor, RGP Pharmacap, LLC (the "Prepetition Secured Lender") and the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case (the "Committee") as such fees and expenses become due and payable pursuant to the terms of the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals [Docket No. 142] or the Plan (the "Accrued Professional Fees"), (ii) amounts required to be paid pursuant to section 365(b)(1) of the Bankruptcy Code upon the assumption of contracts in connection with confirmation of the Plan (the "Cure Amounts"), (iii) administrative expenses required to be paid pursuant to section 1129(a)(9)(A) of the Bankruptcy Code ("Administrative Claims") on the effective date (the "Effective Date") of the Plan and (iv) other expenses of the Debtor's dermatology products business as agreed by the DIP Lender;

(d) granting automatically perfected security interests in and liens on all of the DIP Collateral (as defined below) to the DIP Lender, and granting superpriority

---

[3] "DIP Documents" shall mean, collectively, the Term Sheet, any collateral documents, and all such instruments and documents as may be executed and delivered in connection with or relating to the DIP Facility.

administrative expense status to the DIP Obligations (as defined below), in each case on the terms and subject to the relative priorities set forth in the DIP Documents;

(e)  authorizing the Debtor to pay the principal, interest, fees, expenses, disbursements and other amounts payable under the DIP Documents as such amounts become due and payable;

(f)  vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Order and the DIP Documents; and

(g)  granting the Debtor such other and further relief as is just and proper;

and this court (the "Court") having considered the Motion; and a hearing to consider entry of the DIP Order having been held before the Court on July 24, 2019 (the "Hearing"); and upon all of the pleadings filed with the Court, all evidence presented in support of the DIP Order, the arguments of counsel stated on the record of the Hearing and all of the proceedings held before the Court; and due and sufficient notice of the Motion and the relief requested therein having been given under the particular circumstances, and it appearing that no other or further notice need be provided; and after due deliberation and consideration, and good and sufficient cause appearing therefor, it is hereby

**FOUND, DETERMINED, ORDERED AND ADJUDGED, THAT:**[4]

1.  Motion Granted.  The Motion is GRANTED on the terms and conditions set forth herein and all objections to the Motion to the extent not withdrawn or resolved are hereby overruled.

---

[4] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

58448/0001-17269365v6

2.      **Commencement of the Case**.  On February 3, 2019 (the "Petition Date"), the Debtor commenced a case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").  The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Case.

3.      **Jurisdiction and Venue**.  The Court has jurisdiction over this matter, this proceeding and the persons and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtor confirms its consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue for the Chapter 11 Case is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      **Committee**.  On February 12, 2019, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Committee pursuant to section 1102(a) of the Bankruptcy Code [Docket No. 39].

5.      **Notice**.  Notice of the relief sought by the Motion and the Hearing was served by first-class U.S. mail (or by electronic mail, to those parties providing written consent) on the following parties: (i) the U.S. Trustee; (ii) counsel to the DIP Lender; (iii) counsel to the Committee; (iv) counsel to the Prepetition Secured Lender; (v) the PSA Parties (as defined in the Plan); and (vi) all parties entitled to notice pursuant to Local Rule 2002-1(b).  Notice of the Motion, the relief sought by the Motion, the Hearing and the DIP Order has been provided in

4

accordance with the Bankruptcy Rules and Local Rules and is deemed good and sufficient notice thereof. No other notice need be provided for entry of the DIP Order.

6. <u>Findings Regarding the DIP Financing</u>.

(a) A critical need exists for the Debtor to obtain postpetition financing to fund the Accrued Professional Fees, Cure Amounts and Administrative Claims because the Debtor's cash on hand is insufficient to meet such obligations and such obligations are required to be satisfied in order to confirm the Plan. Moreover, there currently are Accrued Professional Fees due and payable, and the Debtor's only source of funds for payment of such professional fees is the DIP Facility.

(b) The Debtor is unable to obtain the required funds (i) in the forms of (1) unsecured credit or debt allowable under section 503(b)(l) of the Bankruptcy Code; or (2) an administrative expense pursuant to section 364(a) or (b) of the Bankruptcy Code; or (ii) on terms more favorable than those embodied in the Term Sheet and the other DIP Documents. The DIP Lender is prepared to enter into the DIP Financing solely on the terms set forth in the Term Sheet, the DIP Order and the other DIP Documents.

(c) The terms of the DIP Financing are fair, just and reasonable under the circumstances, reflect the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties and are supported by reasonably equivalent value and fair consideration. The terms of the DIP Financing have been negotiated in good faith and at arm's-length by and between the Debtor and the DIP Lender. Any credit extended or other indebtedness or liabilities arising under, in respect of, or in connection with the DIP Financing, the DIP Order, the Term Sheet or any other DIP Document, shall be deemed to have been extended in "good faith" by the DIP Lender as that term is used in section 364(e) of the Bankruptcy Code, and in express

5

reliance upon the protections afforded by section 364(e) of the Bankruptcy Code, and the DIP Lender's claims, the DIP Superpriority Claims (as defined below), the DIP Liens (as defined below) and other protections granted pursuant to the DIP Order and the DIP Documents, shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that the DIP Order or any portion hereof is vacated, reversed, amended or modified, on appeal or otherwise.

(d) The relief requested in the Motion is necessary, essential and an appropriate step toward achieving confirmation of the Plan. Without access to the DIP Facility, the Debtor would be unable to pay the Accrued Professional Fees, Cure Amounts or Administrative Claims, payment of which amounts is necessary to confirm the Plan. The relief requested in the Motion is therefore necessary for the success of the Chapter 11 Case. Entry of this DIP Order is in the best interests of the Debtor, its estate, its creditors and its interest holders.

7. Authorization of the DIP Financing.

(a) The DIP Documents, including the Term Sheet attached hereto as Exhibit 1, are approved, and the Debtor is hereby authorized to execute and enter into, deliver and perform all obligations under the DIP Documents. The DIP Order and the DIP Documents shall govern the respective financial and credit accommodations to be provided to the Debtor by the DIP Lender in connection with the DIP Financing.

(b) The Debtor is hereby immediately authorized to borrow money pursuant to the DIP Documents up to the full amount of the DIP Facility, which shall be used solely as expressly provided in the DIP Order and the DIP Documents. The Debtor is authorized to pay and perform all "DIP Obligations" as that term is defined below.

6

(c) In furtherance of the foregoing and without further approval of the Court, the Debtor is hereby authorized to perform all acts, to make, execute and deliver all instruments and documents, and to pay all related fees, that may be required or necessary for the Debtor's performance of its obligations under the DIP Facility, including, without limitation:

(i) the execution, delivery and performance of the respective DIP Documents and any security and pledge agreements, financing statements and mortgages contemplated by the DIP Documents;

(ii) the execution, delivery and performance of one or more non-material amendments, waivers, consents or other modifications to and under the respective DIP Documents, in each case in such form as the Debtor and the DIP Lender may agree; provided, however, that any material amendments, waivers, consents or other modifications to and under the respective DIP Documents shall be subject to further order of the Court;

(iii) the non-refundable payment of principal and interest under, and any fees referred to in, the respective DIP Documents, and such costs and expenses as may be due in accordance with the respective DIP Documents; and

(iv) the performance of all other acts required under, or in connection with, the DIP Documents.

(e) All of the DIP Liens shall be effective and perfected as of the date of entry of the DIP Order without the necessity of the execution, recording or filing of mortgages, security agreements, pledge agreements, financing statements or other agreements or instruments.

(f) The DIP Obligations constitute valid, binding and non-avoidable obligations of the Debtor enforceable against it, and each of its successors and assigns, and each person or entity party to the DIP Documents in accordance with the respective terms of the DIP Order and the DIP Documents, and shall survive the dismissal of the Chapter 11 Case or the conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code (a "Successor Case").

(g) No obligation, payment, transfer or grant of security under the DIP Order or the DIP Documents shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law, or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment or any other challenges under the Bankruptcy Code or any other applicable foreign or domestic law or regulation by any person or entity, except as provided in the DIP Order or the DIP Documents.

(h) For purposes of the DIP Order, the term "<u>DIP Obligations</u>" shall mean the due and punctual payment by the Debtor of (i) the unpaid principal and interest on all loans made to the Debtor pursuant to the DIP Term Sheet (the "<u>DIP Loans</u>"), as and when due, whether at maturity, by acceleration or otherwise, and (ii) all other monetary obligations, including advances, debts, liabilities, obligations, fees, costs, expenses and indemnities, whether primary, secondary, direct, indirect, absolute or contingent, due or to become due, now existing or hereafter arising, fixed or otherwise, of the Debtor to the DIP Lender under the DIP Order or the DIP Documents.

(i) The DIP Loans shall (i) be evidenced by the books and records of the DIP Lender and, upon the request of the DIP Lender, a note executed and delivered to the DIP Lender by the Debtor in accordance with the terms of the DIP Documents, which note shall evidence the DIP Loans in addition to such accounts and records; (ii) bear interest and incur fees at the rates set forth in the Term Sheet; (iii) be secured in the manner specified below and under the applicable DIP Documents; (iv) be payable in accordance with the applicable DIP Documents; and (v) otherwise be governed by the terms set forth in the DIP Order and the DIP Documents.

58448/0001-17269365v6

(j)     The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified and vacated without further notice, application or order of the Court to the extent necessary to permit the DIP Lender, subject in all respects to the DIP Documents, to perform any act authorized or permitted under or by virtue of the DIP Order or any of the DIP Documents, including, without limitation, (i) to implement the DIP Facility authorized by the DIP Order and pursuant to the terms of the DIP Documents; (ii) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the DIP Collateral; and (iii) to assess, charge, collect, advance, deduct and receive payments with respect to the respective DIP Obligations, including, without limitation, all principal, interest, fees, costs and expenses permitted under the DIP Documents, and apply such payments to the respective DIP Obligations pursuant to the DIP Order and the DIP Documents.

8.     <u>Conditions Precedent</u>.  The DIP Lender shall have no obligation to make any DIP Loans or any other financial accommodation under the respective DIP Documents unless the conditions precedent to making such extensions of credit under the respective DIP Documents have been satisfied in full or waived in accordance with such DIP Documents.

9.     <u>Use of DIP Facility Proceeds</u>.  The Debtor shall use the proceeds of the DIP Facility solely as expressly permitted in the DIP Documents, including payment of Accrued Professional Fees, Cure Amounts and Administrative Claims.

10.    <u>DIP Superpriority Claims</u>.  Pursuant to section 364(c)(1) of the Bankruptcy Code, the DIP Obligations constitute (without the need to file a proof of claim) superpriority claims (the "<u>DIP Superiority Claims</u>") against the Debtor, with priority over any and all administrative expenses of the Debtor (except fees required to be paid to the Clerk of the

Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code), whether now existing or hereafter arising or incurred, of any kind whatsoever, including any and all administrative expenses or other claims of the kind specified in or arising under sections 105, 326, 328, 330, 331, 364, 365, 503(b), 506(c), 507, 546(c), 552(b), 726, 1113, 1114 or any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, whether now in existence or hereafter incurred by the Debtor, and shall at all times be senior to the rights of the Debtor, the Debtor's estate and any successor trustee, estate representative or any creditor, in the Chapter 11 Case or any Successor Case.  The DIP Superpriority Claims shall have recourse to and be payable from all prepetition and postpetition assets of the Debtor, including, but not limited to, the DIP Collateral.

        11.     <u>DIP Liens</u>.

        (a)     As security for the full and timely payment of the DIP Obligations, effective upon the entry of the DIP Order, the DIP Lender is hereby granted, pursuant to section 364(d) of the Bankruptcy Code, valid, enforceable, non-avoidable and fully perfected security interests in and liens and mortgages (collectively, the "<u>DIP Liens</u>") upon all DIP Collateral, which shall constitute first-priority security interests in and liens upon all DIP Collateral.

        (b)     As used herein, "<u>DIP Collateral</u>" shall mean all assets and property of the Debtor and its estate, real or personal, tangible or intangible, now owned or hereafter acquired, whether arising before or after the Petition Date, including, without limitation, all contracts, general intangibles, instruments, equipment, accounts and documents, all goods, inventory and fixtures, all documents, cash, cash equivalents, chattel paper, letters of credit and letter of credit rights, investment property, commercial tort claims, money, insurance, receivables, receivables

records, deposit accounts, collateral support, supporting obligations and instruments, all interests in leaseholds and real properties, all patents, copyrights, trademarks, tradenames and other intellectual property, all equity interests, all books and records relating to the foregoing, all other personal and real property of the Debtor, and all proceeds, products, accessions, rents and profits of or in respect of any of the foregoing (in each case as the foregoing are defined in the Uniform Commercial Code as in effect from time to time in the State of Delaware (and, if defined in more than one Article of such Uniform Commercial Code, shall have the meaning given in Article 9 thereof)); provided, however, that "DIP Collateral" shall not include (i) actions arising under chapter 5 of the Bankruptcy Code or any related state law claims of the Debtor's estate or its members (collectively, the "Causes of Action"); (ii) the proceeds of such Causes of Action; or (iii) assets and property of the Debtor subject to valid, enforceable and non-avoidable Permitted Liens (as used in that certain Loan Agreement, by and between the Debtor and the Prepetition Secured Lender, dated as of August 1, 2017 as amended from time to time) on the DIP Collateral that were perfected prior to the Petition Date (or perfected thereafter to the extent permitted by section 546(c) of the Bankruptcy Code).

12. Priority of Liens.

(a) The DIP Liens shall constitute valid, enforceable, non-avoidable and duly perfected first-priority security interests in and liens upon the DIP Collateral senior in priority and superior to any security, mortgage, collateral interest, lien or claim on or to any of the DIP Collateral.

(b) The DIP Liens shall not be subordinated to or made pari passu with any other lien under section 364(d) of the Bankruptcy Code or otherwise, including by any order heretofore or hereafter entered in the Chapter 11 Case or any Successor Case. Except as

11

expressly permitted in the respective DIP Documents and absent full payment and satisfaction of all obligations of the Debtor under the DIP Facility, the Debtor shall not (i) grant or impose any liens on the DIP Collateral or (ii) except as permitted in the respective DIP Documents, prime or seek to prime the DIP Liens and shall not offer any other parties any lien on the DIP Collateral. In addition, the Debtor shall not incur, create, assume, become or be liable in any manner with respect to, or permit to exist, any secured indebtedness, except as expressly permitted under the DIP Documents.

        13.     <u>Validity of Liens</u>.

        (a)     In no event shall any person or entity who pays (or through the extension of credit to the Debtor, causes to be paid) any of the respective DIP Obligations, be subrogated, in whole or in part, to any rights, remedies, claims, privileges, liens or security interests granted in favor of, or conferred upon the DIP Lender by the terms of the DIP Order, or any of the respective DIP Documents, until all of the DIP Obligations are paid in full in cash in accordance with the DIP Order or any of the respective DIP Documents.

        (b)     The DIP Liens and the DIP Superpriority Claims shall continue in any Successor Case for the Debtor under any chapter of the Bankruptcy Code, and all liens, security interests and claims shall maintain their priority as provided in the DIP Order.  If an order dismissing the Chapter 11 Case, pursuant to section 1112 of the Bankruptcy Code or otherwise, is at any time entered, such order shall provide that the DIP Liens and the DIP Superpriority Claims shall continue in full force and effect, shall remain binding on all parties in interest in the Chapter 11 Case, and shall maintain their priorities as provided in the DIP Order, until all DIP Obligations under the DIP Documents have been paid and satisfied in full and in cash.

Notwithstanding the dismissal of the Chapter 11 Case, the Court shall retain jurisdiction with respect to enforcing the DIP Liens and the DIP Superpriority Claims.

14. <u>Limitation on Use of DIP Loans</u>.  No portion of the DIP Loans may be used to challenge the debt or collateral position of the DIP Lender, whether by challenging the validity of the indebtedness or the validity, perfection or priority of any security interest or lien, or by seeking to invalidate, avoid, subordinate or otherwise impair any claim, security interest or lien or priorities created in connection with the DIP Financing, or by asserting any claim for damages allegedly arising out of the actions or inactions of the DIP Lender, or by seeking to recover on any transfers made to the DIP Lender.

15. <u>Termination of DIP Financing</u>.  The Debtor's authorization to use the DIP Financing shall immediately terminate upon the occurrence of a "<u>Termination Event</u>," which shall mean the earliest to occur of (i) the expiration of five (5) business days (the "<u>Default Notice Period</u>") following the provision of written notice to the Debtor (with a copy of such notice provided to counsel for the Debtor, the Committee, the Prepetition Secured Lender and the U.S. Trustee) upon the occurrence of an Event of Default; (ii) the occurrence of the Maturity Date as that term is defined in the Term Sheet; and (iii) the date on which the DIP Order is no longer in full force and effect.

16. <u>Perfection of Liens</u>.  The DIP Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the DIP Liens without the necessity of executing, filing or recording any mortgage, security agreement, pledge agreement, financing statement or other instrument or document, or the taking of any other act that otherwise may be required under state or federal law, rule or regulation of any jurisdiction to validate or perfect the DIP Liens or to entitle the DIP Lender to the priorities granted herein.  The Debtor may execute,

and the DIP Lender is hereby authorized to execute, file and/or record mortgages, security agreements, pledge agreements, financing statements and/or other instruments or documents to evidence the DIP Liens, and the Debtor is hereby authorized, promptly upon a demand by the DIP Lender made in accordance with the terms of the DIP Documents, to execute, file and/or record any such mortgages, security agreements, pledge agreements, financing statements or other instruments or documents as the DIP Lender may request; <u>provided</u>, <u>however</u>, that no such execution, filing or recordation shall be necessary or required in order to create or perfect the DIP Liens.  A copy of the DIP Order may, in the discretion of the DIP Lender, be filed with or recorded in any filing or recording office in addition to or in lieu of such mortgages, security agreements, pledge agreements, financing statements or other instruments or documents, and each and every federal, state and local governmental agency, department or office is hereby directed to accept a copy of the DIP Order and any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the DIP Order and the DIP Documents, for filing and recording, and to deem the DIP Order to be in proper form for filing and recording.  Notwithstanding the foregoing, pursuant to any applicable law, the DIP Lender is hereby authorized (but not required) to file or record financing statements and other filing or recording documents or instruments with respect to the DIP Collateral and DIP Liens, as applicable, without the signature of the Debtor in such form and in such offices as the DIP Lender determines is appropriate to perfect the security interests of the DIP Lender under the DIP Documents and the DIP Order and the DIP Lender is authorized to use collateral descriptions such as "all personal property" or "all assets," in each case "whether now owned or hereafter acquired," words of similar import or any other description the DIP Lender in its sole

14

discretion so chooses in any such financing statements.  For the avoidance of doubt, the filings authorized by this paragraph shall not be subject section 1146(a) of the Bankruptcy Code.

17. <u>Indemnity</u>.  The DIP Lender, solely in its capacity as such, shall have no liability for, and shall be indemnified and held harmless against, any losses, claims, damages, liabilities or expenses incurred in respect of the DIP Financing or the use or proposed use of proceeds thereof, except to the extent found by a final, non-appealable judgment of a court to arise from the gross negligence, willful misconduct or fraud of the DIP Lender.

18. <u>Release from Lending Obligations</u>.  Upon the repayment of all DIP Obligations owed to the DIP Lender by the Debtor and termination of the rights and obligations arising under the DIP Documents, the DIP Lender, solely in its capacity as such, shall be released from any and all obligations, liabilities, actions, duties and responsibilities arising or occurring in connection with or related to the DIP Documents or this DIP Order. Notwithstanding anything to the contrary herein, the Debtor's releases do not extend to (i) the DIP Lender's obligations to make the DIP Loans or (ii) the DIP Lender's obligations to comply with the terms of the DIP Documents and the DIP Order.

19. <u>Debtor's Waivers</u>.  At all times during the Chapter 11 Case, and whether or not an Event of Default has occurred, the Debtor irrevocably waives any right that it may have to (i) challenge the application of any payments authorized by the DIP Order pursuant to section 506(b) of the Bankruptcy Code; (ii) seek authority to grant liens on the DIP Collateral, or any portion thereof to any other entities, pursuant to section 364(d) of the Bankruptcy Code or otherwise; or (iii) seek authority to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or 364(d) of the Bankruptcy Code, other than from the DIP Lender, or as may be otherwise expressly permitted under the DIP Documents, unless the Debtor uses the

15

proceeds of such postpetition loans or other financial accommodations to pay in full in cash all DIP Obligations or the DIP Lender has provided its prior written consent to such action.

20. <u>Disposition of Collateral</u>.  The Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral in any way inconsistent with the terms and conditions of the DIP Documents without the prior written consent of the DIP Lender and an order of the Court.  In the absence of express prior written consent, no consent to a sale, transfer, lease, encumbrance or other disposition of any portion of the DIP Collateral shall be implied from any action, inaction or acquiescence by the DIP Lender.  Until all DIP Obligations are paid and satisfied in full and in cash in accordance with the terms of the DIP Documents, the proceeds of any sale of the DIP Collateral (other than sales in the ordinary course of business) shall be applied in the following order: (i) to pay any interest which is then due and payable; (ii) to pay any interest with respect to the principal amount being repaid which has accrued but is not yet due and payable; and (iii) to pay the principal amount of DIP Loans.

21. <u>Modification of Stay; Rights and Remedies Upon Termination</u>.

(a) Upon the occurrence of a Termination Event, the automatic stay provisions of section 362 of the Bankruptcy Code shall be automatically vacated and modified to the extent necessary to permit the DIP Lender to exercise all rights and remedies provided in the DIP Order and the DIP Documents, as applicable, and to take any or all of the following actions without further order of or application to the Court: (i) immediately terminate the availability of the DIP Facility to the Debtor; (ii) immediately declare all DIP Obligations to be immediately due and payable; (iii) immediately set off any and all amounts held on account of or owed to the Debtor against the DIP Obligations, or otherwise enforce rights against the DIP Collateral in the possession of, or subject to a lien in favor of the DIP Lender for application toward the DIP

16

Obligations; and (iv) take any other actions or exercise any other rights or remedies permitted under the DIP Order and the DIP Documents or applicable law to effect the repayment of the DIP Obligations; <u>provided</u> that notwithstanding anything herein to the contrary, the DIP Lender shall not enforce any DIP Liens against the DIP Collateral or exercise any other remedies prior to the expiration of the Default Notice Period.

(b) The automatic stay provisions of section 362(a) of the Bankruptcy Code shall be automatically vacated and modified as provided in paragraph 21(a) above, effective following the expiration of the Default Notice Period, unless otherwise ordered by the Court. During the Default Notice Period, the Debtor shall (i) have no right to request extensions of credit under the DIP Facility, other than with the consent of the DIP Lender; and (ii) be entitled to an emergency hearing before the Court, with proper notice to the DIP Lender. The rights and remedies of the DIP Lender specified herein are cumulative and not exclusive of any rights or remedies that the DIP Lender may have under the DIP Documents, or otherwise. The Debtor shall cooperate fully with the DIP Lender in any permitted exercise of rights and remedies, whether against the DIP Collateral or otherwise.

22. <u>Survival of DIP Order</u>. The provisions of the DIP Order and any actions taken pursuant thereto (i) shall survive the entry of any order: (x) converting the Chapter 11 Case to a Successor Case; or (y) dismissing the Chapter 11 Case; and (ii) shall continue in full force and effect notwithstanding the entry of any such order, and the claims, liens and security interests granted pursuant to the DIP Order shall maintain their priority as provided by the DIP Order until all of the DIP Obligations are indefeasibly paid in full and discharged in accordance with the DIP Documents.

23. <u>No Waiver</u>.  The DIP Order shall not be construed in any way as a waiver or relinquishment of any rights that the DIP Lender may have to bring or be heard on any matter brought before the Court.

24. <u>Reservation of Rights</u>.  The terms, conditions and provisions of the DIP Order are in addition to and without prejudice to the rights of the DIP Lender to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Documents or any other applicable agreement or law, including, without limitation, rights to (i) seek relief from the automatic stay; (ii) seek an injunction; (iii) oppose any future request for the granting of any interest in the DIP Collateral or of priority in favor of any other party; (iv) object to any sale of assets; or (v) object to applications for allowance or payment of compensation of professionals or other parties seeking compensation or reimbursement from the Debtor's estate.

25. <u>No Consent</u>.  No action, inaction or acquiescence by the DIP Lender, including funding the Debtor's operations under the DIP Order, shall be deemed to be or shall be considered evidence of any alleged consent by the DIP Lender to a charge against the DIP Collateral pursuant to sections 506(c), 552(b) or 105(a) of the Bankruptcy Code.  The DIP Lender shall not be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral.  The DIP Liens shall not be subject to sections 510, 549, 550 or 551 of the Bankruptcy Code.

26. <u>Binding Effect; Successors and Assigns</u>.  Except as otherwise provided in the DIP Documents, the provisions of the DIP Order shall be binding upon and inure to the benefit of the DIP Lender and the Debtor, and their respective successors and assigns (including any trustee or fiduciary hereafter appointed or elected as a legal representative of the Debtor, its estate or with respect to the property of its estate) whether in the Chapter 11 Case, in any

Successor Case or upon dismissal of the Chapter 11 Case or a Successor Case; provided, however, that the DIP Lender shall have no obligation to extend any financing to, or permit the use of DIP Collateral by, any chapter 7 or chapter 11 trustee or similar representative person appointed for the Debtor's estate.

27. <u>DIP Order Governs</u>.  In the event of any inconsistency or conflict between any of the terms and provisions of the DIP Order and the DIP Documents, the terms and provisions of the DIP Order shall govern.

28. <u>Credit Bidding</u>.  The DIP Lender shall have the unqualified right to credit bid up to the full amount of the applicable outstanding DIP Obligations, including any accrued interest, in any sale of the DIP Collateral (or any part thereof), without the need for further Court order authorizing the same, and whether such sale is effectuated through section 363 or 1129 of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

29. <u>No Third Party Rights</u>.  Except as explicitly provided for herein, the DIP Order does not create any rights for the benefit of any party, creditor, equity holder or other entity other than the DIP Lender and the Debtor, and their respective successors and assigns.

30. <u>Headings</u>.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting the DIP Order.

31. <u>Retention of Jurisdiction</u>.  The Court retains jurisdiction to interpret, implement and enforce the provisions of the DIP Order and the DIP Documents.

32. <u>Subsequent Reversal or Modification</u>.  The DIP Order is entered pursuant to, <u>inter</u> <u>alia</u>, section 364 of the Bankruptcy Code and Bankruptcy Rule 4001(c), granting the DIP Lender all protections afforded by section 364(e) of the Bankruptcy Code.  If any or all of the

provisions of the DIP Order are hereafter reversed, modified, vacated or stayed, that action will not affect (i) the validity of any obligation, indebtedness or liability incurred hereunder by the Debtor to the DIP Lender prior to the date of receipt by the DIP Lender of written notice of the effective date of such action; (ii) the payment of any fees required under the DIP Order or the DIP Documents; or (iii) the validity and enforceability of any lien, claim, obligation or priority authorized or created under the DIP Order or pursuant to the DIP Documents as of such date. Notwithstanding any such reversal, stay, modification or vacatur, any postpetition indebtedness, obligation or liability incurred by the Debtor to the DIP Lender, prior to written notice being delivered to the DIP Lender of the effective date of such action, shall be governed in all respects by the original provisions of the DIP Order, and the DIP Lender shall be entitled to all the rights, remedies, privileges and benefits granted herein and in the DIP Documents with respect to all such indebtedness, obligations or liability.

**Dated: July 25th, 2019**
**Wilmington, Delaware**

**BRENDAN L. SHANNON**
**UNITED STATES BANKRUPTCY JUDGE**