EXHIBIT 1 TO DIP ORDER

Debtor-in-Possession Financing Term Sheet

**Novum Pharma, LLC**

Debtor-in-Possession Financing Term Sheet

July 22, 2019

| | |
|---|---|
| Borrower: | Novum Pharma, LLC, a Delaware limited liability company (the "Borrower" or the "Debtor"), as a debtor-in-possession in Case No. 19-10209 (BLS) (the "Chapter 11 Case") filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court") on February 3, 2019 (the "Petition Date"). |
| Lender: | Cardinal Health 105, Inc. or a designated affiliate (the "DIP Lender"). |
| Commitment/Availability; Funding by DIP Lender: | The DIP Lender will make loans (the "DIP Loans") to the Debtor under a debtor-in-possession term loan multi-draw financing facility (the "DIP Facility") in an aggregate principal amount not to exceed $3.0 million pursuant to the terms herein (such amount, the "Principal Amount"). Upon the entry of the DIP Order (as defined below), the Debtor shall be permitted to borrow an amount not to exceed the full amount of the DIP Facility, subject to the terms and conditions set forth in this term sheet (the "Term Sheet") and the DIP Order. |
| Obligations: | As used herein, the term "DIP Obligations" means the due and punctual payment by the Debtor of (i) the unpaid Principal Amount of and interest on the DIP Loans, as and when due, whether at maturity, by acceleration or otherwise, and (ii) all other monetary obligations, including advances, debts, liabilities, obligations, fees, costs, expenses and indemnities, whether primary, secondary, direct, indirect, absolute or contingent, due or to become due, now existing or hereafter arising, fixed or otherwise, of the Debtor to the DIP Lender hereunder, the other DIP Documents[1] and the DIP Order. |
| Use of Proceeds: | The proceeds of the DIP Loans shall be used by the Debtor to fund the payment of: (i) professional fees and expenses incurred by the Debtor, RGP Pharmacap, LLC (the "Prepetition Secured Lender") and the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case (the "Committee") as such fees and expenses |

---

[1] "DIP Documents" shall mean, collectively, this Term Sheet, any collateral documents, and all such instruments and documents as may be executed and delivered in connection with or relating to the DIP Facility.

|  |  |
|---|---|
|  | become due and payable pursuant to the terms of the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals [Docket No. 142] or the Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtor [Docket No. 324] (as may be amended, supplemented or otherwise modified, the "Plan"), (ii) amounts required to be paid pursuant to section 365(b)(1) of the Bankruptcy Code upon the assumption of contracts in connection with confirmation of the Plan ("Cure Amounts"), (iii) administrative expenses required to be paid pursuant to section 1129(a)(9)(A) of the Bankruptcy Code ("Administrative Claims") on the effective date (the "Effective Date") of the Plan and (iv) other expenses of the Debtor's dermatology products business as agreed by the DIP Lender. For the avoidance of doubt, the Debtor shall not be reimbursed from the DIP Facility for professional fees that were paid prior to date of this Term Sheet from the Prepetition Secured Lender's cash collateral. |
| Interest Rate: | Interest on the DIP Loans shall be equal to the Base Rate (as defined below) and shall be payable in kind and added to the Principal Amount on the Maturity Date. |
| Base Rate: | 9.0% per annum (the "Base Rate"). |
| Default Interest: | Upon the occurrence and during the continuation of any Event of Default (as defined below), including without limitation any default in payment of any obligations under the DIP Facility when such obligations are due, interest on the DIP Facility shall be payable at the Base Rate, plus 3.0 % (the "Default Interest Rate"). |
| Maturity: | The DIP Facility maturity date (the "Maturity Date") shall be the earlier of (a) the Effective Date or (b) the date of an occurrence of a Termination Event (as defined below); provided, however, that the Maturity Date may be extended by the DIP Lender in its sole discretion pursuant to a writing with the Debtor. The DIP Facility shall be paid in full in cash on the Maturity Date; provided, however, that if the Maturity Date occurs on the Effective Date, all indebtedness under the DIP Facility will become indebtedness under the exit financing facility to be provided by the DIP Lender and shall become subject to the terms thereof. |
| Voluntary Prepayments: | The Debtor may prepay the DIP Facility in whole or in part at any time without premium or penalty. |
| Conditions Precedent to Funding: | Availability of the DIP Facility shall be subject to the following conditions precedent, all of which shall be for the benefit of the |

2

DIP Lender and must be satisfied on occasion of each drawdown under the DIP Facility, unless waived in writing in advance by the DIP Lender:

1. The Court shall have entered a final order in form and substance acceptable to the DIP Lender (the "DIP Order")[2] which order, inter alia, shall approve the DIP Facility on a final basis, including, without limitation, the grant of, pursuant to section 364(d)(1) of the Bankruptcy Code, valid, enforceable, non-avoidable and fully perfected DIP Liens (as defined below) upon all DIP Collateral (as defined below) with the priority as set forth in the section entitled "Priority and Liens" below and superpriority administrative claims pursuant to section 364(c)(1) of the Bankruptcy Code referred to herein, to secure the DIP Obligations of the Debtor under the DIP Facility in accordance with the terms hereof, effective as of the granting of the DIP Order, without the need for any further action on the part of the DIP Lender, the Debtor or any other person (including, without limitation, the execution or delivery of any further documents or agreements or the recording, filing, indexing, entering or registering of any financing statements or other similar instruments or documents).

2. The DIP Lender shall have been granted, and hold, a perfected first priority lien on, and security interest in, substantially all of the property of the Debtor and the proceeds thereof.

3. All representations and warranties of the Debtor set forth herein and in the other DIP Documents shall be accurate in all material respects (except that such materiality qualifier shall not be applicable to any representations and warranties that already are qualified or modified by materiality in the text thereof) on and as of such date as if made on and as of such date, and after giving effect to the DIP Loans to be made on such date (except to the extent that such representations and warranties specifically relate solely to an earlier date thereto, in which case such representation and warranty shall be true and correct as of such earlier date).

4. The DIP Order shall be in full force and effect and shall not have been reversed, stayed, modified or amended without

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the DIP Order.

3

|  |  |
|---|---|
|  | the express written consent of the DIP Lender, and no application or motion shall have been made to the Court for any stay, modification or amendment of the DIP Order and no stay, appeal or leave to appeal with respect to same shall be pending. |
|  | 5. No event has occurred and is continuing that constitutes an Event of Default or would constitute an Event of Default, but for the requirement that notice be given or time elapse or both. |
| Security: | The Debtor hereby grants to the DIP Lender a security interest in and continuing lien on all of its right, title and interest in, to and under substantially all assets of the Debtor (the "DIP Liens"), including, but not limited to the following, in each case, whether now owned or existing or hereafter acquired, created or arising and wherever located (all of which being hereafter collectively referred to as the "DIP Collateral"): all assets and property of the Debtor and its estate, real or personal, tangible or intangible, now owned or hereafter acquired, whether arising before or after the Petition Date, including, without limitation, all contracts, general intangibles, instruments, equipment, accounts and documents, all goods, inventory and fixtures, all documents, cash, cash equivalents, chattel paper, letters of credit and letter of credit rights, investment property, commercial tort claims, money, insurance, receivables, receivables records, deposit accounts, collateral support, supporting obligations and instruments, all interests in leaseholds and real properties, all patents, copyrights, trademarks, tradenames and other intellectual property, all equity interests, all books and records relating to the foregoing, all other personal and real property of the Debtor, and all proceeds, products, accessions, rents and profits of or in respect of any of the foregoing (in each case as the foregoing are defined in the Uniform Commercial Code as in effect from time to time in the State of Delaware (and, if defined in more than one Article of such Uniform Commercial Code, shall have the meaning given in Article 9 thereof)); provided, however, that "DIP Collateral" shall not include (i) actions arising under chapter 5 of the Bankruptcy Code or any related state law claims of the Debtor's estate or its members (collectively, the "Causes of Action"); (ii) the proceeds of such Causes of Action; or (iii) assets and property of the Debtor subject to valid, enforceable and non-avoidable Permitted Liens (as used in that certain Loan Agreement, by and between the Debtor and the Prepetition Secured Lender, dated as of August 1, 2017 as amended from time to time) on the DIP Collateral that were perfected prior to the Petition Date (or perfected thereafter to the extent permitted by section 546(c) of the Bankruptcy Code). |

4

| | |
|---|---|
| <u>Priority and Liens</u>: | The DIP Obligations, pursuant to sections 364(c)(1) and (2) and 364(d)(1) of the Bankruptcy Code, shall constitute (i) allowed superpriority administrative expense claims, and (ii) first-priority security interests in and liens upon all DIP Collateral. |
| <u>Commitment and Other Fees</u>: | None. |
| <u>Right to Credit Bid</u>: | The DIP Lender shall have an unqualified right to credit bid up to the full amount of the outstanding DIP Obligations in any sale of the DIP Collateral (or any part thereof) without the need for further Court order authorizing the same, and whether such sale is effectuated through section 363 or 1129 of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise. |
| <u>Representations and Warranties</u>: | The Debtor hereby represents and warrants that:<br><br>1. It is duly organized, validly exists, is in good standing and is qualified to do business in the state of its organization.<br><br>2. It has full power and authority to operate its business, conduct its business and to execute, deliver and perform its obligations under this Term Sheet, the other DIP Documents and the DIP Order. |
| <u>Affirmative Covenants</u>: | 1. The Debtor covenants and agrees with the DIP Lender that, unless the DIP Lender otherwise consents in writing, so long as any amount payable hereunder or in respect of the DIP Facility is outstanding, it shall only use the proceeds of the DIP Loans for the purposes set out herein.<br><br>2. As more fully set forth in the DIP Order, the Debtor further covenants and agrees that no DIP Obligation shall be subject to setoff or recoupment under section 553 of the Bankruptcy Code or otherwise with respect to any claim the Debtor may have against the DIP Lender arising on or before the Petition Date.<br><br>3. The Debtor further covenants and agrees that it shall:<br><br>(a) deliver to the DIP Lender and the Committee (i) as soon as possible and in any event within five (5) business days after an officer or manager of the Debtor obtains actual knowledge, or after due inquiry, would have obtained such knowledge by |

5

acting in good faith and in a prudent manner in the performance of his or her duties, of the occurrence of any condition, occurrence or event which, after notice or lapse of time or both, would constitute an Event of Default (a "Default"), a statement setting forth details of such Default and the action which the Debtor has taken and proposes to take with respect thereto; and (ii) as soon as possible and in any event within five (5) business days after an officer or manager of the Debtor obtains actual knowledge, or after due inquiry, would have obtained such knowledge by acting in good faith and in a prudent manner in the performance of his or her duties, of the occurrence of any material adverse development with respect to any loss, damage, investigation, claim, litigation, action, proceeding or controversy involving the Debtor, notice thereof and, as soon as practicable thereafter, to the extent the DIP Lender or the Committee requests, copies of all documentation relating thereto;

(b) pay all taxes, assessments, contributions and other governmental charges imposed upon the Debtor or any of its properties or assets as they become due and payable, to the extent payment and/or enforcement thereof is not stayed as a result of the Chapter 11 Case; provided, however, that the Debtor shall not make tax distributions on account of taxable income except with respect to tax obligations arising from business operations in calendar year 2019;

(c) maintain in good working order all material properties used in the business of the Debtor, as and to the extent in good working order as of the Petition Date;

(d) maintain insurance with respect to the business and properties of the Debtor against loss of the kind and in the amounts maintained by the Debtor as of the Petition Date, to the extent that such insurance may be obtained by the Debtor by exercising commercially reasonable efforts, and request that the DIP Lender be listed as a loss payee and additional insured on such insurance policies;

(e) comply in all material respects with the

6

                    requirements of all applicable laws;

(f)     promptly upon request execute and deliver such documents and do such other acts as the DIP Lender may reasonably request in connection with the DIP Facility, and in accordance with the DIP Documents (including but not limited to execution of any additional security documents that may be required by the DIP Lender to secure the DIP Loans);

(g)     maintain compliance with all provisions of this Term Sheet;

(h)     perform all obligations of the Debtor under the DIP Facility, the DIP Documents and the DIP Order;

(i)     comply in all material respects with the Plan Support Agreement and Plan Term Sheet (as filed at Docket No. 311); and

(j)     deliver to the DIP Lender and the Committee weekly Budget Variance Reports (as defined in Final Order (A) Authorizing the Debtor to Use Cash Collateral, (B) Granting Adequate Protection and (C) Modifying the Automatic Stay [Docket No. 112]) concurrently with the delivery of such reports to the Prepetition Secured Lender.

<u>Negative Covenants</u>:     The Debtor covenants and agrees that it shall not:

1.     except to the extent existing as of the entry of the DIP Order, incur any indebtedness (other than the DIP Loans, any other indebtedness permitted to be incurred by the DIP Lender and the Court and any unsecured obligations incurred in the ordinary course of business by the Debtor);

2.     except to the extent existing as of the entry of the DIP Order, consent to the granting of adequate protection payments or liens, superpriority administrative expense claims or liens having priority senior or <u>pari passu</u> with the liens granted to the DIP Lender or otherwise incur any liens other than liens permitted in writing by the DIP Lender;

3.     except to the extent existing as of the entry of the DIP Order, make any investments in any person or make any loan to any person (other than as permitted in writing by the DIP Lender);

7

|  |  |  |
|---|---|---|
|  | 4. | engage in any business other than the business engaged in by the Debtor as of the entry of the DIP Order except with the written consent of the DIP Lender; |
|  | 5. | terminate or agree to any modification to any organizational documents of the Debtor except with the written consent of the DIP Lender or as otherwise required under the Bankruptcy Code; or |
|  | 6. | make any payment of prepetition claims except as authorized by an order of the Court. |
| Events of Default: |  | The occurrence of any one or more of the following events (each such event and the expiry of the cure period, if any, provided in connection therewith, being herein referred to as an "Event of Default") shall constitute a default hereunder: |
|  | 1. | The failure by the Debtor to perform or comply with any term, condition, covenant or obligation (including a payment obligation) contained herein or in the DIP Order, on its part to be performed or complied with where any such failure to perform or comply shall not be remedied within five (5) business days from written notice of default. |
|  | 2. | The cessation of this Term Sheet to be in full force and effect or the DIP Facility being declared by the Court to be null and void or the validity or enforceability of the DIP Facility being contested by the Debtor or the Debtor denying in writing that it has any further liability or obligation under the DIP Facility or the DIP Lender ceasing to have the benefit of the DIP Liens granted by the DIP Order. |
|  | 3. | Except as permitted in the DIP Order, the entry of any order of the Court granting to any third party a superpriority claim or lien pari passu with or senior to that granted to the DIP Lender hereunder. |
|  | 4. | The entry of an order converting the Debtor's Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or the Debtor filing a motion or not opposing a motion seeking such relief. |
|  | 5. | The entry of an order dismissing the Debtor's Chapter 11 Case, or the Debtor filing a motion or not opposing a motion seeking such relief, unless consented to by the DIP Lender. |

8

      6.      The entry of any order in the Debtor's Chapter 11 Case or any successor case, which order constitutes the stay, modification, appeal or reversal of the DIP Order or which otherwise affects the effectiveness of the DIP Order.

      7.      The entry of an order in the Debtor's Chapter 11 Case appointing any examiner having expanded powers or a trustee to operate all or any part of the Debtor's business.

      8.      Any judgment or order with respect to a postpetition event shall be rendered against the Debtor which does or would reasonably be expected to (i) cause a material adverse change in the financial condition, business, prospects, operations or assets of the Debtor or (ii) have a material adverse effect on the rights and remedies of the DIP Lender hereunder, and there shall be a period of ten (10) consecutive business days during which a stay of enforcement of such judgment or order, by reason of a pending appeal or otherwise, shall not be in effect.

      9.      The DIP Order being amended or modified without the consent of the DIP Lender.

      10.      The commencement of any claim or cause of action by or on behalf of the Debtor, its estate or the Committee against the DIP Lender.

      11.      The failure by the Debtor to comply in all material respects with the Plan Support Agreement and Plan Term Sheet (as filed at Docket No. 311).

<u>Remedies</u>:      If any Event of Default occurs and is continuing, the DIP Lender may take any or all of the following actions:

      1.      if such Event of Default occurs prior to the making of the DIP Loans, declare the commitment of the DIP Lender to make the DIP Loans to be terminated, whereupon such commitment shall be terminated;

      2.      declare interest on the DIP Obligations to accrue at the Default Interest Rate, whereupon the interest on the DIP Obligations shall automatically accrue at such default rate;

      3.      subject to expiration of the Default Notice Period (as defined below), declare the outstanding unpaid Principal Amount of the DIP Facility, all interest accrued and unpaid thereon, and all other amounts owing or payable thereunder, under this Term Sheet or under the DIP Order to be

immediately due and payable, without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Debtor;

4. subject to expiration of the Default Notice Period, (i) enter upon any premises on or in which any of the DIP Collateral may be located and take possession of the DIP Collateral or complete processing, manufacturing and repair of all or any portion of the DIP Collateral, (ii) collect, foreclose, receive, appropriate, setoff and realize upon any and all DIP Collateral, (iii) remove any DIP Collateral from any premises on or in which the same may be located for the purpose of effecting the sale, foreclosure or other disposition thereof or for any other purpose, (iv) exercise its unqualified right to credit bid up to the full amount of the outstanding DIP Obligations in any sale of the DIP Collateral (or any part thereof) without the need for further Court order authorizing the same, and whether such sale is effectuated through section 363 or 1129 of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise, and (v) take whatever other action the DIP Lender may deem necessary or desirable for the protection of the DIP Lender's interests; and/or

5. exercise all rights and remedies available to the DIP Lender (whether as a secured creditor or otherwise) under the DIP Facility, this Term Sheet, the other DIP Documents, the DIP Order or applicable law (including in respect of the DIP Collateral).

All rights, remedies and powers granted to the DIP Lender under the DIP Documents and the DIP Order are cumulative, not exclusive, and are enforceable, in the DIP Lender's discretion, alternatively, successively or concurrently.

Default Notice Period: The DIP Order shall include, without limitation, provisions that upon the occurrence of a Termination Event,[3] the automatic stay provisions of section 362 of the Bankruptcy Code shall be automatically vacated and modified to the extent necessary to permit the DIP Lender to exercise all rights and remedies provided in the DIP Order and the DIP Documents, as applicable, and to take

---

[3] "Termination Event," shall mean the expiration of five (5) business days (the "Default Notice Period") following the provision of written notice to the Debtor (with a copy of such notice provided to counsel for the Debtor, the Committee, the Prepetition Secured Lender and the U.S. Trustee) upon the occurrence of an Event of Default.

10

any or all of the following actions without further order of or application to the Court, including without limitation: (i) immediately terminate the availability of the DIP Facility to the Debtor; (ii) immediately declare all DIP Obligations to be immediately due and payable; (iii) immediately set off any and all amounts held on account of or owed to the Debtor against the DIP Obligations, or otherwise enforce rights against the DIP Collateral in the possession of, or subject to a lien in favor of the DIP Lender for application toward the DIP Obligations; and (iv) take any other actions or exercise any other rights or remedies permitted under the DIP Order and the DIP Documents or applicable law to effect the repayment of the DIP Obligations; <u>provided</u> <u>that</u> notwithstanding anything herein to the contrary, the DIP Lender shall not enforce any DIP Liens against the DIP Collateral or exercise any other remedies prior to the expiration of the Default Notice Period.  The DIP Order shall further provide that (a) any party in interest's sole recourse with respect to opposing such modification of the automatic stay under section 362(a) of the Bankruptcy Code shall be to contest the occurrence and/or continuance of an Event of Default, (b) during the Default Notice Period, the Debtor shall (x) have no right to request extensions of credit under the DIP Facility, other than with the consent of the DIP Lender and (y) be entitled to an emergency hearing before the Court, with proper notice to the DIP Lender, solely for the purpose of contesting whether an Event of Default has occurred and/or is continuing, (c) the rights and remedies of the DIP Lender specified in the DIP Order are cumulative and not exclusive of any rights or remedies that the DIP Lender may have hereunder or otherwise, and (d) the Debtor shall cooperate fully with the DIP Lender in any permitted exercise of rights and remedies, whether against the DIP Collateral or otherwise.

| | |
|---|---|
| <u>Release from Lending Obligations</u>: | Upon the repayment of all DIP Obligations owed to the DIP Lender by the Debtor and termination of the rights and obligations arising under the DIP Documents, the DIP Lender, solely in its capacity as such, shall be released from any and all obligations, liabilities, actions, duties and responsibilities arising or occurring in connection with or related to this Term Sheet, the other DIP Documents or the DIP Order.  Notwithstanding anything to the contrary herein, the Debtor's releases do not extend to the DIP Lender's obligations to make the DIP Loans and otherwise comply with the terms of this Term Sheet, the other DIP Documents and the DIP Order. |
| <u>Expenses and Indemnification</u>: | The DIP Lender, solely in its capacity as such, will have no liability for, and will be indemnified and held harmless against, any |

losses, claims, damages, liabilities or expenses incurred in respect of the financing contemplated hereby or the use or the proposed use of proceeds thereof, except to the extent found by a final, non-appealable judgment of a court to arise from the gross negligence, willful misconduct or fraud of the DIP Lender.

<u>Governing Law</u>:     Delaware

IN WITNESS WHEREOF, the parties hereto have caused this Term Sheet to be executed individually or by their respective officers thereunto duly authorized, as applicable, as of the date first set forth above.

**BORROWER:**

**NOVUM PHARMA, LLC**

By: /s/ Thomas S. O'Donoghue, Jr.
Name: Thomas S. O'Donoghue, Jr.
Title: Chief Restructuring Officer

**DIP LENDER:**

**CARDINAL HEALTH 105, INC.**

By: _____
Name:
Title:

IN WITNESS WHEREOF, the parties hereto have caused this Term Sheet to be executed individually or by their respective officers thereunto duly authorized, as applicable, as of the date first set forth above.

**BORROWER:**

**NOVUM PHARMA, LLC**

By: _____
    Name: Thomas S. O'Donoghue, Jr.
    Title: Chief Restructuring Officer

**DIP LENDER:**

**CARDINAL HEALTH 105, INC.**

By: _[signature]_____
    Name: Michael B Yeager
    Title: Director, Credit cOE